Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MALONE, for Himself, as a Private Attorney General, and/or On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION,<br><br>Defendant. | Case No. 5:20-cv-03584<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicholas Malone, individually, as a private attorney general, and/or on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Western Digital Corporation ("WDC" or "Defendant"):

CLASS ACTION COMPLAINT
- 1 -
**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**INTRODUCTION AND SUMMARY**

1.     This case is brought against Western Digital Corporation ("WDC" or "Western Digital") on behalf of all United States residents who purchased certain hard drives which were branded "WD Red NAS" and were explicitly advertised and represented to be designed for and suitable for use in NAS (network attached storage) devices, but which in fact are not suitable for that intended use and which put customer data at greater risk of data loss or destruction due to the use of inferior hard drive technology which is not appropriate or compatible with usage in NAS devices. The inferior (and cheaper) hard drive technology utilized by WDC in the hard drives is called "SMR" (Shingled Magnetic Recording). WDC surreptitiously sneaked—without any disclosure whatsoever—this SMR technology into its WD Red NAS hard drives within the past year or so in an effort to shave costs while keeping the selling price the same.

2.     This inferior SMR technology replaced the more-expensive-to-produce but industry-standard "CMR" (Conventional Magnetic Recording) technology which WDC had previously used—for nearly a decade—in these very same "WD Red NAS" branded hard drives. Industry experts agree and have gone on the record (including WDC's competitor Seagate Technology) that this SMR technology is completely inappropriate, and even dangerous, for NAS or RAID usage, and should never be used in such an application. (NAS, RAID, and other technical terms in this introduction are fully explained in the body, *infra*.)

3.     Yet, even after WDC was caught perpetrating this scheme in April 2020 (after initially denying the hard drives utilized SMR technology, but then finally admitting it), WDC has continued to falsely advertise that these SMR-technology WD Red NAS hard drives are "purpose-built" for NAS and RAID to "help preserve your data."

4.     As a result of WDC's fraud and deception, thousands of customers nationwide who purchased the WD Red NAS hard drives for their advertised and intended use have been duped, and have suffered harm and damages. These WD Red NAS hard drives with the inferior SMR technology are potential ticking time bombs that risk the destruction of customer data and files at any moment, because the data recovery and redundancy features of the NAS device may fail during the RAID rebuilding process (also called "resilvering") as the SMR hard drives

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  cannot handle the continuous sustained writes and heavy random writes which necessarily then

2  occur. (The term "writes" as used in this Complaint includes writes and re-writes of data.)

3  Customers are also often unable to expand their NAS storage capacity by adding more hard

4  drives, which requires a similar resilvering process as the data is redistributed and rewritten

5  across all the hard drives. In fact, the SMR hard drives are simply unable to handle continuous

6  sustained random writes (which often occurs in normal NAS usage) without freezing up and

7  reporting "timeouts" to the NAS device, causing poor performance. The WD Red NAS drives

8  may also fail to adequately function while performing standard and expected RAID

9  "scrubbing," which is a recommended periodic data integrity check where all the data on the

10 hard drive is checked for errors and consistency and automatically corrected. Ultimately, the

11 WD Red NAS devices are wholly inappropriate for their intended and advertised use (which

12 WDC even put in the product's name: WD Red "NAS"). The hard drives are **completely**

13 **worthless** for their intended purpose—and are in fact dangerous to customer data.

14        5.    Plaintiff Nicholas Malone brings this action individually on his own behalf as a

15 deceived Western Digital customer and as a private attorney general seeking an order for public

16 injunctive relief to protect the general public, directing that WDC stop advertising, and to

17 instruct its resellers to stop advertising, any hard drives with SMR technology as being

18 appropriate for NAS devices or RAID (including by removing "NAS" from such products'

19 names).

20        6.    Plaintiff also brings this action as a representative plaintiff on behalf of a

21 nationwide class of consumers who purchased WD Red NAS hard drives utilizing SMR

22 technology, seeking, among other things, that Defendant be ordered to disgorge all revenues

23 Defendant has unjustly received from the members of the class. Plaintiff also seeks an order

24 requiring Defendant to: (1) provide notice to every class member that the WD Red NAS hard

25 drive they purchased is not suited for its intended purpose; and (2) either provide a full refund

26 to Plaintiff and class members for their WD Red NAS hard drives, or provide Plaintiff and

27 class members with replacement CMR-technology hard drives that are truly suited for use with

28 NAS devices and RAID, at no additional cost.

---

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

7.      Plaintiff brings these claims under California statutory authority and principles of equity including the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

## THE PARTIES

8.      Plaintiff Nicholas Malone is a citizen of the United States of America and Wisconsin and is an individual and a natural adult person who resides in Madison, Wisconsin.

9.      Like all members of the proposed class, Plaintiff Malone purchased a WD Red NAS Drive that utilized SMR technology. Specifically, Plaintiff Malone purchased on Amazon.com, four (4) "WD Red 6TB NAS Hard Drives – 5400 RPM Class, SATA 6 GB/s, 256 MB Cache, 3.5" – Model Number: WD60EFAX" for $150.12 each on March 6, 2020.

10.     Defendant Western Digital Corporation is a Delaware corporation with its principal place of business and/or nerve center located at 5601 Great Oaks Parkway, San Jose, California 95119.

## JURISDICTION AND VENUE

11.     **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—*i.e.*, Class Action Fairness Act jurisdiction—because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

12.     **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because: (1) Defendant WDC is headquartered in San Jose, California (which is within the Northern District of California) and is authorized to do business and regularly conducts business in the State of California such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice; and/or (2) Defendant has committed tortious acts within the State of California (as alleged, without limitation, throughout this Complaint).

13.     **Venue**. Venue is proper in the Northern District of California because, pursuant

CLASS ACTION COMPLAINT                                    - 4 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

to 28 U.S.C. § 1391(b)(1), this judicial district is a judicial district in which Defendant WDC resides, and pursuant to 28 U.S.C. § 1391(c)(2), for venue purposes WDC shall be deemed to reside in this judicial district because WDC is subject to the court's personal jurisdiction with respect to this civil action.

## FACTUAL ALLEGATIONS

14.     Western Digital ("WDC") is one of the largest manufacturers of hard drives in the world. Western Digital manufactures two different types of hard drives: traditional large-capacity spinning disk mechanical hard drives, and more modern but smaller-capacity solid-state flash storage drives (often also called hard drives) which have no moving parts. This Complaint concerns the traditional large capacity spinning disk mechanical hard drives, and any reference to "hard drives" herein means traditional spinning disk mechanical hard drives.

