1   Daniel M. Hattis, Esq. (SBN 232141)          Keith E. Eggleton, Esq. (SBN 159842)
    Paul Karl Lukacs, Esq. (SBN 197007)          Dale R. Bish, Esq. (SBN 235390)
2   HATTIS & LUKACS                              WILSON SONSINI GOODRICH & ROSATI
    400 108th Ave NE, Ste 500                    A PROFESSIONAL CORPORATION
3   Bellevue, WA 98004                           650 Page Mill Road
    Telephone: (425) 233-8650                    Palo Alto, CA 94304-1050
4   Facsimile: (425) 412-7171                    Telephone: (650) 493-9300
    Email: dan@hattislaw.com                     Facsimile: (650) 565-5100
5   Email: pkl@hattislaw.com                     Email: keggleton@wsgr.com
                                                 Email: dbish@wsgr.com
6   L. Timothy Fisher (SBN 191626)
    Joel D. Smith (SBN 244902)                   *Attorneys for Defendant*
7   BURSOR & FISHER, P.A.                        *Western Digital Corporation*
    1990 North California Blvd., Suite 940
8   Walnut Creek, CA 94596
    Telephone: (925) 300-4455
9   Facsimile:  (925) 407-2700
    Email: ltfisher@bursor.com
10  Email: jsmith@bursor.com

11  *Attorneys for Plaintiffs*
    *and the Proposed Classes*

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16  NICHOLAS MALONE,                    Case No. 5:20-cv-03584-NC
    CHRIS AYERS,
17  JAMES BACKUS,                       **JOINT RULE 26(F) REPORT AND**
    BRIAN CONWAY,                       **CASE MANAGEMENT STATEMENT**
18  DAVID EATON,
    STEVEN GRAVEL,
19  JAMES RAAYMAKERS, and               Case Management Conference
    TOD WEITZEL,                        Date: Sept. 2, 2020
20  on behalf of themselves and all others similarly   Time: 10:00 a.m.
    situated                            Courtroom: Courtroom 5 – 4th Floor
21                                                   San Jose Federal Courthouse
                              Plaintiffs,
22                                      Judge: Hon. Nathanael Cousins
    v.
23
    WESTERN DIGITAL CORPORATION,
24
                              Defendant.
25

26

27

28

## JOINT RULE 26(F) REPORT AND CASE MANAGEMENT STATEMENT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 16-9 and the Northern District's Standing Order titled "Contents of Joint Case Management Statement," Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers and Tod Weitzel (collectively, the "Plaintiffs") and Defendant Western Digital Corporation ("WDC") respectfully submit the following Joint Rule 26(f) Report and Case Management Statement.

1. **JURISDICTION AND SERVICE**

The basis for the Court's subject matter jurisdiction is diversity jurisdiction under the Class Action Fairness Act as codified at 28 U.S.C. § 1332(d)(2)(A) in that the matter in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. No issues exist regarding personal jurisdiction or venue. Defendant Western Digital Corporation is headquartered in San Jose, California, which is within the Northern District of California. All parties have appeared or been served.

2. **FACTS**

A.   **Plaintiffs' Statement**

**One-Paragraph Summary.** Defendant WDC violated consumer protection statutes and breached its implied and express warranties when it falsely advertised and promoted its "WD Red NAS"-branded hard drives as being fit for use in and optimized for data storage systems referred to as Network Attached Storage (NAS) systems and in configurations known as Redundant Array of Independent Disks (RAID) arrays. In or around 2018, Defendant WDC, in a cost-saving measure, secretly switched the technology used in several models of its WD Red NAS-branded hard drives from the industry standard Conventional Magnetic Recording (CMR) technology to the cheaper and inferior Shingled Magnetic Recording (SMR) technology. These SMR-technology drives perform poorly in their intended and advertised NAS and RAID usage and put customer data at increased risk. Both of WDC's largest competitors, Seagate Technology and Toshiba Corporation, have publicly stated that this SMR technology is not recommended for

1  NAS and RAID. Since WDC's scheme was brought to light, three of the leading NAS device

2  manufacturers (specifically Synology, Inc., iXsystems and Drobo, Inc.) have blacklisted these

3  SMR WD Red NAS drives and have urged their customers not to use the drives in their NAS

4  devices due to their unacceptably poor performance. Plaintiffs and the classes have been duped

5  and defrauded by WDC and seek damages, restitution and injunctive relief.

