Daniel M. Hattis (SBN 232141)
dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
pkl@hattislaw.com
**HATTIS & LUKACS**
400 108th Ave NE, Suite 500
Bellevue, WA  98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email:  dan@hattislaw.com
Email:

L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Joel D. Smith (SBN 244902)
jsmith@bursor.com
Yitzchak Kopel (Admitted Pro Hac Vice)
ykopel@bursor.com
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

*Attorneys for Plaintiffs*

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Eric Y. Kizirian (SB# 210584)
eric.kizirian@lewisbrisbois.com
Joshua S. Hodas (SB# 250802)
josh.hodas@lewisbrisbois.com
Leo A. Bautista (SB# 149889)
leo.bautista@lewisbrisbois.com
Daniel C. DeCarlo (SB# 160307)
dan.decarlo@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Phone: 213.250.1800
Fax: 213.250.7900

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS MALONE,
CHRIS AYERS,
JAMES BACKUS,
BRIAN CONWAY,
DAVID EATON,
STEVEN GRAVEL,
JAMES RAAYMAKERS, and
TOD WEITZEL,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

WESTERN DIGITAL CORPORATION,

        Defendant.

Case No.  5:20-cv-03584-NC

*Hon. Nathanael M. Cousins*

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

4811-6824-7242.1

**1.**     **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the parties' obligations under the Federal Rules of Civil Procedure.  Any disputes arising out of the production of documents subject to this Order shall be resolved according to Federal Rules of Civil Procedure, any applicable Local Rules, and the Court's Standing Orders.

**2.**     **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.**     **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  They are as follows:

- For Plaintiffs: Yitzchak Kopel and Daniel Hattis
- For Defendant: Joshua S. Hodas

Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention to the extent that they have not designated another liaison in connection with a particular meet-and-confer undertaking.

**4.**     **PRESERVATION AND IDENTIFICATION OF ESI**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)     Only ESI created or received on or after January 1, 2014 will be preserved;

4811-6824-7242.1

b)      Within fourteen (14) days after entry of this order, Defendant shall provide to Plaintiffs a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  Within seven (7) days after their receipt of the list from Defendant, Plaintiffs shall provide to Defendant any proposed additions or revisions that Plaintiffs have to Defendant's list.  Within fourteen (14) days after Defendant provides its proposed list to Plaintiffs, the parties shall meet and confer and try to reach agreement regarding an initial list.  The parties shall preserve all rights to seek to add or remove sources and/or custodians to/from the list as may be reasonably necessary or appropriate, as this case and discovery proceed.  If the parties are unable to resolve any disputes regarding the list or changes to the list through good faith meet and confer, the parties shall promptly present any such disputes to the Court for a resolution.

c)      Within the same timeframes identified in Section 4.b, above, the parties will exchange proposed lists, and meet and confer regarding what data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced.

**5.     SEARCH**

Parties will meet and confer to discuss the use of search terms, filters and date ranges, or the use of advanced search and retrieval technologies.

**6.     PRODUCTION FORMATS**

The parties agree pursuant to Federal Rule of Civil Procedure 34(b)(2)(E) to produce documents in the formats set forth in Appendix 1 and 2 hereto.  The parties otherwise agree that the production of documents in the formats set forth in Appendix 1 and 2 hereto fully satisfies any requirement to either produce documents as they are kept in the ordinary course of business or to organize and label documents to correspond to the categories in a specific request under Federal Rule of Civil Procedure 34.

**7.     DOCUMENTS PROTECTED FROM DISCOVERY**

The production of documents (including both paper documents and electronically stored

information), whether inadvertent or otherwise,[1] subject to protection by the attorney-client and/or protected by the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection as set forth herein.

If the producing party notifies the receiving party after discovery that privileged materials ("Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party.  The receiving party agrees to use reasonable efforts to segregate Identified Materials and any notes or work product (or portions of work product) reflecting the contents of any Identified Materials and the receiving party will not review or use such segregated Identified Materials and/or work product unless the Court determines the Identified Materials to not be privileged.  The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The party returning the Identified Materials may move the Court for an order compelling production of some or all of the material returned or destroyed, but the basis for such a motion may not be the fact or circumstances of the production.

The parties agree that this Order is an Order entered under Rule 502(d) of the Federal Rules of Evidence and thus the disclosure of Identified Materials, whether inadvertent or otherwise, is not a waiver of the privilege in this proceeding or any other federal or state proceeding.

This stipulated agreement set forth in this section and its subparts does not constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. This agreement also is not intended to waive or limit in any way either party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the

---

[1] For the avoidance of doubt, "whether inadvertent or otherwise," as used in this Section 7, is not intended to include knowing and intentional production of protected documents by a party.

