1  **BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
2  888 Seventh Avenue, Third Floor
New York, NY 10019
3  Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
4  Email: ykopel@bursor.com

5  **BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
6  1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
7  Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
8  E-Mail: ltfisher@bursor.com

**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
    pkl@hattislaw.com

*Attorneys for Plaintiffs*

9

10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13

14  NICHOLAS MALONE, CHRIS AYERS,
JAMES BACKUS, BRIAN CONWAY,
DAVID EATON, STEVEN GRAVEL,
15  JAMES RAAYMAKERS, and TOD WEITZEL,
on behalf of themselves and all others similarly
16  situated,

17              Plaintiffs,

18  v.

19  WESTERN DIGITAL CORPORATION,

20              Defendant.

Case No. 5:20-cv-03584-NC

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT, PROVISIONAL
CERTIFICATION OF NATIONWIDE
SETTLEMENT CLASS, AND
APPROVAL OF PROCEDURE FOR
AND FORM OF NOTICE**

Date   July 21, 2021
Time:  1:00 p.m.
Courtroom: 5, 4th Floor
Judge: Hon. Nathaniel Cousins

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 21, 2021 at 1:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South 1st Street, Courtroom 5, 4th Floor, San Jose, California 95113 in the courtroom of Hon. Nathaniel Cousins, Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement ("Settlement Agreement"), (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. and Hattis & Lukacs as Class Counsel, (iii) establish procedures for giving notice to members of the Class, (iv) approve forms of notice to Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice, the accompanying Declarations of Yitzchak Kopel and Daniel M. Hattis and attachments thereto, the Declarations of Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel, the Settlement Agreement, the Declaration of JND Legal Administration, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated:  June 11, 2021                           Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:___*/s/ Yitzchak Kopel*_____
                                                      Yitzchak Kopel

1

Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
          pkl@hattislaw.com

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL BACKGROUND .......................................................................2

III. TERMS OF THE PROPOSED SETTLEMENT ..................................................3

    A. Class Definition .........................................................................................3

    B. Monetary Relief .........................................................................................4

    C. Injunctive Relief And Other Benefits .......................................................5

    D. Release .......................................................................................................5

    E. Incentive Awards .......................................................................................6

    F. Attorneys' Fees And Expenses ..................................................................6

    G. Payment of Notice and Administrative Fees .............................................6

IV. LEGAL STANDARD ...........................................................................................7

V. ARGUMENT .........................................................................................................9

    A. The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a), 23(b)(2), And 23(b)(3) .....................................................................9

        1. Fed. R. Civ. P. 23(a)(1) – Numerosity ..........................................9

        2. Fed. R. Civ. P. 23(a)(2) – Commonality .......................................9

        3. Fed. R. Civ. P. 23(a)(3) – Typicality ..........................................10

        4. Fed. R. Civ. P. 23(a)(4) – Adequacy ...........................................10

        5. Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority ..........12

        6. The Class Also Satisfies Fed. R. Civ. P. 23(b)(2) ........................13

    B. The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable ........................................................14

        1. The Settlement Class Meets All Of The *Hanlon* Factors ...........15

            i. Hanlon Factor 1 – The Strength Of Plaintiff's Case .......15

            ii. Hanlon Factor 2 – The Risk, Expense, Complexity, And Likely Duration Of Further Litigation .....................16

            iii. Hanlon Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial.................................16

            iv. Hanlon Factor 4 – The Amount Offered In Settlement....17

            v. Hanlon Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings...........17

            vi. Hanlon Factor 6 – The Experience And Views Of Counsel ..........................................................................18

        2. The Settlement Class Meets All Of The New Rule 23(e)(2) Factors .......................................................................................18

|  |  | i. | Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class | 18 |
|  |  | ii. | Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length | 19 |
|  |  | iii. | Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate | 19 |
|  |  | iv. | Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other | 23 |
|  | C. | The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved | | 23 |
| VI. | CONCLUSION | | | 25 |

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ...................................................................................... 12

5

*Bos. & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,*
6
   778 F.2d 890 (1st Cir. 1985) ......................................................................... 22

7

*Cosgrove v. Sullivan,*
   759 F. Supp. 166 (S.D.N.Y. 1991) ................................................................ 23
8

9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ...................................... 15, 16

10

*Ellis v. Costco Wholesale Corp.,*
11
   657 F.3d 970 (9th Cir. 2011) ......................................................................... 13

12

*Farrell v. Bank of Am. Corp., N.A.,*
   827 F. App'x 628 (9th Cir. 2020) .................................................................. 21
13

14

*Fischel v. Equitable Life Assur. Soc'y of U.S.,*
   307 F.3d 997 (9th Cir. 2002) ......................................................................... 20

15

*Fitzhenry-Russell v. Coca-Cola Co.,*
16
   2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) .............................................. 16

17

*G. F. v. Contra Costa County,*
   2015 WL 4606078 (N.D. Cal. July 30, 2015) .............................................. 19
18

19

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................... 15, 19

20

*Gen. Tel. Co. of Sw. v. Falcon,*
21
   457 U.S. 147 (1982) ...................................................................................... 10

22

*Greer v. Dick's Sporting Goods, Inc.,*
   2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ............................................. 14
23

24

*Greko v. Diesel U.S.A., Inc.,*
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ........................................... 6, 7

25

*Hanlon v. Chrysler Corp.,*
26
   150 F.3d 1011 (9th Cir. 1998) ................................................................ passim