15.     Hard drives are utilized to store digital data and files for a home or business computer system. Several hundred million hard drives (spinning disk mechanical hard drives) are sold each year to consumers and businesses worldwide. Hard drives utilize spinning magnetic disk technology to hold information inscribed in very tiny tracks, somewhat similar to how a vinyl record holds information read by record players. These hard drives have moving parts, including a mechanical head which reads and writes data to one or more disk platters, which are contained inside a single sealed unit.

16.     In 2012, WDC released its WD Red series NAS hard drives, which were specifically designed for NAS (network-attached storage) systems and for RAID (Redundant Array of Independent Disks) environments. A NAS device is a stand-alone computing device which typically contains multiple individual hard drives that are grouped together to form one large datastore, which is used to store files and share them with other computers or laptops over a network. RAID is a technology, typically utilized in NAS devices, of combining multiple hard drives into a single logical datastore or virtual drive for data redundancy, data security, and performance purposes. NAS devices which contain four or more hard disks typically (and often automatically) format the drives in a "disk striping" format such as RAID 5 or RAID 6 or ZFS software or hardware RAID, which builds in redundancy such that one or multiple drives

CLASS ACTION COMPLAINT
- 5 -
**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

can fail and data will not be lost. (ZFS is a proprietary file system and logical disk volume manager owned by Oracle with robust redundancy and error-correction features; the term "ZFS" is also often used to mean OpenZFS, which is a popular open-source version of ZFS.) NAS devices have become increasingly popular for both home and small business use, as the use of digital data has exploded over the years including digital files, photographs, and videos which have required ever-increasing storage capacity which NAS devices (with their grouping of large hard drives) are able to provide along with data redundancy.

17.     Hard drives which are designed and built for NAS and RAID must have certain characteristics. In particular, such hard drives must be able to handle <u>continuous and sustained writes and heavy random writes</u>, which necessarily occur during the RAID rebuilding process (also called "resilvering") when a failed hard drive in a striped RAID array (standard in a NAS) is replaced with a new drive and the data is redistributed across the replacement drive and the other drives. Continuous and sustained random writes also occur when the storage capacity of a RAID array is expanded by adding hard drives, which requires a similar resilvering process where the data is redistributed and spread across all the drives.

18.     Continuous and sustained writes and heavy random writes also occur during RAID "scrubbing," which is a standard and recommended periodic data integrity check where all the data on the hard drive is checked for errors and consistency and automatically corrected. NAS manufacturers generally recommend (and often set their devices to automatically perform) RAID scrubbing at least once a month to maintain system health and to prevent data loss.

19.     Hard drives designed and built for NAS and RAID also are expected to have reliable and fast random-write performance in general, and to be able to handle continuous random writes (where data may also be being written from multiple computers on the network simultaneously).

20.     For nearly a decade, WDC has enjoyed a strong reputation as best-in-class for its WD Red NAS hard drives. WDC today continues to advertise its WD Red NAS hard drives as the "**Built for NAS compatibility**" and "**Designed for RAID environments**."  WDC

CLASS ACTION COMPLAINT

- 6 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

advertises WD Red NAS hard drives as "**specifically designed for use in NAS systems with up to 8 bays**" and appropriate for "**small and home office NAS systems in a 24x7 environment**." *See* the WDC product spec sheet for WD Red NAS hard drives available on the web at https://products.wdc.com/library/SpecSheet/ENG/2879-800002.pdf, a printout of which is attached hereto as **Exhibit A**. And until 2018, WDC's advertising rang true, and its WD Red NAS hard drives, which utilized industry-standard CMR (conventional magnetic recording) technology, did indeed rightfully earn a reputation for reliability and being "purpose-built" and well suited for NAS and RAID environments.

21.     However, in 2018, WDC <u>secretly</u> swapped out the industry-standard CMR technology from many of its WD Red NAS hard drives, and replaced it with inferior (and cheaper) hard drive technology called SMR (shingled magnetic recording). <u>WDC switched the recording technology in these drives to SMR for one reason: to reduce its costs and increase its profits</u>. SMR technology enables WDC to fit 25% more data onto the same-size disk platters, thus significantly reducing its costs to produce the drives. Meanwhile, WDC kept this switch to SMR technology a secret, so that it could continue to charge the same price as it previously charged for CMR drives, thereby increasing its profits. WDC intentionally did not disclose its use of SMR technology in the hard drives anywhere whatsoever. WDC did not mention the SMR technology in its advertising, in its hard drive documentation, in the hard drive product spec sheets, or in the labeling on the hard drive itself.

22.     Unfortunately, this SMR technology is <u>wholly inappropriate</u> for use in NAS and RAID systems—which is the very use that WDC advertises and promises that these WD Red NAS hard drives are suitable and "purpose-built" for.

23.     SMR technology was created, and had *previously* been utilized, to increase storage density in large capacity hard drives, but at the expense of write performance. Historically, the SMR hard drives had been limited to cost-effective archiving on the industry's very largest hard drives, and/or used for cold storage (e.g., long-term storage where after the drive is filled it is unplugged and put on a shelf for safekeeping)—applications where fast or reliable continuous random-write speed was not required.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     SMR technology allows the tracks on a hard disk platter to be layered on top of each other, like roof shingles on a house, to increase platter and storage density. Hard drives that use SMR technology are significantly slower in writing data than CMR hard drives because when an SMR drive writes to an area, the *entire region* (e.g., below and above the shingle) will need to be read, copied, and re-written, in contrast to a standard CMR drive where the data can be written quickly and discretely.

25.     Some SMR hard drives, like the WD Red NAS hard drives at issue in this case, manage this data writing and rewriting process on the drive itself via DM-SMR technology, i.e., drive-managed SMR. By utilizing DM-SMR technology, WDC was able to **hide** this process from computing devices and the user, via caching tricks which (when the drive was being written to only intermittently and not on a sustained continuous basis) can camouflage the slowness of the drive. WDC utilized increased DRAM memory cache on the hard drive and also a small CMR cache zone to function as a temporary storage space. Data writes by such DM-SMR drives are first <u>temporarily stored</u> on the staging disk area (the small CMR cache zone). Then, when the disk is idle (i.e., when there is no writing being made to it), the hard drive will rearrange the data in the background, moving the data that was temporarily saved in the CMR cache over to the main SMR part of the drive; this is also referred to as the "garbage collection" process.