6      **Principal Factual Issues In Dispute.** The Plaintiffs are having difficulty identifying

7  disputable facts alleged in the Second Amended Complaint ("SAC"), since the factual allegations

8  are principally culled from the public acts and statements of Defendant WDC. The following

9  material facts appear to be undisputable: (1) WDC advertised and promoted the WD Red NAS-

10 branded hard drives as being suitable for and optimized for NAS and RAID usage; (2) WDC

11 secretly switched the technology in those hard drives from CMR to SMR; (3) SMR technology

12 operates poorly in NAS and RAID environments; and (4) because of the secret switch, the SMR

13 WD Red NAS-branded hard drives do not work as advertised or as the consumer of such hard

14 drives (or of any drive labelled "NAS") would expect. From the Plaintiffs' perspective, the only

15 truly disputable factual issue is intent with regard to punitive damages—whether WDC

16 maliciously sold a product it knew was unfit and not as advertised, or whether the company was

17 merely incompetent.

18      **B.    Defendant's Statement**

19      Defendant denies wrongdoing of any kind. WDC and its devices, including the Red-

20 branded hard drives, enjoy a well-earned reputation in the marketplace for performance,

21 dependability, and value.  WDC is constantly innovating its products to increase performance

22 while maintaining competitive pricing and value for its customers.  SMR is an established

23 technology for numerous applications and Defendant disputes that SMR technology is "inferior"

24 or that it "operates poorly" in NAS or RAID environments.  WDC designed and tested the Red

25 line of hard drives for NAS and RAID environments, including those devices that use SMR

26 technology, and accurately advertised the Red-branded drives as suitable for NAS and RAID

27 environments.  WDC denies that the use of SMR was "secret" and denies that the drives do not

28 work as advertised or are somehow "worthless."

Thus the disputed facts include (1) whether the Red devices were designed and tested for use in NAS/RAID environments; (2) whether the Red devices function in and/or are compatible with NAS/RAID environments; (3) whether the advertising statements for Red were accurate; (4) whether the use of SMR technology in hard drives was "secret"; (5) whether the use of SMR technology was material to typical purchasers; and (6) whether purchasers received a valuable hard drive.

**3.   LEGAL ISSUES**

    **A.   Plaintiffs' Statement**

Plaintiffs anticipate the following disputed points of law:

- Choice of Law and Conflicts of Law: whether Plaintiffs can certify a nationwide class under California law or whether Plaintiffs are required instead to pursue alternative single-state sub-classes;

- Whether WDC misrepresented and/or failed to disclose material facts concerning the WD Red NAS hard drives and their use of SMR technology;

- Whether a reasonable consumer is likely to be deceived by WDC's conduct and omissions alleged in Plaintiffs' Second Amended Complaint ("SAC");

- Whether WDC's conduct alleged in the SAC violates the breach of implied warranty and/or breach of express warranty because the WD Red NAS hard drives are unfit for use for their intended purpose; and

- Whether an injunction should issue enjoining WDC from the unlawful conduct alleged in the SAC.

    **B.   Defendant's Statement**

In addition to those identified by Plaintiffs, Defendant anticipates the following legal issues:

- Whether WDC accurately advertised the Red line of products to be suitable for NAS and RAID given the Company's efforts to design and test the devices for the NAS and RAID environments;

- Whether individual class members were exposed to WDC's challenged statements;

- Whether, and at what level of detail, companies have a duty to disclose changes in technology in their product offerings;

- Whether typical consumers in the intended markets would appreciate the distinction between CMR and SMR, i.e., whether the statements were material;

- Whether business and commercial users can be included in the putative class;

- Whether Plaintiffs' nationwide class can proceed under choice-of-law principles;

- Whether a nationwide class or single sub-state subclasses would be manageable;

- Whether restitution or damages are appropriate where Plaintiffs and members of the class received a valuable device that was designed as advertised;