1    extent stated in the agreement.

2    **8.      PRIVILEGE LOG**

3            To the extent that a party reasonably determines that one or more responsive documents

4    are not discoverable or a portion of a document needs to be redacted because it is subject to the

5    attorney-client communication privilege or work product doctrine, or otherwise not discoverable

6    on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a

7    "Privilege"), the party shall produce a log treating each document withheld or redacted for

8    privilege from that production separately that sets forth: (a) the nature of the privilege(s) or other

9    protection claimed; (b) the date of the document; (c) the name of the author(s)/addresser,

10   addressee(s) and all recipients of the document (with respect to e-mail threads, the

11   author/addresser, addressee(s) and recipients of only the top e-mail in the chain will be set forth in

12   the author/addressee, addressee(s) and recipient fields of the log) and whether any person

13   identified is an attorney or an employee of Defendant's legal department; (d) a description of the

14   general subject matter contained in the document and the type of document (e.g., letter,

15   memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed

16   Privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and

17   (e) the custodian and/or location of the document. For redacted documents with multiple

18   redactions, one log entry can be used to describe the multiple redactions, so long as a single entry

19   is sufficient to adequately identify the basis for all redactions, as described in this paragraph.

20   Names of counsel shall be designated with an asterisk.  Unless otherwise agreed to by the parties,

21   any privilege log shall be produced within thirty (30) days of the corresponding document

22   production.

23           Privileged information generated or dated after May 26, 2020 need not be entered on a

24   privilege log. The absence of any reference to such materials in such logs shall not be deemed to

25   effect a waiver of any applicable claim of privilege or attorney work product.

26   **9.      HARD COPY DOCUMENT STORAGE**

27           During the pendency of this litigation, the parties shall make reasonable efforts to preserve

28   the originals of all hard copy documents as to which there may be issues of legibility of all or any

part of the production copy. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied.  If such request to inspect is denied, the party may seek relief from the Court.

**10.    REPRODUCTION AS NATIVES**

The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form, the producing party shall respond reasonably and in good faith to any such request.

**11.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

4811-6824-7242.1

## APPENDIX 1
## PRODUCTION DELIVERY REQUIREMENTS

**I.     GENERAL PRODUCTION PROVISIONS**

    **A.**     The parties have agreed that ESI should be produced as TIFF images and in Native format where applicable with accompanying data and image load files.

    **B.     TIFF Image Files:** The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

    **C.     Text Files:** Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

    **D.     OCR Text Files:**  The parties will provide searchable OCR text of any paper or imaged Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the producing party will produce the documents as they are kept in the ordinary course of business.

    **E.     Extracted Text Files from ESI:** The parties shall extract the text of each ESI item directly from the ESI native file whenever possible (i.e., and not scanned from a printed hard copy of the item). For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

4811-6824-7242.1

**F.     OCR Text for Redacted Documents:**  The parties will provide searchable OCR text for any redacted files.

**G.     Bates Numbering**:

**i.**     Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

**ii.**     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

**H.     Re-Production of Prior or Other Litigation Documents:** Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

This section does not constitute a concession by any party that any documents, including prior or other litigation documents, are discoverable or subject to production in this action. This

section does not waive or limit in any way either party's right to contest any request for any documents, including prior or other litigation documents, on any permissible grounds.

**I.     Parent-Child Relationships:** Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments may be produced – for example, privileged attachments may be removed and nonresponsive attachments may be replaced by a slip-sheet, but all documents within responsive families will be Bates numbered prior to production.

**J.     Color Documents:** If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, and/or in native format. This section also applies to documents that are produced as TIFF images.

**K.     Confidentiality Designations:** If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image.  If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated

by the producing party, appears on the Document. For each document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II.     PRODUCTION OF HARD COPY DOCUMENTS

**A.**     All hard copy Documents that are scanned as described in Section IV.B above will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format.

**B.**     **Unitization of Paper Documents:** To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

**C.**     **Identification:** Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

**D.**     **Custodian Identification:** The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**E.**     **Metadata:** The metadata associated with each hard copy Document need only identify the Bates number, the custodian associated with that hard copy Document, and any Confidential Designation or Redaction applied to that Document.

## III.     PRODUCTION OF "ESI"

**A.**     **De-NISTING and System Files:**  ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The parties may mutually agree upon any additional file types that can be excluded from review and production. A producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made

4811-6824-7242.1

1    following the date of this Order, and will utilize reasonable best efforts to do the same with

2    respect to any productions made prior to the date of this Order.

3         If a party excludes from review a standard, readable, and reviewable file type not within

4    the industry standard, that party must disclose such an exclusion to the other parties.