27

*Hartless v. Clorox Co.,*
   273 F.R.D. 630 (S.D. Cal. 2011) ................................................................... 21

28

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) ................................................................ 12

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................... 18, 23, 24

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)................................. 9, 10, 13

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ......................... 17, 19, 20, 25

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................. 16

*In re Beverly Hills Fire Litig.*,
639 F. Supp. 915 (E.D. Ky. 1986) ........................................................... 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................... 22

*In re Cenco Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ........................................................... 22

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ............................................................... 9

*In re Facebook Biometric Info. Priv. Litig.*,
2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ............................................. 5

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................... 20, 23

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................. 17, 19

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................... 17

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015)............................................. 10, 13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................... 18

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................. 8, 20

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................ 7, 8

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................. 7, 8

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
  2019 WL 6327363 (N.D. Cal. Nov. 26, 2019) ............................................ 20

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................ 9, 13

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ............................................ 17

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ...................................................................... 22

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) .............................................. 19

*Kumar v. Salov N. Am. Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017) .............................................. 21

*Lealao v. Beneficial California, Inc*,
  82 Cal. App. 4th 19 (2000) ...................................................................... 21

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ............................................ 13

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ............................ 10, 12, 13

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) ............................................................ 8, 9

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ................................................................ 20

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
  1986 WL 10791 (E.D. Pa. Sept. 30, 1986) ................................................ 23

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ............................................................ 7, 12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................ 8, 9, 15

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................ 25

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................................ 8

*Rabin v. Concord Assets Grp., Inc.*,
  1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ...................................................... 22

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ..................................................................... 22

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................... 15, 16, 18, 19

*Smith v. Kaiser Foundation Hospitals*,
  2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ................................................... 14

*State of Fla. v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) ............................................................................. 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................... 11, 21

*Vega v. Weatherford U.S., Limited Partnership*,
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ..................................................... 18

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................................... 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................... 22

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................ 9

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ........................................................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................................... 13

*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .................................................... 21

**STATUTES**

California Business and Professions Code § 17200 ...................................................... 2

California Business and Professions Code § 17500 ...................................................... 2

**RULES**

Fed. R. Civ. P. 23(a) .................................................................................................... 9, 10

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 10, 11, 19

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 9, 13, 14

Fed. R. Civ. P. 23(b)(3) ............................................................................................... passim

Fed. R. Civ. P. 23(c)(2) .................................................................................................... 24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 23

Fed. R. Civ. P. 23(e) .................................................................................................... 9, 14

Fed. R. Civ. P. 23(e)(1) .................................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ............................................................................................... passim

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................... 18, 19

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................... 19, 23

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 23

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 14, 19, 23

Fed. R. Civ. P. 23(f) ........................................................................................................ 17

**OTHER AUTHORITIES**

Manual for Complex Litigation § 21.312 (4th ed. 2004) ...................................................... 7

Manual for Complex Litigation § 21.633 (4th ed. 2004) .................................................... 23

Newberg on Class Actions § 11.28  (1992) ....................................................................... 11

Newberg on Class Actions § 11.25 (1992) .......................................................................... 7

Newberg on Class Actions § 14:03 (3d ed. 1992) ............................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  The Settlement Agreement ("Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of Yitzchak Kopel ("Kopel Decl."), filed herewith.

Plaintiffs' Second Amended Class Action Complaint, Dkt. No. 19 (the "SAC"), alleges that Defendant Western Digital Corporation ("Western Digital" or "Defendant") falsely advertised certain of its WD Red NAS hard drives (hereinafter, the "Subject Products")[2] as designed for and suitable for use in NAS (Network Attached Storage) and Redundant Array of Independent Disks ("RAID") devices, but which in fact are not suitable for that intended use and which put customer data at greater risk of data loss or destruction because the Products utilize inappropriate recording technology called "SMR" (Shingled Magnetic Recording) as opposed to industry-standard "CMR" (Conventional Magnetic Recording) technology.  Defendant has vigorously denied these allegations and asserted numerous defenses.

After a full-day mediation before Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco, followed by two and a half months of additional arms-length negotiations, and undertaking a thorough investigation, the parties have reached a settlement that provides a real and substantial monetary and non-monetary benefit to the Class.  Defendant has agreed to establish a common fund of $2,700,000 to pay claims for those who purchased the Products, inclusive of notice costs, class representative incentive awards, and reasonable attorney's fees.

Class Members can receive between $4.00 and $7.00 cash award for each Subject Product the Claimant purchased during the Class Period, subject to a maximum *pro rata* adjustment of 85% of the Subject Products' retail purchase price (i.e., 85% of $69.99 for the 2TB Subject Product,

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement.  *See* Kopel Decl., Ex. 1.

[2] The affected WD Red NAS hard drives have the following SKUs: WD20EFAX (2TB capacity), WD30EFAX (3TB capacity), WD40EFAX (4TB capacity) and WD60EFAX (6TB capacity)

$84.99 for the 3TB Subject Product, $94.99 for the 4TB Subject Product, and $145.99 for the 6TB Subject Product).[3]  No proof of purchase is required to submit a claim, and Claimants may submit claims for each Subject Product purchased.  This is an excellent result for Class Members.  *See* Argument § V.B.1.iv, *infra*.

The Settlement also provides significant injunctive relief.  Within 60 days of the effective date of the settlement, Western Digital shall clearly and conspicuously disclose the use of SMR technology on the product packaging and website product page on westerndigital.com of all WD Red NAS Drives with SMR technology.  The requirements of this injunctive relief must be complied with for no less than 4 years after the Effective Date of the Settlement.