26.     However, after continuous sustained random writes, the CMR cache layer becomes full, and the drive slows down dramatically—it essentially "chokes" and stops the flow of data while it flushes out the CMR cache and tries to catch up on the much slower writing to the main SMR hard disk. This is especially problematic and dangerous when the hard drive has been set up in a NAS as part of a RAID array. In that case, the choking hard drive reports "timeouts" or loss of connectivity to the NAS, which logically assumes the hard disk has failed and then kicks the drive out of the RAID array, which can cause catastrophic data loss.

27.     When WDC downgraded the technology in its WD Red NAS hard drives to SMR technology, <u>it did so secretly, without telling a soul</u>. Based on information and belief,

---

- 8 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

WDC did not inform the NAS manufacturers, who had tested and certified the previous CMR versions of the identically-labeled hard drives, that it had replaced the guts of these white-listed drives with cheaper and poor-performing SMR technology. Based on information and belief, WDC likewise did not inform its resellers, such as Amazon.com, that it had replaced the guts of many of its WD Red NAS hard drives with inferior and cheaper SMR technology.

28.     When WDC downgraded its hard drives to SMR technology, WDC did not change any of the advertising or representations it had made regarding the hard drives being "purpose-built" and suitable for NAS and RAID. WDC did not make any disclosure whatsoever of its use of SMR technology in the hard drives. WDC advertising and specifications, which were also utilized by its resellers in their ads and product web pages for the hard drives, continued to make the exact same representations and statements that the WD Red NAS hard drives were specifically intended and appropriate for NAS and RAID.

29.     **Starting around March 2019, various purchasers of WD Red NAS hard drives began reporting poor write performance and consistent failures during RAID resilvering**.

30.     For example, one user stated: "[W]hen I was moving data from one drive to another, several terabytes worth, it literally took most of a week. The drive would fill 30GB, then stop and basically lock up the OS."[1]

31.     Another user stated: "[T]he latest iteration of WD REDS [are] unable to be used for rebuilding RAID[56] or RAIDZ sets: They rebuild for a while (1-2 hours), then throw errors and get kicked out of the set."[2]

32.     Another user posted on a Synology (a leading NAS manufacturer) user forum that he was unable to add a new WD Red NAS 6TB drive to a RAID setup containing three older WD Red NAS 6TB drives. When the user added the new WD Red NAS drive, the

---

[1] *See* https://arstechnica.com/gadgets/2020/04/caveat-emptor-smr-disks-are-being-submarined-into-unexpected-channels/.

[2] *See* https://blocksandfiles.com/2020/04/14/wd-red-nas-drives-shingled-magnetic-recording/.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  resilvering process took over three days and then failed.[3]

2  33.     Purchasers also reported being unable to use the hard drives in their NAS

3  systems, and that the hard drives kept getting kicked out of their RAID arrays. One user stated:

4  "Attempting to replace drives in my existing array resulted in new WD-RED WD40EFAX

5  drives (multiple units) throwing HARD errors (IDNF - Sector ID not found) and being kicked

6  out of the array. That's apart from them pausing for 30-180 seconds at a time occasionally

7  whilst they rebuild their internals, or the painfully slow random-write speeds when you throw

8  more than about 2GB at a time at them."[4]

9  34.     Another user posted: "I got recently bit by WD40EFAX [a WD Red NAS SMR

10  drive] … When I tried to replace one of the failed WD Red disk in my vdev I started getting

11  bunch of errors… I replaced that with WD purple [a CMR drive] and haven't had any problems

12  so far."[5]

13  35.     Some hard drive technology enthusiasts noticed that the reported problems

14  appeared to affect WD Red NAS drives below 8TB (8 terabytes) of size, with a SKU

15  containing the letters "EFAX."

16  36.     Several of these technology enthusiasts noted that, remarkably, the official

17  WDC spec sheet for the EFAX hard drives (see **Exhibit A**) indicated the EFAX drives should

18  have *better* performance than the prior version of the drives (which contained the letters

19  "EFRX"). The EFAX drives were listed with a faster "interface transfer rate" (180 MB/s versus

20  as low as 150 MB/s), and with four times as much DRAM cache (256MB versus 64MB). The

21  data sheet gave zero indication whatsoever that the EFAX drives contained SMR technology

22  (as compared to the prior EFRX versions of the "same" drives which contained the standard

23  CMR technology).

24  37.     Nonetheless, some of these technology enthusiasts experiencing problems

25  _____

26  [3] *See* https://community.synology.com/enu/forum/1/post/127228.

    [4] *See*

27  https://np.reddit.com/r/DataHoarder/comments/fyhzl9/disguised_smr_drives_the_official_western_digital/.

28  [5] *Ibid.*

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

publicly surmised that the drives may in fact be SMR drives, because their poor write performance, RAID and NAS incompatibility, and freezing up was consistent with the limitations of SMR technology.

38.     When asked whether the hard drives utilized SMR technology, WDC's public response was to **deny** it. For example, on March 30, 2020, Yemi Elegunde, an enterprise and channel sales manager for Western Digital's UK operations, expressly <u>denied</u> that the WD Red drives used SMR technology, stating: "The only SMR drive that Western Digital will have in production is our 20TB hard enterprise hard drives and even these will not be rolled out into the channel. All of our current range of hard drives are based on CMR Conventional Magnetic Recording."

39.     Based on information and belief, WDC customer support staff were instructed to refuse to acknowledge that the WD Red NAS hard drives now utilized SMR technology. One purchaser reported WDC's response when he contacted WDC customer support to ask if the drive utilized SMR versus CMR technology: "Western Digital support has gotten back to me. They have advised me that they are not providing that information so they are unable to tell me if the drive is SMR or PMR [PMR is another term used for CMR]. LOL. He said that my question would have to be escalated to a higher team to see if they can obtain that info for me." Then, "the higher team contacted me back and informed me that <u>the information I requested about whether or not the WD60EFAX was a SMR or PMR would not be provided to me. They said that information is not disclosed to consumers.</u> LOL. WOW."[6] (Emphasis added.)

40.     Based on information and belief, when consumers contacted WDC to complain of the poor performance of their (SMR-technology) WD Red NAS hard drives in NAS and RAID environments, WDC <u>as a matter of policy</u> continued to insist that the hard drives were suitable for those environments, failed to disclose that the drives utilized (inappropriate) SMR technology, and <u>blamed the user</u> or the user's other equipment for the poor performance.