- Whether Plaintiffs can prove each of the elements of their claims under California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

- Whether Plaintiffs can prove each of the elements of their claims under California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

- Whether Plaintiffs can prove each of the elements of their claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.;

- Whether Plaintiffs can prove each of the elements of their claims under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq.;

- Whether Plaintiffs can prove each of the elements of their claims under the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 9;

- Whether Plaintiffs can prove each of the elements of their claims under the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 et seq.;

- Whether Plaintiffs can prove each of the elements of their claims under New York General Business Law § 349;

- Whether Plaintiffs can prove each of the elements of their claims under New York General Business Law § 350;

- Whether Plaintiffs can prove each of the elements of their claims under Virginia's Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq.;

- • Whether Plaintiffs can prove each of the elements of their claims under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, 100.20;
- • Whether Plaintiffs can prove each of the elements of their claims under the Breach of Express Warranty;
- • Whether Plaintiffs can prove each of the elements of their claims under the Breach of the Implied Warranty;
- • Whether Plaintiffs can prove each of the elements of their claims under the Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code §§ 1790 *et seq.* and California Commercial Code § 2314; and
- • Whether Defendant is entitled to judgement in its favor on Plaintiffs' claims in whole or in part based upon its respective affirmative defenses.

**4.    MOTIONS**

There are no prior or pending motions.

Plaintiffs intend to file a Motion for Class Certification. If appropriate, the Plaintiffs will bring a Motion for Summary Judgment or, In the Alternative, Summary Adjudication.

Per this Court's Order (Dkt. 18), Defendant WDC has until September 9, 2020, to bring a Motion To Dismiss or other challenge to the pleading of the operative Second Amended Complaint. WDC also intends to bring a Motion For Summary Judgment or, In The Alternative, Summary Adjudication if and when appropriate.

**5.    AMENDMENT OF PLEADINGS**

**A.    Plaintiffs' Statement**

On June 16, 2020, Plaintiff Malone filed the First Amended Complaint, which added Plaintiffs Ayers, Backus, Eaton, Gravel, and Weitzel. Dkt. No. 7. On August 10, 2020, Plaintiffs filed the operative Second Amended Complaint, which consolidated for the first time the claims previously alleged in this *Malone* action and in the now-closed *Raaymakers* action, as well as adding Plaintiff Raaymakers. Plaintiffs do not anticipate any other amendments at this time, but reserve the right to amend their complaint pursuant to Rule 15 to add additional allegations, claims or parties if and when appropriate and subject to Court approval, if necessary.

1

2       **B.**     **Defendant's Statement**

WDC agrees there is no basis for further amendments of the SAC but will consider any

3 requests to do so.

4 **6.**     **EVIDENCE PRESERVATION**

5       Counsel for all parties have reviewed the Guidelines Relating to the Discovery of

6 Electronically Stored Information. During the Rule 26(f) conference on Wednesday, August 12,

7 2020, the counsel for all parties met and conferred regarding reasonable and proportionate steps

8 to preserve evidence relevant to issues reasonably evident in this action.

9       Counsel for Plaintiffs stated that the potentially relevant documents in each Plaintiff's

10 possession were being preserved. Counsel for WDC stated that an evidence preservation notice

11 had been sent to employees and that the company was preserving all potentially relevant

12 documents in its possession.

13       The parties are negotiating an electronically stored information order, with negotiations

14 being based upon the Northern District's Model Stipulated Order re: Discovery of Electronically

15 Stored Information For Standard Litigation. The parties intend to file the negotiated stipulation as

16 a proposed order either simultaneously with or shortly after the filing of this Report.

17 **7.**     **DISCLOSURES**

18       The parties' counsel of record held the Rule 26(f) conference by telephone on Wednesday,

19 August 12, 2020. The parties have agreed to exchange their initial disclosures on September 9,

20 2020.