5         **B.**    <u>**Native Files:**</u>  Certain files types, such as presentation-application files (e.g., MS

6    PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual

7    files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native

8    format. For files produced in native format, the producing party shall provide a single-page TIFF

9    slipsheet with the applicable Bates stamp indicating that a native item was produced. The

10   corresponding load (.DAT) file shall include a NativeFilelink which provides the relative path

11   linking information for each native file that is produced.  In addition, the confidentiality

12   designation will be indicated in the name of the native file where reasonably feasible.

13        **C.**    <u>**Metadata Fields and Processing**</u>:

14        **i.**    ESI shall be processed in a manner that preserves the source native file and

15   relevant metadata without modification, including their existing time, date, and time-zone

16   metadata consistent with the requirements provided in this Order. The producing party will

17   provide to the receiving party information on the time zone in which the data was processed.

18        **ii.**    <u>**Hidden text:**</u> ESI shall be processed, to the extent practicable, in a manner

19   that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked

20   changes, redlines and comments. Upon request, a producing party will produce files with any

21   such information in native format.

22        **iii.**    <u>**Compressed Files and Encrypted Files:**</u> Compressed file types (i.e.,

23   .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a recursive manner to ensure that a zip

24   within a zip is decompressed into the lowest possible compression resulting in individual files.

25   The producing party will take reasonable steps, prior to production, to unencrypt any discoverable

26   electronically stored information that exists in encrypted format that can be reasonably

27   unencrypted. The producing party will take reasonable steps, prior to production, to remove

28

password protection from any discoverable electronically stored information that exists in password-protected format.

        **iv.**    **Microsoft "Auto" Feature and Macros:** For Microsoft Excel (.xls), Microsoft Word (.doc), and Microsoft PowerPoint (.ppt) documents that contain "auto" features, (e.g., where documents have an automatically updated date and time in the document), the metadata associated with such files shall accurately reflect the automatically populated fields (i.e., the metadata date or other automatically populated field will reflect the date and/or entry for how the document was used or held in the ordinary course of business).

        **v.**    **Metadata and Coded Fields:**  ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

    **D.**    This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

**IV.**    **DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA**

    **A.**    The parties will produce documents collected from databases or other structured databases in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the parties will meet and confer to address the production format. Prior to or during any such meet and confer, the producing party will provide sufficient information to enable the receiving party to evaluate the best method and format of production. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

**V.**    **RESPONSIVENESS, PRIVILEGE & REDACTIONS.**

    **A.**    The parties agree that if an attachment to an e-mail is wholly nonresponsive to the discovery requests, it must be Bates numbered but may be replaced by a slip-sheet in the

STIPULATED ORDER RE ESI
5:20-CV-03584-NC

1  production. Non-privileged cover e-mails to responsive documents, however, will be deemed
2  responsive and produced.

3        **B.**      To the extent that Defendant reasonably determines that e-mail or related
4  attachments that are responsive to Plaintiffs' document request are not discoverable because they
5  are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment
6  withheld separately.

7        **C.**      **Redactions:** The parties agree that where ESI items need to be redacted, they shall
8  be produced in TIFF format with each redaction clearly indicated or where TIFF format is not
9  practicable, in redacted native format, as noted below. Any unaffected data fields shall be
10  provided. The redaction of any material for privilege or other reason shall be governed by the
11  applicable rules and case law regarding privilege and the provisions contained in the Protective
12  Order entered in this action. Documents that are to be produced in native format, but that require
13  redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF
14  image production is not practicable (e.g., the file is a video or very large spreadsheet), the
15  producing party may produce a copy of the native file with the relevant portions replaced with
16  "REDACTED" or a similar mark. If modification of a native file is required for redaction
17  purposes, metadata information associated with that file should remain unchanged, unless it also
18  requires redaction. For each document that is redacted, a Redaction field will be populated with
19  the word "REDACTED" in the .DAT file.  Also, the producing party will keep a pristine original
20  copy of the native document.

21        **D.**      **Printing Specifications for Excel and PowerPoint files:** For Excel and
22  PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing
23  options shall be enabled:

24
    Print to TIFF Options
25       • Unhide columns and rows
     • Unhide worksheets
26       • Autofit columns and rows, settings to be over by columns first and, then down by
       rows
27       • Wrap text
     • Print gridlines
28       • Do not apply Autofilter
     • Display headings

| |
|---|
| • Display comments<br>• Header and Footer filename field handling: Show field code |
| PowerPoint Print to TIFF Options<br>• Print notes pages<br>• Print hidden slides<br>• Print comments |

   **i.**  The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

   **E.**  **De-duplication and Document Families:**

   **i.**  ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash.  For emails, de-duplication may be performed using a hash calculated using combination of metadata fields.  Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names.