The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiffs respectfully request that the Court enter an order in the form of the Proposed Preliminary Approval Order, which is attached to the Settlement as Exhibit C.  That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Bursor & Fisher, P.A. and Hattis & Lukacs as Class Counsel; (3) appoint JND Legal Administration as the Settlement Administrator and establish procedures for giving notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (5) set a date, time and place for a final approval hearing.

## II.   PROCEDURAL BACKGROUND

On May 29, 2020, Plaintiff Nicholas Malone commenced this putative class action captioned *Malone v. Western Digital Corporation*, United States District Court, Northern District of California, Case No. 5:20-cv-03584, asserting claims California Code § 1750 *et seq.*, California Business and Professions Code § 17200 *et seq.*, and California Business and Professions Code

---

[3] The maximum pro rata upward adjustment amount was the subject of dispute between Plaintiffs and Defendant.  Plaintiffs advocated for a full refund, whereas Defendant insisted on a cap of $36 per 2TB and 3TB Hard Drives, and a cap of $63 for 4TB and 6TB Hard Drives.  Pursuant to the parties' executed Class Action Settlement Term Sheet, this issue was decided by a third-party neutral, Hon. Elizabeth Laporte (Ret.).  Judge Laporte received written submissions from both parties and issued a decision of 85% of the Subject Products' retail purchase price as the maximum pro rata upward adjustment.  Judge Laporte's decision is attached to the Kopel Declaration as Exhibit 3.

§ 17500 *et seq.*  Mr. Malone alleged, *inter alia*, that Defendant deceived customers by surreptitiously using Shingled Magnetic Recording ("SMR") technology in certain of its Hard Drive products.  On June 16, 2020, Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, and Tod Weitzel, filed a First Amended Complaint asserting the same claims.  Dkt. No. 7.

On June 19, 2020, Plaintiff James Raaymakers commenced an action entitled *Raaymakers v. Western Digital Corporation*, United States District Court, Northern District of California, Case No. 5:20-cv-04091, asserting substantially similar claims as the *Malone* action.  On July 27, 2021, the Court granted a stipulation signed by all the Parties to consolidate the *Raaymakers* action with the *Malone* action.  Dkt. No. 14.  On August 10, 2020, all Plaintiffs filed the Second Amended Complaint (the "SAC") under the caption of the *Malone* action.  Dkt. No. 19.  Defendant answered the SAC on September 16, 2020, denying liability.  Dkt. No. 41.

The Parties have engaged in significant discovery.  *See* Kopel Decl. ¶ 2.  The Parties exchanged and met and conferred concerning a number of discovery requests, including interrogatories and requests for production.  *Id.*  In response, Western Digital produced critical documents concerning the case to Plaintiffs.  *Id.*  Plaintiffs reviewed the documents produced by Western Digital, as well as information obtained through their own research and investigation.  *Id.*

Counsel for Plaintiffs and counsel for Defendant have engaged in substantial arm's-length negotiations in an effort to resolve this action.  *Id.* ¶ 3.  On January 13, 2021, the Parties attended a virtual mediation with Judge Elizabeth Laporte (Ret.) of JAMS San Francisco.  The mediation lasted a full day but was unsuccessful.  However, over the following two and a half months, the Parties directly engaged in further extensive settlement discussions.  As a result of those discussions, the Parties executed a Class Action Settlement Term Sheet on March 9, 2021.  *Id.*

III.  **TERMS OF THE PROPOSED SETTLEMENT**

   A.   **Class Definition**

The Settlement Class consists of "all persons in the United States (including its states, districts or territories) who purchased a WD Red NAS Drive using Shingled Magnetic Recording

("SMR") technology[4] between October 2018 and the date on which the Court preliminarily approves these settlement terms." Settlement ¶ 1.22. Excluded from the Class are (a) Defendant and its employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class. *Id.*

In the SAC, Plaintiffs sought to certify a nationwide Class of "All United States residents who, during the applicable limitations period, either (a) purchased from any seller any Western Digital Red NAS hard drive with SMR technology, or (b) received from Western Digital a replacement Red NAS hard drive with SMR technology." SAC ¶ 272. The proposed class and the Settlement Class are thus different in that (1) the Settlement Class sets the initial date as October 2018 as opposed to the "applicable limitations period," and (2) the Settlement Class does not include those who received a replacement "Red NAS hard drive with SMR technology." The former change was made to match the date Defendant first began using SMR technology in the Subject Products. The latter change was made due to concerns about the standing of persons who did not actually purchase one of the Subject Products.

### B. Monetary Relief

Western Digital has agreed to pay a common fund of $2,700,000 to cover all claims filed by Class Members as well as the costs of settlement administration, incentive awards, and attorneys' fees, costs and expenses. Settlement ¶ 2.1. Class Members can receive a cash payment of between $4.00 and $7.00 for each Subject Product they purchased during the Class Period, no proof of purchase required, and subject to pro-rata upward adjustment of up to 85% of the retail purchase price each of the Hard Drives purchased, which based on prevailing market prices are defined as follows: 2TB (MSRP $84.99); 3 TB (MSRP $106.99); 4 TB (MSRP $119.99); 6TB (MSRP $179.99). Settlement ¶¶ 2.4-2.7. Assuming all claimants receive their maximum allowable upward adjustments, they would therefore receive between $72.24 and $152.99 per claim.