41.     In April 2020, a leading storage technology website, Blocks & Files, began

---

[6] *See* https://community.synology.com/enu/forum/1/post/127228

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

investigating this possible undisclosed use of SMR technology in WD Red NAS hard drives, after an information technology expert brought his suspicions to their attention. As stated in the Blocks and Files article published April 14, 2020: "Alan Brown, a network manager at UCL Mullard Space Science laboratory, the UK's largest university-based space research group, told us about his problems adding a new WD Red NAS drive to a RAID array at his home. Although it was sold as a RAID drive, the device 'keep[s] getting kicked out of RAID arrays due to errors during resilvering,' he said."[7] Mr. Brown suspected the drive was an SMR drive, and his testing seemed to confirm his hypothesis. Mr. Brown told the website that the WD Red NAS drive's poor performance had "been a hot-button issue in the datahoarder Reddit for over a year. People are getting pretty peeved by it because SMR drives have ROTTEN performance for random write usage." *Ibid.*

42.     Until then, WDC had never publicly admitted that the WD Red NAS drives utilized SMR technology. But, when Blocks & Files contacted WDC and asked them point-blank whether WD Red NAS drives used SMR technology, WDC realized the jig was up. WDC had been caught. WDC was finally forced to acknowledge the truth.

43.     WDC stated on the record to Blocks and Files (in the article published April 14, 2020):

> Currently, Western Digital's WD Red 2TB-6TB drives are device-managed SMR (DMSMR)… You are correct that we do not specify recording technology in our WD Red HDD documentation.  We strive to make the experience for our NAS customers seamless, and recording technology typically does not impact small business/home NAS-based use cases. In device-managed SMR HDDs, the drive does its internal data management during idle times. In a typical small business/home NAS environment, workloads tend to be bursty in nature, leaving sufficient idle time for garbage collection and other maintenance operations.[8]

44.     Once WDC finally admitted what it had done, WDC was universally condemned by the technology press. Storage experts were in utter disbelief that WDC would do something so utterly reckless and inappropriate as sneak SMR technology into hard drives that WDC

---

[7] *See* https://blocksandfiles.com/2020/04/14/wd-red-nas-drives-shingled-magnetic-recording/.
[8] *Ibid.*

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

advertised and represented to be designed for NAS and RAID.[9] As Alan Brown stated in a separate interview article with Block and Files, these SMR-technology WD Red NAS hard drives were "unfit for the purpose for which they are marketed."[10]

45.     As the scandal unfolded, Seagate Technology (WDC's largest competitor) publicly stated SMR is incompatible with NAS (and RAID), and that their NAS-specific hard drives did not use SMR: "Seagate only produces NAS drives that are CMR. We do not have any SMR drives in our IronWolf and IronWolf Pro drives, which are NAS solutions**…[W]e don't recommend SMR for NAS**… Seagate will always recommend the correct drive technology for the right application." [11] (Emphasis added.)

46.     On April 20, 2020, six days after the Blocks and Files article was published, as the fiasco and condemnation continued to snowball, WDC posted a public statement about the matter on a blog post on its website.[12] In the post, WDC acknowledged that its 2TB–6TB WD Red NAS hard drives utilized DM-SMR (drive-managed SMR technology). Meanwhile, WDC had publicly admitted in its statement to Blocks and Files that they had never previously disclosed that it had sneaked SMR technology into these previously CMR hard drives, stating: "You are correct that we do not specify recording technology in our WD Red HDD documentation."[13]

47.     Incredibly, WDC claimed in the blog post that the SMR technology they sneaked into the WD Red NAS hard drives was nevertheless appropriate because "The data intensity of typical small business/home NAS workloads is <u>intermittent</u>, leaving sufficient idle

---

[9] *E.g., see* Extreme Tech article dated April 24, 2020, at https://www.extremetech.com/computing/309730-western-digital-comes-clean-shares-which-hard-drives-use-smr; Ars Technica article dated April 17, 2020, at https://arstechnica.com/gadgets/2020/04/caveat-emptor-smr-disks-are-being-submarined-into-unexpected-channels/.

[10] *See* https://blocksandfiles.com/2020/04/15/shingled-drives-have-non-shingled-zones-for-caching-writes/.

[11] *See* https://arstechnica.com/information-technology/2020/04/seagate-says-network-attached-storage-and-smr-dont-mix/.

[12] *See* https://blog.westerndigital.com/wd-red-nas-drives/.

[13] *See* https://blocksandfiles.com/2020/04/14/wd-red-nas-drives-shingled-magnetic-recording/.

---

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

time for DMSMR drives to perform background data management tasks as needed and continue an optimal performance experience for users."[14] (Emphasis added.) This was consistent with WDC's prior ridiculous statement to Blocks and Files that: "recording technology typically does not impact small business/home NAS-based use cases. In device-managed SMR HDDs, the drive does its internal data management during idle times. In a typical small business/home NAS environment, workloads tend to be bursty in nature, leaving sufficient idle time for garbage collection and other maintenance operations."[15]

48.     **In other words, by these statements WDC has publicly admitted that these SMR drives are not suitable for NAS and RAID, the very purposes for which they were intended and advertised.** WDC has publicly admitted that the SMR-technology WD Red NAS hard drives cannot handle continuous writes or heavy random writes, and that the drives are appropriate only for "intermittent" occasional "bursty" writes. WDC has publicly admitted that the drives require "sufficient idle time for garbage collection and other maintenance operations," unlike CMR drives. WDC even previously released a YouTube video explaining and admitting that SMR-technology hard drives are not appropriate for random-write workloads—which is a typical and common use of NAS systems. *See* https://www.youtube.com/watch?v=_VzM3T9J1x4&feature=youtu.be.

49.     "Idle time" is required for these SMR-technology WD Red NAS hard drives (like it is for all SMR hard drives) in order to prevent the temporary cache holding area (the small CMR cache layer) from filling up before the data has been transferred over to the much slower SMR main disk. Continuous sustained random writes would provide no opportunity for the hard drive to take a break to flush out the CMR cache zone, and thus would cause the temporary cache zone to completely fill up—resulting in the entire hard drive freezing up and reporting time-outs to the NAS or RAID controller and then getting kicked off of the RAID array (with potentially devastating consequences to customer data).

50.     SMR hard drives (like these SMR-technology WD Red NAS drives) are by

---

[14] *See* https://blog.westerndigital.com/wd-red-nas-drives/.