21 **8.**     **DISCOVERY**

22     **A.**     **Plaintiffs' Statement**

23       No discovery has been taken.

24       For Plaintiffs, the scope of anticipated discovery is as follows: **(1)** the differences between

25 CMR and SMR technology, WDC's knowledge and past studies and analysis of those differences,

26 **(2)** WDC's internal deliberations and discussions, policies and procedures concerning: (a) the

27 switch to SMR technology, including the disclosure or lack of disclosure of the switch, (b)

28 changes or proposed changes to advertising and representations regarding the drives, and (c) any

projected or expected cost savings and/or profit increases as a result of the switch; **(3)** WDC's disclosure or lack of disclosure of the switch to SMR technology to: (a) consumers, (b) its resellers, (c) its technology partners such as companies who manufacture NAS devices, and (d) WDC's own staff including customer support, sales, and engineering; **(4)** complaints and inquiries from the consumers, the press, third parties including technology partners, and WDC's own staff and engineers, when they learned about the switch; **(5)** WDC's internal deliberations, discussions, and responses to complaints and criticism of consumers, the press, technology partners, and internal staff about the switch to SMR; **(6)** WDC's deliberations, discussions, and plans regarding the continued use of SMR technology in NAS-labeled hard drives; **(7)** internal testing by WDC concerning the use of drive-managed SMR in the WD Red NAS hard drives or in hard drives generally, including speed/performance and data stability in RAID and with ZFS; **(8)** the size of the class and/or each sub-class; and **(9)** the revenue received from the sales of SMR-technology WD Red NAS hard drives. Plaintiffs anticipate undertaking third-party discovery including serving subpoenas on WDC technology partners who manufacture NAS devices (e.g., Synology, Inc., iXsystems and Drobo, Inc).

Plaintiffs do not anticipate that more than ten depositions will be necessary.  However, consistent with Rule 30(a), Plaintiffs will confer with WDC as early as possible when and if additional depositions are necessary. The parties will be negotiating a stipulated e-discovery order, and the parties discussed a discovery plan pursuant to Fed. R. Civ. P. 26(f). The parties' views on a discovery schedule are set out below in Section 17.

### B.   Defendant's Statement

Defendant will confer with Plaintiffs regarding the scope of discovery from WDC and its employees. Defendant anticipate taking discovery from each the putative class representative on their individual claims as well as with respect to issues relating to class certification.

### 9.   CLASS ACTION

All counsel of record have reviewed the Procedural Guidance for Class Action Settlements. Pursuant to Civil L.R. 16-9(a), any party seeking to maintain a case as a class action must include in the case management statement the following additional information:

### A.    Plaintiffs' Statement

#### a.    The specific paragraph(s) of Fed. R. Civ. P. 23 under which this action is maintainable as a class action:

Plaintiffs contend that this action is maintainable under Rule 23 paragraphs (a), (b)(2) and (b)(3).

#### b.    A description of the class or classes on whose behalf the action is brought:

Plaintiffs anticipate that they will move to certify the following class as defined in Paragraph 272 of the SAC:

> **All United States residents who, during the applicable limitations period, either (a) purchased from any seller any Western Digital Red NAS hard drive with SMR technology, or (b) received from Western Digital a replacement Red NAS hard drive with SMR technology.**

In the event that a national class cannot be certified, each Plaintiff alleges in the alternative a sub-class confined to his state, with that sub-class being worded identically to the national class but substituting the name of the state for "United States." The state sub-classes would be: California, Florida, Massachusetts, Missouri, New York, Virginia and Wisconsin. Together, these states constitute about one-third of the U.S. population.

#### c.    Facts showing that Plaintiffs are entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b):

i.    <u>Numerosity</u>. The nationwide class is alleged to "easily comprise tens of thousands of persons, while each subclass comprises one thousand or more individuals." SAC, ¶ 282.

ii.    <u>Commonality and Predominance</u>. Legal and factual issues are common to the class members and will predominate over questions that might affect individual class members. "All claims in this matter arise from the identical written advertising and omissions of material facts regarding the WD Red NAS hard drives." SAC, ¶ 283. In short, the claims of all class members are based upon the following allegations of facts: (1) the differences between CMR and SMR technology (SAC, ¶¶ 25-46), (2) WDC's decision to secretly substitute SMR technology into its WD Red NAS hard drives (SAC, ¶¶ 53-54), and/or (3) WDC's false or misleading advertising or statements and/or material omissions about its secret switch (SAC, ¶¶ 48-52, 55-63).