   The parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have bcc recipients or unique attachments not included in the longest chain.  If a lesser-included email has a bcc recipient or unique attachment, then the lesser-included email must be separately produced with the attachments.

   If a party produces only inclusive email, the parties agree to redact any privileged content or message component and produce in full the rest of the conversation in the inclusives.

   "Near duplicate" documents shall be produced rather than removed. The producing party need only produce a single copy of a particular ESI.

   The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall identify custodians who were in possession of a de-duplicated Document in the

AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.

    **ii.**  De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups.  If any member of a family group is produced, all members of that group must be also be produced or else logged and no such member shall be withheld from production as a duplicate. The producing party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

  **F.**  **Load Files:** The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding Native file.

Concordance Data Load Files:

  The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);
- Quote - þ (ASCII 254);
- Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible.  Date fields may be combined date/time fields.
- All produced attachments should sequentially follow the parent Document/email.

  **G.**  **Sample Concordance .DAT Load File:**

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ
þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.t
tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

  The image load file must be in standard Option (.OPT) format and must reference each

TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

STIPULATED ORDER RE ESI
5:20-CV-03584-NC

4811-6824-7242.1

1

## **APPENDIX 2:  ESI METADATA AND CODING FIELDS**

2

3       The chart below describes the metadata fields to be produced, where reasonably available,

4  in generic, commonly used terms which the producing party is to adapt to the specific types of

5  ESI it is producing, to the extent such metadata fields exist associated with the original electronic

6  Documents and are automatically generated as part of the electronic data discovery process. Any

7  ambiguity about a metadata field should be discussed with the receiving party prior to processing

8  the subject ESI for production.

9

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName/AttachList | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[2] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

---

28  [2] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

STIPULATED ORDER RE ESI
5:20-CV-03584-NC

4811-6824-7242.1

| Field Name | Field Description |
|---|---|
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
|  |  |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent  (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate | Date the item was last modified |

4811-6824-7242.1

| Field Name | Field Description |
|---|---|
| (mm/dd/yyyy) | |
| LastModTime (hh:mm AM/PM) | Time the item was last modified (Date and time fields may be combined) |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable.  Otherwise, blank. |

- 3 -

1        **IT IS SO STIPULATED**, through Counsel of Record.

2

3    Dated: September 16, 2020       Respectfully submitted,

4                            **HATTIS & LUKACS**

5                            By: _/s/ Daniel M. Hattis_
6                                 Daniel M. Hattis

7                          Daniel M. Hattis (SBN 232141)
                               dan@hattislaw.com
8                          Paul Karl Lukacs (SBN 197007)
                               pkl@hattislaw.com
9                          400 108th Ave NE, Suite 500
                          Bellevue, WA  98004
10                       Telephone: (425) 233-8650
                        Facsimile: (425) 412-7171

11                        **BURSOR & FISHER, P.A.**
12                        L. Timothy Fisher (SBN 191626)
                             ltfisher@bursor.com
13                       Joel D. Smith (SBN 244902)
                             jsmith@bursor.com
14                       Yitzchak Kopel (Admitted Pro Hac Vice)
                             ykopel@bursor.com
15                       1990 North California Boulevard, Ste. 940
                        Walnut Creek, CA  94596
16                       Telephone: (925) 300-4455
                        Facsimile: (925) 407-2700

17                        _Attorneys for Plaintiffs_

18

19   Dated: September 16, 2020       **LEWIS BRISBOIS BISGAARD & SMITH LLP**

20                        By: _/s/_____
                               Joshua S. Hodas

21                       Eric Y. Kizirian (SB# 210584)
22                            eric.kizirian@lewisbrisbois.com
                       Joshua S. Hodas (SB# 250802)
23                           josh.hodas@lewisbrisbois.com
                       Leo A. Bautista (SB# 149889)
24                            leo.bautista@lewisbrisbois.com
                       Daniel C. DeCarlo (SB# 160307)
25                            dan.decarlo@lewisbrisbois.com
                       633 West 5th Street, Suite 4000
26                       Los Angeles, California 90071
                       Phone: 213.250.1800
                       Fax: 213.250.7900
27

28                      _Attorneys for Defendant_

4811-6824-7242.1

1

2          Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in

3     the filing of this document has been obtained from all signatories.

4               By:___/s/_____

5                    Daniel Hattis

6

7          **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

8

9

10    Dated: _____        _____

11                                      HON. NATHANAEL M. COUSINS
                                        United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4811-6824-7242.1