---

[4] Specifically, one of the following models: WD20EFAX (2TB capacity), WD30EFAX (3TB capacity), WD40EFAX (4TB capacity), and WD60EFAX (6TB capacity) hard drives.

Pursuant to Rule 1.e. of this District's Procedural Guidance for Class Action Settlements (the "Procedural Guidance"), Class Counsel states that had they prevailed at trial, Plaintiffs and the class would have recovered compensatory damages in the form of the price premium paid for the Subject Products ($4.00-$7.00), for an estimated total of $947,221, plus punitive damages. Massachusetts, New York, and Virginia subclass members could also have recovered statutory damages and attorneys' fees. Pursuant to Rule 1.g. of the Procedural Guidance, Class Counsel estimates that approximately 4-9% of Settlement Class Members are likely to submit a Claim Form. *See* Kopel Decl. ¶ 11; *see also In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (claims rate of "4-9% [] is typical for consumer class actions"). No money will revert to Defendant under the Settlement.

## C.     Injunctive Relief And Other Benefits

Within 60 days of the effective date of the settlement, Western Digital shall clearly and conspicuously disclose the use of SMR technology on the product packaging and website product page on westerndigital.com of all WD Red NAS Drives with SMR technology. The requirements of this injunctive relief must be complied with for no less than 4 years after the Effective Date of the Settlement. Settlement ¶ 2.10. Class Counsel estimates the value of this injunctive relief to class members at over $2 million. Kopel Decl. ¶¶ 5-9. Any amounts still remaining in the Settlement Fund after an upward adjustment will go to *cy pres*, to Public Counsel, the "Nation's Largest Pro Bono Law Firm," that, among other practice areas, offers "Consumer Rights & Economic Justice" representation that "assists with a wide variety of consumer matters, including consumer fraud, unfair business practices, foreclosure and real estate fraud. This recipient is appropriate because it focuses on consumer fraud issues, as is alleged in this case. Neither Class Counsel nor Plaintiffs nor Defendant have any relationship with Public Counsel, nor have they, to the best of their knowledge, made monetary donations to Public Counsel in the past. Defendant has donated three hard drives to Public Counsel in the past, but not the Subject Products in this Litigation. Settlement ¶ 2.7.

## D.     Release

In exchange for the relief described above, Defendant and each of its related and affiliated

entities as well as all "Released Persons" as defined in Settlement § 1.20 will receive a full release of all claims arising out of or related to the alleged inefficacy of the Subject Products, SMR technology, and/or the purchase of any of the Subject Products.  Attached to the Settlement as Ex. H is a complete list of released parties.  *See* Settlement §§ 6.1-6.4 for full release language.  The claims released by the Settlement are not different than those stated in the SAC.

### E.     Incentive Awards

Subject to the Court's approval, Defendant has agreed to pay incentive awards to each Plaintiff in the amount of $2,500.  Settlement ¶ 3.3.  The named Plaintiffs have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaint, have been in contact with counsel frequently, and have stayed informed of the status of the action, including settlement.  *See generally* Declarations of Plaintiffs; *see also Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal. Apr. 26, 2013) (Cousins, J.) (granting request for $5,000 incentive award).

### F.     Attorneys' Fees And Expenses

Class Counsel will make an application to the Court for an award of attorneys' fees, costs and expenses of up to one-third (or $900,000) of the monetary value of the Settlement Fund (but excluding the value of non-monetary relief provided to Class Members).  Defendant has the right to challenge the amount of Plaintiffs' fees, costs and expenses and there is no agreement as to the amount of attorneys' fees, costs and expenses that will be sought by Class Counsel.

### G.     Payment of Notice and Administrative Fees

The parties propose that JND Legal Administration ("JND") act as the Settlement Administrator.  Settlement ¶ 1.21.  JND was selected after a competitive bidding process in which four settlement administrators submitted proposals.  Kopel Decl. ¶ 18.  In each instance, the settlement administrators proposed notice programs in which identified class members would receive notice by mail and unidentified class members would receive publication notice through use of online advertising, and a claims process whereby class members could fill out the agreed upon claim form online and in print.  *Id.*  However, JND's plan was the most robust proposal in that it proposed an electronic class notice plan targeted a population most closely matching the

demographics of class members based on research regarding purchasers of external hard drives in the Unites States.  It also provided for 325 million impressions – more than 3 times the next highest proposal.  Thus, Class Counsel concluded that JND's plan provided the best opportunity for notice to reach the greatest number of Class Members and allow for the highest potential claims rate for this case.  Kopel Decl.  *Id*.

The cost of settlement administration is estimated to be $302,073, or approximately 11% of the value of the settlement fund.  This amount is reasonable for the proposed services to be provided.  *See id.*

Plaintiffs have also submitted a declaration from Gina Intrepido-Bowden, a Vice President at JND, describing the notice plan for this case, JND's qualifications, and other disclosures mandated by this District's Procedural Guidance for Class Action Settlements.

## IV.    LEGAL STANDARD

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("*In re Syncor*").  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See* MANUAL FOR COMPLEX LITIGATION § 21.312 at 293-96 (4th ed. 2004).

At the preliminary approval stage, "[t]he court is really only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys."  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (internal quotations omitted).  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting NEWBERG ON CLASS ACTIONS §

11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "*falls within the range of possible approval*") (emphasis added).

Nevertheless, a review of the standards applied in determining whether a settlement should be given final approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)); *see also Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.").  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."  *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated

between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to

all concerned." *Officers for Justice*, 688 F.2d at 625.