[15] *See* https://blocksandfiles.com/2020/04/14/wd-red-nas-drives-shingled-magnetic-recording/

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

definition wholly inappropriate for NAS and RAID applications, which necessarily require continuous and sustained writes and/or heavy random writes during the RAID resilvering and RAID scrubbing processes. Meanwhile, heavy random writes (e.g., constantly writing many small files), which SMR hard drives cannot handle, are also very common and typical in NAS and RAID use cases and applications, such as, for example, in a 24x7 home office or small business networked environment.

51.     Recent testing by both tech enthusiasts and NAS manufacturers has also found that the SMR-technology WD Red NAS hard drives (unlike the prior CMR versions of the drives) are particularly incompatible with ZFS (a file storage system with robust redundancy and error-correction features which is utilized in storage solutions including NAS devices), because under heavy write loads and/or resilvering the drives return Sector ID Not Found (IDNF) errors, making the drives unusable and causing data to be destroyed.

52.     Yet WDC continues to (falsely) advertise and promise that these WD Red NAS drives are designed and appropriate for RAID and NAS. WDC **continues** to keep "NAS" in the name of these SMR drives, and **continues** to promise and advertise (and to provide marketing materials to its resellers that promise and advertise) that the drives are: "**purpose-built for NAS**," "**Built for NAS compatibility**," "**Designed for RAID environments**," "**specifically designed for use in NAS systems with up to 8 bays**," and are appropriate for "**Small and home office NAS systems in a 24x7 environment**." These representations are blatantly false; these SMR-technology hard drives not only are inappropriate and perform poorly for their advertised and intended use in NAS and RAID applications—these hard drives are actually outright dangerous when used in those applications, putting customer data at risk.

53.     Any and all purported disclosures which WDC has made regarding the WD Red NAS hard drives since WDC first publicly admitted on April 14, 2020 that it had sneaked SMR technology into the drives, have been insufficient and inadequate. The only additional disclosures or changes in its marketing that WDC has made since April 14, 2020 are to update its technical product spec sheet for the WD Red NAS series of drives to add a single line specifying either "CMR" or "SMR" recording technology for each drive, without explaining or

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

disclosing what that means or its significance. *See* the updated WDC product spec sheet (updated in May 2020) available on the web at

https://documents.westerndigital.com/content/dam/doc-library/en_us/assets/public/western-digital/product/internal-drives/wd-red-hdd/product-brief-western-digital-wd-red-hdd.pdf, a printout of which is attached hereto as **Exhibit B**; compare to the prior version of the product spec sheet at **Exhibit A**.

54.     This specification of "CMR" versus "SMR" on the new May 2020 version of the spec sheet is the principal, and possibly only, disclosure by WDC that certain WD Red NAS drives utilize SMR technology.[16] (Product spec sheets are a form of advertising, as are all of the statements by Defendant quoted in this Complaint.)

55.     Meanwhile, WDC has refused to change its advertising and promotion of the hard drives for NAS and RAID use. WDC continues to keep "NAS" in the product name and to make the same (now false, for the SMR drives) claims that the hard drives are "purpose-built" for NAS and RAID.

56.     The disclosure of SMR versus CMR technology continues to not appear anywhere in the advertising and online brochures and specifications which customers actually see on the product webpages of WDC resellers such as Amazon.com. But even if prospective customers somehow did come across the words "SMR" or "CMR," they would have no idea of their significance or what they meant. A reasonable consumer (the WD NAS Red drives are marketed to consumers and small businesses) would not see these strange abbreviations and understand that they completely nullify all the advertising and representations WDC is making about the drives being "purpose-built" for NAS and RAID.

57.     WDC knows and intends that customers rely on WDC to specify the right drive for the right application. WDC has had (until now) a decades-long reputation for manufacturing best-in-class hard drives. As WDC itself states, "WD Red HDDs have for many years reliably

---

[16] On this product spec sheet, WDC has acknowledged that the Red NAS hard drives which utilize SMR technology are the 2TB, 3TB, 4TB, and 6TB drives with the following SKUs: WD20EFAX, WD30EFAX, WD40EFAX, and WD60EFAX, respectively.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

powered home and small business NAS systems around the world and have been consistently validated by major NAS manufacturers. Having built this reputation…"[17]

58.     Customers who purchased WD Red NAS hard drives did so because they specifically wanted a hard drive appropriate for NAS and RAID use. WDC **continues** to (falsely) expressly represent and advertise that these hard drives are "**specifically designed for use in NAS systems with up to 8 bays**" and for "**Small and home office NAS systems in a 24x7 environment**." WDC continues to state: "**Desktop drives aren't purpose-built for NAS. But WD Red drives with NASware technology are. Our exclusive technology takes the guesswork out of selecting a drive… In a Network Attached Storage device, a desktop hard drive is not typically designed for NAS environments. Do right by your NAS and choose the drive designed for NAS with an array of features to help preserve your data …**"[18]

59.     The bottom line is that in order to cut costs and increase its profits, WDC made the decision to sneak inferior SMR technology into its previously best-in-class drives, putting customer data at risk. WDC was finally caught and forced to admit the truth. But WDC has refused to rectify its wrongs or to change course. WDC has stubbornly and recklessly decided to continue manufacturing and to continue falsely advertising these SMR-technology hard drives as "purpose-built for NAS." WDC continues to sell customers (directly and through its resellers) a product **absolutely worthless** for its intended use. When the hard drives are used by customers for their intended and advertised purpose, the hard drives not only perform poorly, but also put customer data at increased risk.

60.     Plaintiff Nicholas Malone, who purchased an SMR-technology WD Red NAS hard drive, is one of the thousands of victims of WDC's scheme.

61.     In March 2020, Mr. Malone desired to purchase a NAS device along with hard drives which were designed for use in that NAS device with a RAID setup. Mr. Malone wanted to store his important home personal data, media files, and computer backups in a centralized,

---

[17] *See* https://blog.westerndigital.com/wd-red-nas-drives/.

[18] *See* WDC's updated (in May 2020) WD Red NAS spec sheet at **Exhibit B**.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    large datastore with data redundancy and security features, and had determined that a NAS

2    system utilizing RAID for redundancy and failure recovery was the best solution.

3        62.    On March 6, 2020, Mr. Malone went to Amazon.com to shop for a NAS device

4    and NAS-appropriate hard drives. Mr. Malone decided to purchase a QNAP 4-Bay NAS

5    device.