iii. <u>Typicality</u>. If all members of the nationwide class can prosecute their claims under California's consumer protection laws, then claims of the representative parties are indisputably typical of the claims of the class. At a minimum and in the alternative, the claims of each representative plaintiff are typical of the consumers in his state who also purchased WD Red NAS drives after the secret switch to SMR technology.

iv. <u>Adequacy</u>. Plaintiffs and their counsel will adequately protect the Class's interests. Plaintiffs have no interests antagonistic to class members' interests and are committed to representing the best interests of the class. Moreover, Plaintiffs have retained counsel who are highly experienced in prosecuting complex class action and consumer protection cases.

v. <u>Superiority</u>. Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually. In addition, a class action will present far fewer management difficulties than individual litigation and will provide the economic and efficiency benefits of a single adjudication.

**d.    A proposed date for the Court to consider whether the case may be maintained as a class action:**

Plaintiffs propose the following schedule for class certification:

- 10 months after the resolution of the pleadings: Plaintiffs' Motion for Class Certification due;
- 45 days after Plaintiffs' Motion for Class Certification is filed: Defendant's Opposition to Motion for Class Certification due;
- 30 days after Defendant's Opposition to Motion for Class Certification is filed: Plaintiffs' Reply in Support of Class Certification due.

**B.    Defendant's Statement**

At this time, Defendant does not believe that this action is suitable for class treatment given the legal and factual issues that may require individual determination, manageability concerns, and Defendant reserves its right to raise issues regarding the adequacy of class representatives.

1      With respect to the proposed schedule for class certification, Defendant requests ninety

2    (90) days to oppose class certification so that it can take and complete necessary discovery,

3    including any needed expert work, in response to Plaintiffs' motion.

4    **10.    <u>RELATED CASES</u>**

5         **A.      <u>Plaintiffs' Statement</u>**

6         <u>No cases are related within the meaning of Civil Local Rule 3-12</u>. Per this Court's Order

7    (Dkt. 18), the now-terminated civil action captioned *James Raaymakers v. WDC*, Case No. 5:20-

8    cv-04091 (N.D. Cal.), was consolidated into this civil action; its parties and allegations form a

9    part of the operative Second Amended Complaint.

10        The Court should be aware of the existence of *Oscar Brown v. WDC*, Case No. 20-cv-

11   04624-AT (S.D.N.Y.), which was filed on June 16, 2020. In that pending class action, Plaintiff

12   Oscar Brown and a proposed class are being represented by the same counsel in the case at bar. In

13   the *Brown* case, the plaintiff and class make allegations against WDC which are similar to the

14   claims made herein (e.g., surreptitious use of SMR technology and the price premium paid by

15   consumers as a result of Defendant's deceptions and omissions) but with one important

16   difference: The *Brown* allegations are limited to WDC's Blue and Black lines of hard drives,

17   while this case at bar is limited to WDC's Red NAS line of hard drives. Because this lawsuit and

18   the *Brown* lawsuit are directed at different lines of hard drives, Plaintiffs do not at this time

19   believe that the two civil actions are related. Plaintiffs recognize, however, that a potential global

20   settlement may involve settling the *Brown* claims in this case or settling this case in the *Brown*

21   case.

22        A similar class action was filed in Canada regarding WD Red NAS hard drives on May

23   22, 2020. *Sheldon Irving v. Western Digital Corporation and Western Digital Canada*

24   *Corporation*, Case No. VLC-S-S-205402 (Supreme Court of British Columbia).

25        **B.      <u>Defendant's Statement</u>**

26        Other than as set forth above, Defendant is not aware of any additional related cases.

27   Defendant anticipates seeking to transfer and relate (and perhaps consolidate) the *Brown* case,

28   which is currently pending in the Southern District of New York.

1

**11.    RELIEF**

2

    **A.    Plaintiffs' Statement**

3

    Plaintiffs seek, on behalf of themselves and the proposed class: (1) a permanent injunction

4

enjoining WDC from engaging in the misconduct alleged in the SAC; (2) damages and restitution

5

in an amount to be proven at trial; (3) attorneys' fees, costs, and pre-judgment and post-judgment

6

interest; (4) continued monitoring by this Court of WDC's compliance with the permanent

7

injunction; and (5) all other relief to which Plaintiffs and the class may show themselves entitled.