## V.      ARGUMENT

### A.      The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a), 23(b)(2), And 23(b)(3)

"Before the court may evaluate a class action settlement under Rule 23(e) of the Federal

Rules of Civil Procedure, the settlement class must meet the requirements of Rules 23(a)": (1)

numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Millan*, 310

F.R.D. at 603.  "Once subsection (a) is satisfied, the putative class must then fulfill the

requirements of Rule 23(b)(3)." *Id.*  The Settlement Class meets all of these requirements.

#### 1.      Fed. R. Civ. P. 23(a)(1) – Numerosity

A proposed class must be so numerous that joinder of all members individually is

impractical.  Fed. R. Civ. P. 23(a)(1).  "[G]enerally, forty or more members will satisfy the

numerosity requirement." *Millan*, 310 F.R.D. at 603.   Here, the proposed Class is comprised of

hundreds of thousands of consumers who purchased the Subject Products – a number that

obviously satisfies the numerosity requirement.  *See* JND Decl. Ex. B (Notice Plan).  Accordingly,

numerosity is easily met for the purposes of preliminary approval.

#### 2.      Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered

the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  "This

requirement has been construed permissively, and all questions of fact and law need not be

common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL

4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted).  "Indeed,

"for purposes of Rule 23(a)(2), even a single common question will do." *Id.*  "[C]ourts routinely

find commonality satisfied in false advertising cases such as the case at bar." *In re ConAgra

Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014); *see also Hilsley v. Ocean Spray Cranberries,*

*Inc.*, 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) ("In misbranding or false advertising cases, courts routinely find that commonality has been satisfied.").

Here, Plaintiffs allege that Defendant mislabeled the Subject Products as suitable for use in NAS and RAID systems despite using SMR technology.  "Resolution of this common claim depends on a critical common question of fact:  whether Defendant['s] statements were in fact false."  *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *6 (E.D. Cal. Mar. 29, 2019) (finding commonality was met where plaintiff alleged "they purchased Benecol because of statements on the product's packaging and those statements were false"); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015) ("*In re NJOY*") (commonality satisfied where "the common question is whether NJOY's advertisements and product packaging were misleading to a reasonable consumer").  Thus, commonality is satisfied.

### 3.   Fed. R. Civ. P. 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

"Here, Plaintiff[s] ha[ve] demonstrated that [their] claims are typical as the Complaint alleges that [Plaintiffs] and all class members purchased the Products, were deceived by the false and deceptive labeling and lost money as a result."  *Hilsley*, 2018 WL 6300479, at *6; *see also* SAC ¶¶ 1-11; Plaintiffs' Declarations ¶¶ 4-9.  "All class members were exposed to the same … affirmative misrepresentation on the labels of the Products."  *Hilsley*, 2018 WL 6300479, at *6. Therefore, Plaintiffs satisfy the typicality requirement.

### 4.   Fed. R. Civ. P. 23(a)(4) – Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and

1   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To determine whether the

2   representation meets this standard, we ask two questions: (1) do the representative plaintiffs and

3   their counsel have any conflicts of interest with other class members, and (2) will the representative

4   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v.*

5   *Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Adequacy is presumed where a fair settlement was

6   negotiated at arm's-length.  NEWBERG ON CLASS ACTIONS §11.28, at 11-59.

7         As to the first inquiry, Plaintiffs and Class Counsel have no conflicts of interests with the

8   Class.  *See* Plaintiffs' Declarations ¶¶ 14-15.  Rather, the named Plaintiffs, like each absent Class

9   Member, has a strong interest in proving Defendant's common course of conduct, and obtaining

10  redress.  *Id.* ¶¶ 11-12, 16.

11        As to the second inquiry, Plaintiffs and Class Counsel have vigorously and competently

12  pursued the Class Members' claims.  Class Counsel has engaged in significant, arm's-length

13  negotiations over the course of many months, including with the assistance of a certified mediator.

14  Kopel Decl. ¶ 3; *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D.

15  Cal. Nov. 21, 2012) (use of mediator "tends to support the conclusion that the settlement process

16  was not collusive").  The Settlement provides the price premium paid by Settlement Class

17  Members for the Subject Products – the exact relief that Plaintiffs sought on behalf of themselves

18  and the Settlement Class Members.  Further, Class Counsel have extensive experience and

19  expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are

20  highly experienced in class action, product liability, and consumer fraud litigation.  *See* Kopel

21  Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.); Declaration of Daniel M. Hattis ¶¶ 2-8.  And

22  Plaintiffs have remained engaged in the litigation, including constant communication with Class

23  Counsel and overseeing the drafting of certain documents.  Plaintiffs' Decls. ¶¶ 11-12.

24        Thus, in pursing this litigation, Class Counsel, as well as the named Plaintiff, have

25  advanced and will continue to advance and fully protect the common interests of all members of

26  the Settlement Class.  Accordingly, Rule 23(a)(4) is satisfied.

27

28

1

2

### 5.     Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority

Fed. R. Civ. P. 23(b)(3) requires Plaintiff to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Martinelli*, 2019 WL 1429653, at *7.  As the Supreme Court explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) .