6        63.    Mr. Malone then began researching the options available on Amazon for four

7    6TB NAS-appropriate hard drives to put into the QNAP NAS device. Mr. Malone previously

8    had purchased and had been happy with many WDC hard drives over the years, and he

9    understood them to have a good reputation for reliability and quality. Mr. Malone browsed the

10   Amazon product webpage for the WD Red NAS 6TB hard drive, and viewed the advertising

11   and product information (which was provided to Amazon by WDC). Besides seeing that the

12   drive had "NAS" in the product name, Mr. Malone viewed the prominent bullet points on the

13   product webpage which stated: "**Specifically designed for use in NAS systems with up to 8**

14   **bays**," "**Small and home office NAS systems in a 24/7 environment**," and "**NASware**

15   **firmware for compatibility**."

16       64.    Lower down on the product webpage for the WD Red NAS 6TB hard drive was

17   a colorful product brochure labeled: "From the manufacturer." Mr. Malone viewed the

18   representations there, including: "**There's a leading edge WD Red drive for every**

19   **compatible NAS system to help fulfill your data storage needs… WD Red drives pack the**

20   **power to store your precious data in one powerhouse unit**" and "**3D Active Balance Plus.**

21   **Helps ensure your data is protected … in a NAS or RAID environment**."  Based on these

22   representations, Mr. Malone reasonably believed and understood the WD Red NAS 6TB hard

23   drive was specifically designed and built for NAS device RAID environments like the QNAP

24   system he intended to purchase and set up (unlike cheaper consumer desktop hard drives which

25   were not purpose-built for NAS and RAID). Mr. Malone had no idea the hard drives in fact

26   utilized inferior SMR technology, which was not disclosed to him.

27       65.    Mr. Malone also viewed the product webpage for a NAS hard drive from a

28   competing manufacturer, the Seagate IronWolf 6TB NAS hard drive. The Seagate hard drive

CLASS ACTION COMPLAINT

- 18 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  was likewise advertised as having been designed and built for NAS and RAID for devices with

2  up to 8 drive bays.

3       66.     Relying on the representations regarding the WD Red NAS 6TB hard drive on

4  the Amazon webpage, and also based on his prior good experience with WDC hard drives,

5  Mr. Malone decided to purchase four of the WD Red NAS 6TB hard drives for $150.12 each,

6  paying a total of $600.48 plus tax. The SKU for the hard drives was WD60EFAX. Mr. Malone

7  also purchased the QNAP NAS device (the QNAP TS-453Be-4G-US) for $548.89 plus tax.

8       67.     After receiving the WD Red NAS hard drives and QNAP NAS device,

9  Mr. Malone installed the hard drives into the QNAP and set up the device with RAID 5

10  redundancy.

11       68.     Over the next month and a half, Mr. Malone gradually moved and copied his

12  personal data and media files over to the NAS, and also stored backups of his computer system,

13  filing the NAS with almost 18TB of important and valuable data.

14       69.     In late April or early May 2020, Mr. Malone viewed a YouTube video about

15  NAS setup and storage. During the video, the narrator began talking about the recent scandal

16  about WDC having admitted that their WD Red NAS hard drives utilized SMR technology.

17  The narrator explained that the SMR technology was inappropriate for NAS systems and

18  should not have been advertised and sold for that purpose by WDC.

19       70.     After viewing this video, Mr. Malone became concerned that he had purchased

20  these (falsely advertised) SMR-technology WD Red NAS hard drives. After researching the

21  matter further, he learned that the four hard drives he had purchased (with the SKU

22  WD60EFAX) did indeed utilize SMR recording technology.

23       71.     Mr. Malone had been defrauded. Mr. Malone had bought the hard drives based

24  on WDC's representations that the drives were purpose-built for NAS and RAID, and had

25  specifically purchased and set up his system for the redundancy and failure recovery features

26  that NAS with RAID provided. But the hard drives he purchased, contrary to WDC's express

27  representations, were not appropriate for NAS or RAID, and his data was now at risk. In fact,

28

---

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the hard drives are completely **worthless**—and are in fact dangerous—when used for their intended and advertised purpose.

72.     Mr. Malone was now, and continues to be, extremely upset and worried about losing his data. The failure of a single drive could result in the loss of data due to the inability to rebuild the RAID array. Mr. Malone is also unable to perform recommended and standard RAID "scrubbing" to ensure the integrity of his data and to automatically correct any disk errors, because the process could cause one or more hard drives to be kicked out of the RAID array, potentially causing data loss. In order to secure and protect his data, Mr. Malone now must now expend hundreds more dollars and many hours of his time to purchase several external hard drives and/or a second NAS, and then copy his data over to the new storage.

73.     WDC's misrepresentations and failures to disclose were false and misleading and in violation of California law.

74.     To be clear, Mr. Malone is bringing claims under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act for false advertising and deceptive practices. Mr. Malone is not alleging the hard drives are defective; this is not a design defect case. Rather, this case is about false advertising, where WDC is being accused of advertising hard drives as suitable for a certain intended use and purpose (for NAS and RAID), when in fact those hard drives are not at all suitable for that intended use and purpose.

75.     These misrepresentations and omissions by WDC are material, in that they are the type of representations on which an ordinary person would reasonably rely upon in conducting his or her affairs.

76.     Mr. Malone reasonably relied on WDC's misrepresentations and omissions of material facts. If Mr. Malone had known that the WD Red NAS hard drives he purchased utilized recording technology which was completely inappropriate for their intended and advertised use, Mr. Malone would not have purchased the hard drives. Mr. Malone would have purchased different hard drives that were truly appropriate for NAS and RAID use, such as the Seagate IronWolf 6TB NAS hard drive that he had also considered during his shopping process

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

on Amazon.com. In fact, <u>no other leading hard drive manufacturer</u> uses this inferior SMR technology in their hard drives that are labeled for NAS or RAID use.

77. As a direct and proximate result of WDC's acts and omissions, Mr. Malone was harmed, suffered an injury-in-fact, and lost money or property.

78. Mr. Malone has a legal right to rely now, and in the future, on the truthfulness and accuracy of WDC's representations.

79. Mr. Malone would purchase WD NAS hard drives again if he could have confidence regarding the truth of WDC's representations regarding their appropriateness and fitness for NAS systems and RAID.

80. Mr. Malone will be harmed if, in the future, he is left to guess as to whether WDC's representations are accurate and whether there are omissions of material facts regarding the features or specifications of WDC's NAS hard drives.