8

    Because the core of the Plaintiffs' claims are that the secret switch rendered the WD Red

9

NAS drives unfit for the purposes advertised, Plaintiffs demand that WDC provide to each Class

10

member the choice of receiving either: (a) a refund of the price premium the class member paid

11

for their WD Red NAS hard drives, or (b) brand-new replacement CMR-technology hard drives

12

of the same or greater storage capacity that are truly suited for use with NAS devices and RAID,

13

at no additional cost including no postage costs.

14

    Plaintiffs also seek a public injunction prohibiting WDC from advertising any hard drives

15

with drive-managed SMR technology as being appropriate for NAS devices or RAID (including

16

by removing "NAS" from such products' names).

17

    **B.    Defendant's Statement**

18

    Plaintiff is not entitled to recover any relief on the alleged claims.  Plaintiffs, and members

19

of the putative class, received valuable hard drives that function as intended and for which the

20

Company received few returns.  Defendant anticipates damages and/or restitution will be the

21

subject of expert testimony regarding the value of the Red devices.

22

**12.    SETTLEMENT AND ADR**

23

    On July 21, 2020, Plaintiffs served a confidential settlement demand upon WDC. As of

24

the date of the filing of this Report, WDC has not served a counter-offer.

25

    All parties are amenable to private mediation. However, all parties respectfully request

26

that the Court not yet set a deadline for the commencement or completion of mediation. The

27

parties respectfully request that the Court set another case management conference to occur in

28

about six months regarding mediation.

**13.**   **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

All parties have consented to Magistrate Judge Nathanael M. Cousins serving as the judge for all purposes in this civil action.

**14.**   **OTHER REFERENCES**

This civil action is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.**   **NARROWING OF ISSUES**

At this time, the parties have not agreed to narrow any issues by agreement. The parties agree to work together in good faith to identify any such issues as the case progresses.

**16.**   **EXPEDITED TRIAL PROCEDURE**

The parties do not believe that this is the type of case that can or should be handled on an expedited basis with streamlined procedures.

**17.**   **SCHEDULING**

The parties each propose the following schedule (with separate columns for the Plaintiffs' versus the Defendant's proposals):

| Event/Action | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Fact Discovery Begins | August 26, 2020 | October 26, 2020 |
| Initial Disclosures | September 9, 2020 | Agreed |
| Response to SAC (Answer or Motion to Dismiss) | September 9, 2020 | September 9, 2020 |
| Further Status Conference (to discuss amendment completion date, ADR completion date, and other dates) | March 17, 2021 | Agreed |
| Class Certification Motion | 10 months after the resolution of the pleadings. | Agreed |
| Class Certification Opposition | 45 days after Plaintiffs' Motion for Class Certification is filed. | 90 days after Plaintiffs' Motion for Class Certification is filed. |
| Class Certification Reply | 30 days after Defendant's Opposition to Motion for Class Certification is filed. | Agreed |
| Fact Discovery Completion (for non-expert discovery) | 120 days after class certification ruling. | Agreed |

| Event/Action | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Initial Expert Disclosures | Plaintiffs propose sequential exchange of expert disclosures, with the Plaintiffs disclosing first:<br>• Plaintiffs' expert disclosures due 30 days after fact discovery completion date<br>• Defendant's expert disclosures due 30 days after Plaintiffs' expert report is served | Agreed |
| Rebuttal Expert Disclosures | Plaintiffs' rebuttal expert disclosures due 30 days after Defendant's expert report is served. | Agreed |
| Expert Discovery Cutoff | 30 days after Plaintiffs' rebuttal expert disclosures are served. | Agreed |
| *Daubert* Motions | 30 days after the close of expert discovery | 45 days after the close of expert discovery |
| *Daubert* Opposition | 30 days after Motion | Agreed |
| *Daubert* Reply | 2 weeks after Opposition | Agreed |
| Motion For Summary Judgment | 30 days after expert discovery cutoff. | Agreed |
| Summary Judgment Opposition | 30 days after Motion. | 45 days after Motion |
| Summary Judgment Reply | 2 weeks after Opposition | Agreed |
| Pre-Trial disclosures | TBD | Agreed |
| Final Pre-Trial Conference | TBD | Agreed |
| Trial | TBD, or 3 months after Court's ruling on Motion for Summary Judgment | TBD |

The parties reserve the right to demand expert disclosures and depositions in the event that expert evidence is used to support or oppose class certification.