Here, predominance is met because "common questions … present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication."  *Murillo*, 266 F.R.D. at 476.  These common questions include, but are not limited to:  (1) whether Defendant's representations/omissions regarding the Subject Products were false and misleading or reasonably likely to deceive consumers; (2) whether Defendant violated the CLRA, UCL, FAL, and other consumer protection statutes; (3) whether Defendant breached an express or implied warranty; (4) whether Defendant defrauded Plaintiffs and the Class Members; and (5) whether Plaintiffs and the Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019) (finding predominance met where "the class claims turn on the automakers' common course of conduct—their fuel economy statements"); *Hawkins v.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Kroger Co.*, 337 F.R.D. 518, 541 (S.D. Cal. 2020) (predominance met where "common and cohesive issue is whether Kroger wrongfully labeled its breadcrumbs as containing '0g Trans Fat'"); *Hilsley*, 2018 WL 6300479, at *11 (predominance satisfied where "Plaintiff's UCL, FAL and CLRA claims depend on whether the labels are unlawful, unfair, deceptive, or misleading to reasonable consumers") (internal quotations omitted).

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In cases where Plaintiff are unable to proceed individually because the disparity between litigation costs and the recovery sought is too high, the class-action device may be an effective means to pool claims which would be uneconomical to litigate individually." *In re Yahoo*, 2020 WL 4212811, at *7. Here, "the price premium attributable to consumers' belief that [the Subject Products were suitable for NAS and RAID systems] will, if calculable, be small." *In re NJOY*, 120 F. Supp. 3d at 1122. Thus, "it would be unfeasible for many of the purported class members to obtain relief on an individual basis." *Martinelli*, 2019 WL 1429653, at *8. Thus, "because the misrepresentation claims are common to the class, involve small sums of money … and do not rely on individual determinations, a class action is the superior method of efficiently and fairly adjudicating Plaintiff and the class members' claims in this case." *Hilsley*, 2018 WL 6300479, at *18

### 6.   The Class Also Satisfies Fed. R. Civ. P. 23(b)(2)

The proposed class is also well suited for certification under Rule 23(b)(2). *See gen. Lilly v. Jamba Juice Co*., 2015 WL 1248027, at *3-5 (N.D. Cal. Mar. 18, 2015) (granting preliminary approval of a Rule 23(b)(2) class of smoothie kit purchasers); *see also Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 978 (9th Cir. 2011) (explaining that the district court may certify a Rule 23(b)(2) class and a separate Rule 23(b)(3) class). As discussed above, the Settlement provides precisely the injunctive relief sought in the Complaint, consisting of, *inter alia*, changing the labeling of the Subject Products to ensure transparency about what consumers are actually purchasing. Absent the Settlement, this type of injunctive relief would only be available to Class

Members after prevailing at trial on the merits.  Thus, the requirements of Rule 23(b)(2) are met.

**B.    The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable**

Fed. R. Civ. P. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026 (the "*Hanlon* Factors").[5]

"These factors substantively track those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other."

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  The new Rule 23(e) factors are "not intended to 'displace' any factors developer over the years in the circuit courts."  *Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282, at *9 (S.D. Cal. Aug. 26, 2020) (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

---

[5] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

Here, the Settlement Class meets both the *Hanlon* Factors and the new Rule 23(e)(2) factors.

### 1.     <u>The Settlement Class Meets All Of The *Hanlon* Factors</u>

#### i.     *Hanlon Factor 1 – The Strength Of Plaintiff's Case*

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Kopel Declaration, Class Counsel engaged in arms-length negotiations with Defendant's counsel and with the assistance of a neutral mediator, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Kopel Decl. ¶¶ 1-3, 19-20. Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured. *Id*. ¶ 20. They also recognize that they would face risks at class certification, summary judgment, and trial. *Id*. Defendant vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Class suffered any harm or damages. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. *Id*. The Settlement also abrogates the risks that might prevent them from obtaining any relief. *Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Accordingly, this factor is met.

1

      *ii.*    *Hanlon Factor 2 – The Risk, Expense, Complexity, And*
            *Likely Duration Of Further Litigation*

2

     As referenced above, proceeding in this litigation in the absence of settlement poses various

3

risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or

4

losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See*

5

*Rodriguez*, 563 F.3d at 966; *Curtis-Bauer*, 2008 WL 4667090, at *4 ("Settlement avoids the

6

complexity, delay, risk and expense of continuing with the litigation and will produce a prompt,

7

certain, and substantial recovery for the Plaintiff class."). Even assuming Plaintiffs were to survive

8

summary judgment, they would face the risk of establishing liability at trial in light of conflicting

9

expert testimony between their own expert witnesses and Defendant's expert witnesses. In this

10

"battle of experts," it is virtually impossible to predict with any certainty which testimony would be

11

credited, and ultimately, which expert version would be accepted by the jury. *Fitzhenry-Russell v.*

12

*Coca-Cola Co.*, 2019 WL 11557486, at *4 (N.D. Cal. Oct. 3, 2019) (granting final approval where

13

"[t]here would be a battle of the experts regarding consumer understanding and materiality of the

14

representation and the computation of damages, if any"). The experience of Class Counsel has

15

taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

16

     Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that

17

could be presented by both sides, there is a substantial likelihood that Class Members may not be

18

awarded significantly more than is offered to them under this Settlement on an individual basis.

19

For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6,

20

1991), the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's

21

findings, recoverable damages would have exceeded $100 million. However, weeks later, Judge

22

Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual

23

defendants, and ordered a new trial with respect to the corporate defendant. *Id.* By settling,

24

Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process.