81. If Mr. Malone were to purchase a WD NAS hard drive again without WDC having changed its unlawful and deceptive conduct alleged herein, Mr. Malone would be harmed on an ongoing basis and/or would be harmed once or more in the future.

82. The Defendant is primarily engaged in the business of selling or leasing goods or services. Each cause of action brought by Plaintiff and the Class against Defendant in this pleading arises from and is limited to statements or conduct by Defendant that consist of representations of fact about Defendant's business operations, goods or services that is or was made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in Defendant's goods or services or the statement is or was made in the course of delivering Defendant's goods or services. Each cause of action brought by Plaintiff and the Class against Defendant in this pleading arises from and is limited to statements or conduct by Defendant for which the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## CLASS ACTION ALLEGATIONS

83.     Plaintiff Nicholas Malone brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

84.     Plaintiff seeks to represent the following nationwide Class:

> **All United States residents who, during the applicable limitations period, purchased any Western Digital WD Red NAS Drive with SMR recording technology.**

85.     Specifically excluded from the Class are Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

86.     ***Numerosity.*** Plaintiff does not know the exact number of class members, but is informed and believe that the Class easily comprises thousands of individuals. As such, class members are so numerous that joinder of all members is impracticable.

87.     ***Commonality and Predominance.*** Well-defined, identical legal or factual questions affect the members of the Class. All claims in this matter arise from the identical written advertising and omissions of material facts regarding the WD Red NAS hard drives purchased by the Class. These questions predominate over questions that might affect individual class members. These common questions include, but are not limited to, the following:

a.     Whether Defendant's conduct as outlined herein violated the False Advertising Law, California Business and Professions Code § 17500 *et seq.*;

b.     Whether Defendant's conduct as outlined herein violated the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*;

c.     Whether Defendant's conduct as outlined herein violated California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*;

d.     Whether Defendant's misrepresentations and omissions alleged herein constitute fraudulent concealment under California law;

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

e.     Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Defendant's misrepresentations and omissions alleged herein;

f.     Whether Defendant should be ordered to disgorge its unjust enrichment;

g.     Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and/or

h.     Whether Plaintiff and the Class are entitled to an order for class-wide injunctive relief, imposing equitable remedies such as restitution and/or requiring WDC to: (1) provide notice to every class member that the WD Red NAS hard drive they purchased is not suited for its intended purpose; and (2) either provide a full refund to Plaintiff and the Class for their WD Red NAS hard drives, or provide Plaintiff and the Class with replacement CMR-technology hard drives that are truly suited for use with NAS devices and RAID, at no additional cost.

88.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

89.     **Typicality.**  Plaintiff is a member of the Class he seeks to represent. The claims of Plaintiff are typical of all class members.

90.     All claims of Plaintiff and the Class arise from the same misrepresentations and omissions of material fact.

91.     All claims of Plaintiff and the Class are based on the same legal theories.

92.     **Adequacy.**  Plaintiff has no interest antagonistic to, or in conflict with the Class. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

93.     Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

94.    By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate with respect to the Class as a whole.

95.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

96.    A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member are too small to make individual actions economically feasible.

97.    Common questions will predominate, and there will be no unusual manageability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act**
**California Civil Code § 1750 *et seq.***

98.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

99.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the Class.

100.    Defendant is a "person," as defined by California Civil Code § 1761(c).

101.    Plaintiff and class members are "consumers," as defined by California Civil Code § 1761(d).

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

102. The WD Red NAS hard drives purchased by Plaintiff and the class members are "goods" as defined by California Civil Code § 1761(a).

103. The purchases by Plaintiff and the class members constitute "transactions," as defined by California Civil Code § 1761(e).

104. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant did not result from a *bona fide* error notwithstanding the use of reasonable procedures adopted to avoid such error.

105. With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in San Jose, California (the county in which this action has been commenced) pursuant to Section 1780(d) of the California Civil Code because, without limitation, San Jose County is a county in which Defendant is doing business and is the county in which WDC is headquartered. A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit C**.

106. Defendant's methods, acts and/or practices, including Defendant's misrepresentations, active concealment, and/or failures to disclose, violated and continue to violate the CLRA in ways including, but not limited to, the following:

a. Defendant misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b. Defendant misrepresented that its products were of a particular standard, quality, grade, or of a particular style or model when the products were of another (Cal. Civ. Code § 1770(a)(7));

c. Defendant advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

d. Defendant represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

107. Specifically, Defendant advertised and represented that these WD Red NAS hard drives were suitable for the particular purpose of NAS and RAID, when in fact the hard

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    drives were not suitable for that purpose and were actually outright dangerous when used for

2    that purpose.

3         108.    With respect to omissions, Defendant at all relevant times had a duty to disclose

4    the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of

5    material information that was not known to Plaintiff and the Class; (b) Defendant concealed

6    material information from Plaintiff and the Class; and/or (c) Defendant made partial

7    representations which were false and misleading absent the omitted information.

8         109.    Defendant's misrepresentations and nondisclosures deceive and have a tendency

9    and ability to deceive the general public.

10        110.    Defendant's misrepresentations and nondisclosures are material, in that a

11   reasonable person would attach importance to the information and would be induced to act on

12   the information in making purchase decisions. Indeed, the utility and value of Defendant's WD

13   Red NAS hard drives with SMR technology are significantly reduced, to the point of

14   worthlessness, because these drives should not and cannot be used for their intended and

15   advertised purpose of NAS or RAID.

16        111.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent

17   conduct, Plaintiff and the Class suffered injury-in-fact and lost money.

18        112.    But for Defendant's deceptive conduct and omissions of material facts, Plaintiff

19   and the Class would not have purchased the subject hard drives and/or would have purchased

20   an appropriate hard drive from one of Defendant's competitors instead. Defendant's conduct as

21   alleged herein caused substantial injury to Plaintiff, class members, and the public. Defendant's

22   conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly,

23   Plaintiff and the Class seek an order enjoining Defendant from committing such practices.

24        113.    If not enjoined by order of this Court, Defendant is free to resume its unlawful

25   behavior and injure Plaintiff and consumers through the misconduct alleged herein once more.

26   Defendant has a duty to speak truthfully or in a non-misleading manner.

27        114.    Plaintiff would purchase WD NAS hard drives again if he could have

28   confidence regarding the truth of WDC's representations regarding their appropriateness and

---

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

fitness for NAS systems and RAID.

115.    Plaintiff will be harmed if, in the future, he is left to guess as to whether WDC's representations are accurate and whether there are omissions of material facts regarding the features or specifications of WDC's NAS hard drives.