## 18.   TRIAL

The parties respectfully submit that it is premature to set a date certain for trial or estimate the length of trial until Plaintiffs' motion for class certification is decided. Plaintiffs demand a jury trial on all issues so triable.

## 19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

1    All parties have filed the "Certification of Interested Parties or Persons" required by Civil

2  Local Rule 3-15.

3    Plaintiffs filed their Certification on June 26, 2020 (Dkt. 13), and had no such interests to

4  report. The two law firms representing the Plaintiffs—Hattis & Lukacs and Bursor & Fisher,

5  P.A.—are the only persons or entities funding the prosecution of this class action.

6    WDC filed its Certificate of Interested Entities and Corporate Disclosures on June 26,

7  2020 (Dkt. 11). WDC reported that the Vanguard Group owned 11.90% of WDC as of December

8  31, 2019, with no other parent corporation or publicly traded corporation owning 10% or more of

9  the stock of WDC.  WDC is currently exploring its insurance coverage for some or all of the

10  claims, including from the Travelers Indemnity Company of Connecticut.

**20.    PROFESSIONAL CONDUCT**

11

12    Counsel for the parties have reviewed the Guidelines for Professional Conduct for the

13  U.S. District Court for the Northern District of California.

14  **21.    OTHER MATTERS THAT MAY FACILITATE THE JUST, SPEEDY AND
INEXPENSIVE DISPOSITION OF THIS MATTER.**

15

16    All parties agree that each will serve and accept all documents and communications

17  (including discovery requests and responses and production) in this civil action by email.

18

19

20

21

22

23

24

25

26

27

28

1    Dated: August 26, 2020                     Respectfully submitted,

2    HATTIS & LUKACS                            WILSON SONSINI GOODRICH & ROSATI
                                                A PROFESSIONAL CORPORATION
3

4    By: /s/ Daniel M. Hattis                   By: /s/ Keith E. Eggleton

5    Daniel M. Hattis, Esq. (SBN 232141)        Keith E. Eggleton, Esq. (SBN 159842)
     Paul Karl Lukacs, Esq. (SBN 197007)        Dale R. Bish, Esq. (SBN 235390)
6    HATTIS & LUKACS                            WILSON SONSINI GOODRICH & ROSATI
     400 108th Ave NE, Ste 500                  A PROFESSIONAL CORPORATION
7    Bellevue, WA 98004                         650 Page Mill Road
     Telephone: (425) 233-8650                  Palo Alto, CA 94304-1050
8    Facsimile: (425) 412-7171                  Telephone: (650) 493-9300
     Email: dan@hattislaw.com                   Facsimile: (650) 565-5100
9    Email: pkl@hattislaw.com                   Email: keggleton@wsgr.com
                                                Email: dbish@wsgr.com
10   L. Timothy Fisher (SBN 191626)
     Joel D. Smith (SBN 244902)                 *Attorneys for Defendant*
11   BURSOR & FISHER, P.A.                       *Western Digital Corporation*
     1990 North California Blvd., Suite 940
12   Walnut Creek, CA 94596
     Telephone: (925) 300-4455
13   Facsimile:  (925) 407-2700
     Email: ltfisher@bursor.com
14   Email: jsmith@bursor.com

15   *Attorneys for Plaintiffs*
     *and the Proposed Classes*
16

17

18                     **Attestation Pursuant to Civil Local Rule 5-1(i)**

19            Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document hereby attests that

20   concurrence in the filing of the document has been obtained from each of the other Signatories.

21

22                                              */s/ Daniel M. Hattis*
                                                Daniel M. Hattis
23

24

25

26

27

28