25

      *iii.*    *Hanlon Factor 3 – The Risk Of Maintaining Class Action*
            *Status Throughout The Trial*

26

     In addition to the risks of continuing the litigation, Plaintiffs would also face risks in

27

certifying a class and maintaining class status through trial. Even if the Court were to grant a

28

motion for class certification, the class could still be decertified at any time.   *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).   From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

><i>iv.</i>     <i>Hanlon Factor 4 – The Amount Offered In Settlement</i>

By any measure, the Settlement here offers meaningful relief for the Settlement Class. Defendant "has agreed to settle this matter for a non-reversionary total of [$2,700,000].   In lieu of taking this matter to trial with the possibility of obtaining no relief, this is an excellent result for the Class." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020).   All Settlement Class Members will be eligible to receive the $4 to $7 price premium attributable to the allegedly false statements on the Subject Products' labels, the exact relief sought by Plaintiffs in the SAC.   Settlement ¶ 2.4(a).   Settlement Class Members may even be eligible for relief beyond this, as claims may be subject to a maximum *pro rata* adjustment of 85% of the Subject Products' retail purchase price.   Settlement ¶ 2.7.   And Defendant has agreed to change its labeling practices for up to four years, which carries a total value of over $3 million.   Settlement ¶ 2.10; Kopel Decl. ¶¶ 5-9.   As such, this factor is satisfied.

><i>v.</i>     <i>Hanlon Factor 5 – The Extent Of Discovery Completed</i>
><i>And The Stage Of The Proceedings</i>

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).   Plaintiffs, through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation: (i) the review of documents produced by Defendant; (ii) the review of publicly available reports, journal articles, and other publications concerning Defendant's products; (iii) the review of

publicly available information regarding Defendant and its business practices; and (iv) serving interrogatories and requests for production of documents.  These efforts led to the production of critical documents concerning the case, which Class Counsel reviewed and used to ascertain the strengths and weaknesses of the case.  Kopel Decl. ¶ 2.  The parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and settlement as well a mediation with Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco.  *Id.* ¶ 3.  The Settlement is the result of fully-informed negotiations.  *Vega v. Weatherford U.S., Limited Partnership*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

> vi.      *Hanlon Factor 6 – The Experience And Views Of Counsel*

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Kopel Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.); Declaration of Daniel M. Hattis ¶¶ 2-8 (describing firm's qualifications).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

> **2.      The Settlement Class Meets All Of The New Rule 23(e)(2) Factors**

> > i.      *Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class*

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D.

Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462). Here, this prong is met for the same reasons as Plaintiffs and Class Counsel met the adequacy prong under Fed. R. Civ. P. 23(a)(4). *See* Argument § V.A.4, *supra*; *see also Hilsley*, 2020 WL 520616, at *5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

    ii. *Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length*

  A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965). Here, both Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5. Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations [over a number of months] facilitated by a neutral mediator." *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *see also* Kopel Decl. ¶ 3. Thus, this prong is met.

    iii. *Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate*

  Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Each prong is met.

1

2

**"The Costs, Risks, And Delay Of Trial And Appeal":**  Plaintiffs established above that this factor is met.  *See* Argument §§ V.B.1.i-V.B.iii, *supra*.

3

4

5

6

7

8

9

10

11

**"The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class":**  "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Hilsley*, 2020 WL 520616, at \*7.  As described *infra*, the proposed notice plan and claims procedure is straightforward and comports with due process.  *See* Argument § V.C.  The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

12

13

14

15

16

17

18

19

**"The Terms Of Any Proposed Award Of Attorney's Fees":**  Class Counsel will petition this Court for an award of up to one-third of the Settlement Fund (or $900,000.00) in attorneys' fees, inclusive of any costs and expenses.  Settlement ¶ 3.1.[6]  Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method.  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  "Courts in the Ninth Circuit prefer to use the percentage-of-recovery method, but to cross-check the final figure with a lodestar calculation."  *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2019 WL 6327363, at \*1 (N.D. Cal. Nov. 26, 2019).

20

21

22

23

24

25

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement.  *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  To calculate attorneys' fees based on the percentage of the benefit, Ninth Circuit precedent requires courts to award class counsel fees based

26

27

28

---

[6] The Court need not "determine attorney's fees at the preliminary approval stage" and Class Counsel will "fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards."  *Hilsley*, 2020 WL 520616, at \*7.

on the total benefits being made available rather than the amount actually paid out. *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available).  The Court must also include the value of the benefits conferred to the Class, including any attorneys' fees, expenses, and notice and claims administration payments to be made. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Stated otherwise, California courts include the requested attorneys' fees when calculating the total value of the settlement fund. *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).  Further, the value of injunctive relief must be included in calculating the total benefit made available to the class. *See*, *e.g.*, *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's approval of attorneys' fees where it was apparent that injunctive relief offered "generated benefits far beyond the cash settlement fund") (internal quotations omitted); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on either the 'lodestar' method or a percentage of the total benefit made available to the settlement class, *including costs, fees, and injunctive relief*.") (emphasis added).

Here, Class Counsel has made available a non-reversionary common fund of $2.7 million, which will compensate Settlement Class Members for the price premium paid for their Subject Products and is subject to a *pro rata* upward adjustment of 85% of the purchase price of the Subject Products.  Class Counsel has also made four-years' worth of injunctive relief available to the Settlement Class.  The injunctive relief is valued at over $3 million.  Kopel Decl. ¶¶ 5-9.  Combined, Class Counsel has provided $5.7 million in value to the Settlement Class.  Thus, Class Counsel's fee request of $900,000 represents only 15.8% of the total value of the Settlement, Kopel

Decl. ¶ 15, *below* the Ninth Circuit's "25% of the common fund … benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029.