116.    If Plaintiff were to purchase a WD NAS hard drive again without WDC having changed its unlawful and deceptive conduct alleged herein, Plaintiff would be harmed on an ongoing basis and/or would be harmed once or more in the future.

117.    In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring WDC to stop advertising, and to instruct its resellers to stop advertising, any hard drives with SMR technology as being appropriate for NAS devices or RAID (including by removing "NAS" from such products' names).

118.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

119.    Plaintiff does not currently seek damages in this Complaint under the CLRA.

120.    In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, intends to promptly serve Defendant with notice of its CLRA violations by USPS certified mail, return receipt requested.

121.    If Defendant fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notification letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**COUNT II**
**Violation of California's False Advertising Law**
**California Business and Professions Code § 17500 *et seq.***

122.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

123.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the putative Class.

124.    Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

125.    Defendant's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers.

126.    Defendant, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to be made or disseminated, before the public in California, in newspaper or other publication, or other advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the internet, statements concerning that personal property or those services, and/or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

127.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Defendant concealed material information from Plaintiff and the Class; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

128.    Defendant committed such violations of the False Advertising Law with actual knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care, should have known that its advertising was misleading.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

129.   Plaintiff and the Class reasonably relied on Defendant's representations and/or omissions made in violation of the False Advertising Law.

130.   As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the Class suffered injury-in-fact and lost money.

131.   But for Defendant's deceptive conduct and omissions of material facts, Plaintiff and the Class would not have purchased the subject hard drives and/or would have purchased an appropriate hard drive from one of Defendant's competitors instead.

132.   Defendant should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

133.   Defendant's conduct has caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such violations of the FAL. Plaintiff further seeks an order granting restitution to Plaintiff and the Class in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

134.   Plaintiff, on behalf of himself and the Class, seeks injunctive relief to require Defendant to: (1) provide notice to every class member that the WD Red NAS hard drive they purchased is not suited for its intended purpose; and (2) either provide a full refund to Plaintiff and the Class for their WD Red NAS hard drives, or provide Plaintiff and the Class with replacement CMR-technology hard drives that are truly suited for use with NAS devices and RAID, at no additional cost.

135.   Absent injunctive relief, Defendant will continue to injure Plaintiff and the class members. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

136.   In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring WDC to stop advertising, and to instruct its resellers to stop advertising, any hard drives with SMR technology as being appropriate for NAS devices or RAID (including by removing "NAS" from such products' names).

137.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

**COUNT III**
**Violation of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq.***

138.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

139.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of a putative Class.

140.    Defendant's acts and omissions alleged herein constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL").

141.    Defendant's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the Class. There is no utility to Defendant's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Defendant's conduct alleged herein.

142.    Defendant's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750 *et seq.* and Cal. Civ. Code §§ 1709-1710.

143.    By its conduct and omissions alleged herein, Defendant has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and Cal. Civ. Code § 1750, *et seq.*; and engaging in deceit and fraudulent concealment in violation of Cal Civ. Code §§ 1709-1710, *et seq.*

144.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Defendant concealed

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

material information from Plaintiff and the Class; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

145.     Defendant's material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

146.     Defendant's nondisclosures and omissions of material facts deceive and have a tendency to deceive the general public and reasonable consumers, and therefore were unfair and fraudulent.

147.     Defendant's nondisclosures and omissions of material facts are material, such that a reasonable person would attach importance to the information and would be induced to act on the omissions in making purchase decisions.

148.     Plaintiff and members of the class reasonably relied on Defendant's nondisclosures and omissions of material facts.

149.     By its conduct and omissions alleged herein, Defendant received more money from Plaintiff and the Class than it should have received, and that money is subject to restitution.

150.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the Class suffered injury-in-fact and lost money.

151.     But for Defendant's deceptive conduct and omissions of material facts, Plaintiff and the Class would not have purchased the subject hard drives and/or would have purchased an appropriate hard drive from one of Defendant's competitors instead.

152.     Plaintiff, on behalf of himself and the Class, seeks injunctive relief to require Defendant to: (1) provide notice to every class member that the WD Red NAS hard drive they purchased is not suited for its intended purpose; and (2) either provide a full refund to Plaintiff and the Class for their WD Red NAS hard drives, or provide Plaintiff and the Class with replacement CMR-technology hard drives that are truly suited for use with NAS devices and RAID, at no additional cost.

153.     Defendant's conduct has caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting restitution to Plaintiff and the Class in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

154.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

155.    Absent injunctive relief, Defendant will continue to injure Plaintiff and the class members. Defendant's conduct and omissions of material fact are ongoing. And, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

156.    In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring WDC to stop advertising, and to instruct its resellers to stop advertising, any hard drives with SMR technology as being appropriate for NAS devices or RAID (including by removing "NAS" from such products' names).

## PRAYER FOR RELIEF

1.    In order to prevent injury to the general public, Plaintiff Nicholas Malone, in his individual capacity, seeks a public injunction requiring Defendant Western Digital Corporation to stop advertising, and to instruct its resellers to stop advertising, any hard drives with SMR technology as being appropriate for NAS devices or RAID (including by removing "NAS" from such products' names).

2.    Further, on behalf of himself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Defendant as follows:

a.    Declare this action to be a proper class action, certifying the Class defined herein, and appoint Plaintiff and his counsel to represent the Class;

b.    Declare Defendant's conduct to be in violation of applicable law;

c.    Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiff and the members of the class or otherwise as a result of the unlawful conduct alleged herein;

CLASS ACTION COMPLAINT

- 32 -

1          d.      Permanently enjoin Defendant from the unlawful conduct alleged herein;

2          e.      Retain jurisdiction to police Defendant's compliance with the permanent injunctive relief;

f.      Order Defendant to: (1) provide notice to every class member that the WD Red NAS hard drive they purchased is not suited for its intended purpose; and (2) either provide a full refund to Plaintiff and the Class for their WD Red NAS hard drives, or provide Plaintiff and the Class with replacement CMR-technology hard drives that are truly suited for use with NAS devices and RAID, at no additional cost;

g.      Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

h.      Provide all other relief to which Plaintiff and the Class may show themselves justly entitled.

## **JURY DEMAND**

Plaintiff Nicholas Malone, on behalf of himself and on behalf of the Class, demands a trial by jury on all issues so triable.

DATED this 28th day of May, 2020.

Presented by:

HATTIS & LUKACS

By: _____

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT         - 33 -        **HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com