The Court may alternatively grant the requested attorneys' fees under the lodestar method. *Hanlon*, 150 F.3d at 1029.  The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011).  The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).  As of June 9, 2021, Class Counsel has billed a total of 879.6 hours at a blended rate of $646.96 per hour.  Kopel Decl. ¶ 16. Accordingly, Class Counsel's lodestar to date is $569,066.01.  *Id*.  Should the Court award the requested attorneys' fees, Class Counsel would receive a multiplier of 1.58 based on their current lodestar.  *Id*.  However, Class Counsel anticipates spending 100 additional hours before final approval, thus lowering the lodestar multiplier to 1.42.  *Id*.   A multiplier between 1.42 and 1.58 is reasonable in light of the risks and benefits obtained in this action.   For instance, in a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n.6; *see also* Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded). State and federal courts often approve multipliers of 4 or more.[7]

---

[7] *See, e.g., In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 4 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Bos. & Maine Corp. v. Sheehan*,

**"Any Agreement Required To Be Identified By Rule 23(e)(3)":**  This prong asks whether there was "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.  Here, other than the Settlement, no such agreement exists.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

   iv. *Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other*

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler*, 2018 WL 6619983, at *8. Here, each Settlement Class Member who purchased the same Subject Product will be entitled to the same reimbursement, without having to provide proof of purchase, and subject to a pro rata adjustment.  Settlement ¶ 2.7.  And while Settlement Class Members who purchased the 4 TB and 6 TB Subject Products will be eligible for $7.00—as opposed to $4.00 for the 2 TB and 3 TB Subject Products (and higher limits for their commensurate *pro rata* upward adjustments)—this does not constitute "preferential treatment" because the purchase price and for the more spacious Subject Products is greater.  Thus, this Rule 23(e)(2) factor is also met.

**C.** **The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved**

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."  Fed. R. Civ. P. 23(e)(1)

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  MANUAL FOR

---

*Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 WL 10791, at *4 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiplier of 8.74).

COMPLEX LITIGATION § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id*.  The proposed notice program here informs the Class of their rights and includes a comprehensive plan for direct notice (for those Class Members for whom Defendant has contact information), a settlement website, and an expansive digital and social media notification campaign, and constitutes the best notice practicable under the circumstances.  *See generally* JND Decl.

Notice will be carried out by JND Legal Administration.  Settlement ¶ 1.21.  JND was selected after a competitive bidding process, after which it was determined that JND would provide the most cost-efficient notice for the Settlement Class.  Kopel Decl. ¶ 18.

The notice accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  In addition, the notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel.  The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process.  *See* Exs. A-B and G to the Settlement, at Kopel Decl. Ex. 1.

**Publication, Media, and Internet Notice:** Notice shall be provided via a media and Internet notice program, including banner ads on Internet sites targeted to the Settlement Class Members.  This campaign is estimated to collectively obtain roughly 325 million individual notice impressions.  JND Decl. ¶ 33.  The digital and social media notice program is described in detail in the JND Declaration.

**Email and U.S. Mail Notice:** A notice substantially in the form attached as Exhibit F to the Settlement shall be e-mailed or mailed to the last known e-mail address or mailing address of

any Class Member whose contact information is available to Defendant.  E-Mail Notice will be followed by U.S. Mail Notice (Exhibit G to the Settlement) to any recipient for whom E-Mail Notice is unsuccessful.

**Settlement Website:**  The parties will post a copy of the Long Form Notice (Ex. B) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form (Ex. A), a list of important dates, and any other information to which the parties may agree.  *See Hilsley*, 2020 WL 520616, at *7 ("The claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication.").  The website shall also contain a Settlement Email Address and Settlement Telephone Number in addition to Class Counsel's contact information, where Class Members can submit questions and receive further information and assistance.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA").  *See* Settlement ¶ 4.5.

These proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the proposed Settlement.  The notice plan is calculated to reach no less than 70% of Settlement Class Members (JND Decl. ¶¶ 14, 42-43), which is the hallmark of a great notice program, and certainly within the range of approval.  *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

1

Dated:  June 11, 2021                           Respectfully submitted,

2
                                                **BURSOR & FISHER, P.A.**
3

4                                               By: ___/s/ Yitzchak Kopel_____

5                                               Yitzchak Kopel (*Pro Hac Vice*)
                                                888 Seventh Avenue, Third Floor
6                                               New York, NY 10019
                                                Telephone: (646) 837-7150
7                                               Facsimile:  (212) 989-9163
                                                Email: ykopel@bursor.com
8
                                                **BURSOR & FISHER, P.A.**
9                                               L. Timothy Fisher (SBN 191626)
                                                1990 North California Boulevard, Suite 940
10                                              Walnut Creek, CA  94596
                                                Telephone: (925) 300-4455
11                                              Facsimile:  (925) 407-2700
                                                E-Mail: ltfisher@bursor.com
12
                                                **HATTIS & LUKACS**
13                                              Daniel M. Hattis (SBN 232141)
                                                Paul Karl Lukacs (SBN 197007)
14                                              400 108th Ave NE, Ste 500
                                                Bellevue, WA 98004
15                                              Telephone: (425) 233-8650
                                                Facsimile: (425) 412-7171
16                                              Email: dan@hattislaw.com
                                                        pkl@hattislaw.com
17
                                                *Attorneys for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28