**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
          pkl@hattislaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Joel D. Smith (SBN 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

*Attorneys for Plaintiffs and
the Putative Class*

**LEWIS BRISBOIS BISGAARD
& SMITH LLP**
Eric Y. Kizirian (SBN 210584)
Joshua S. Hodas (SBN 250802)
Leo A. Bautista (SBN 149889)
Daniel C. DeCarlo (SBN 160307)
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: (213) 250-1800
Facsimile:  (213) 250-7900
Email: eric.kzirian@lewisbrisbois.com
          josh.hodas@lewisbrisbois.com
          leo.bautista@lewisbrisbois.com
          dan.decarlo@lewisbrisbois.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MALONE, CHRIS AYERS, JAMES BACKUS, BRIAN CONWAY, DAVID EATON, STEVEN GRAVEL, JAMES RAAYMAKERS, and TOD WEITZEL, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION,<br><br>        Defendant. | Case No. 5:20-cv-03584-NC<br><br>**SUPPLEMENTAL BRIEFING RE: MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge:  Hon. Nathaniel Cousins |

Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), and Defendant Western Digital Corporation ("Defendant") (collectively, the "Parties") submit this supplemental briefing in response to the Court's Order "identif[ying] several deficiencies and questions for the parties." ECF No. 58 (the "Order").  Below, the parties address each of the Court's concerns in paragraphs bearing numbers corresponding to the numbered paragraphs from the Court's Order:

1. **Notice.**

The Court's Order notes Plaintiffs' Preliminary Approval Motion asserts that class notice will be provided "via a media and Internet notice program, including banner ads on internet sites targeting the Settlement Class Members." Order ¶ 1.  However, the Order states that the settlement agreement contains "no mention of a media and Internet notice program." *Id.*  Thus, the Order requests an explanation for this purported inconsistency.

The parties respectfully submit that there is no inconsistency.  The settlement agreement explicitly contemplates a media notice plan to be formulated by the Settlement Administrator. Section 4.1 of the Agreement states that "Class notice and claims administration will be provided by JND Legal Administration with a media plan designed to achieve no less than seventy (70) percent reach.  Direct notice will be provided to Settlement Class Members for whom Defendant has contact information."  In other words, the Agreement contemplates that the media plan proposed by JND would target unidentified class members, and direct notice would be sent to identified class members.

This is further referenced in Section 4.4, which states that "Class Notice shall be provided as set forth in the Media Plan; media delivery of Class Notice shall be completed within thirty (30) days after the Preliminary Approval Date."  The "Media Plan" is also defined in Section 1.15 as "the Settlement Administrator's plan to disseminate Class Notice to Settlement Class Members. The Media Plan will be designed to reach no fewer than seventy (70) percent of Settlement Class Members."  Thus, the Agreement expressly contemplates the use of JND's proposed media plan,

including banner ads on internet sites, attached as Exhibit B to the Declaration of Gina M. Intrepido-Bowden Regarding Notice And Claims Administration (ECF No. 53-11).

This two-pronged proposal for class notice is important because the majority of class members did not purchase their hard drives directly from Defendant, and the parties do not have direct contact information for these class members. Thus, JND developed a proposed media plan calculated to reach at least an estimated 70% of Settlement Class Members. This approach is well-accepted and complies with the N.D. Cal. Procedural Guidance for Class Action Settlements, which recommends the "use of social media to provide notice to class members" and "hiring a marketing specialist."

**2. Cy Pres.**

The Court's Order "require[d] further information regarding the circumstances of Defendant's donations [of three hard drives to Public Counsel], why Defendant donated hard drives, and why this does not present concerns of collusion." Order ¶ 2.

There is no cause for concern about collusion.

Since at least 2010, Defendant has offered product donations through its website[1] to non-profit organizations throughout the United States. Up until approximately 2020, Defendant would respond to hundreds of inquiries per year for product donations from various non-profit organizations across the country. Public Counsel was just one among the many non-profit organizations over the past 10-plus years making such a request, which is why donations were provided to them consisting of just three hard drives in three separate years, as follows:

| Fiscal Year | Product Provided | Approx. Retail Value |
|---|---|---|
| FY2020 | 2TB My Cloud | $60 |
| FY2019 | 1TB My Passport | $140 |
| FY2017 | 1TB My Passport Ultra | $100 |

---

[1] *See, e.g.*, https://www.westerndigital.com/company/corporate-sustainability/philanthropy.

Public Counsel was not singled out in any way in this process—they were treated just like all of the (hundreds) of other non-profit organizations who requested and received product donations from Defendant over the past 10-plus years.

These donations, whose total estimated retail value is a mere $300, do not rise to the level of a "significant prior affiliation" between Defendant and Public Counsel that would present evidence of collusion or a conflict of interest. AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) ("We find no substance in Objectors' claim that the presence of a Facebook employee on DTF's board of directors categorically precludes DTF from serving as the [*cy pres* recipient]."). The parties respectfully submit that Public Counsel is a worthy *cy pres* recipient because it is a non-profit legal services provider with a consumer group that directly addresses the types of consumer claims at issue in this case on behalf of consumers, and therefore "bears a substantial nexus to the interests of the class members." *Lane*, 696 F.3d at 821.

Finally, to the extent the Court determines that Public Counsel is ineligible to be the *cy pres* recipient in this case, the Parties request that the Court provide them with an opportunity to jointly propose a different recipient rather than denying preliminary approval on that grounds.

### 3. **Attorneys' Fees.**

The Court's Order requested supplemental briefing as to attorneys' fees, stating that "it is unclear why counsel requests that the Court consider the overall value of the settlement instead of solely the monetary value of the common fund." Order ¶ 3. The reason is straight-forward: "[t]he Ninth Circuit has established that district courts should 'take into account the present nonmonetary benefit bestowed upon plaintiffs' class' in determining the appropriateness of a fee award." *Pappas v. Naked Juice Co of Glendora, Inc.*, 2014 WL 12382279, at *10 (C.D. Cal. Jan. 2, 2014) (quoting *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983)); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) (concluding that attorneys' fees may be awarded when the litigation has conferred a substantial benefit on the class even where a suit "has

not yet produced, and may never produce, a monetary recovery" under the "common fund" doctrine).

This principle was reinforced by the Ninth's Circuit's decision in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002), where a fee award exceeding 25% of the settlement fund was upheld because the Ninth Circuit considered that "counsel's performance generated benefits beyond the case settlement fund." For this reason, Courts within this District have taken into account the value of affirmative injunctive relief when considering the reasonableness of a fee request. *See Pappas*, 2014 WL 12382279, at *10-11 ("Here, the Settlement imposes affirmative injunctive relief on the Defendant whose cost will be approximately $1.4 million. Accordingly, the total settlement can be valued at $10.4 million because the injunctive relief is designed to increase the possibility that consumers will make informed decisions about the purchase of Defendant's products that are at issue based on reliable information from, and practices by, Defendant. Based on this analysis, the fee request here bears the indicia of reasonableness.").

Plaintiffs respectfully assert that it is appropriate for the Court to take into account the value of the injunctive relief secured for the Class because it is readily calculable. Defendant sells a similar hard drive called the "WD Red Plus," which not only utilizes CMR technology, but discloses the same. Kopel Decl. ¶ 6 (ECF No. 53-1). They sell for $4 or $7 more than the Subject Products, depending on the size of the hard drive ($4 more for the 2TB and 3TB models, $7 more for the 4TB and 6TB products). *Id.* Using these price premiums, Plaintiffs can properly multiply this premium across the number of units Defendant is estimated to sell over the next four years, and this estimate is based on sales data produced by Defendant in discovery. Kopel Decl. ¶¶ 7-8. Accordingly, just as in *Pappas*, "consumers will make informed decisions about the purchase of Defendant's products that are at issue based on reliable information from, and practices by, Defendant." *Pappas*, 2014 WL 12382279, at *10; *see also* Kopel Decl. ¶ 9 ("The injunctive relief provides value to Settlement Class Members because it alleviates problems the identified in Second Amended Complaint. Specifically, it clearly and conspicuously discloses the use of SMR technology in the Subject Products to ensure no consumers are deceived again, as Plaintiffs allege

that they were."). Plaintiffs respectfully submit this is the precise scenario whereby it is appropriate for the Court to take into account the value of injunctive relief—Plaintiffs do not seek to "circumvent" the Ninth Circuit's 25% benchmark.[2]

Finally, from a policy perspective, it is notable that failing to take nonmonetary relief into account in assessing the value of the fund for purposes of calculating attorneys' fees could harm consumers in future class actions. Such a holding could signify to class action attorneys that courts do not value the benefit that nonmonetary relief provides to class members such that attorneys need not fight for its inclusion in class action settlements. Here, the nonmonetary relief provided by the settlement is important in that it completely addresses the issue complained of in Plaintiffs' allegations and ensures that no consumers will be confused as to the technology in, and capabilities of, the hard drives they are purchasing. It is therefore not only prudent to take the value of this nonmonetary relief into account, there is precedent for doing so under Ninth Circuit authority. *See, e.g.*, *Vizcaino*, 290 F.3d at 1049; *Bedolla v. Allen*, 736 F. App'x 614, 616 (9th Cir. 2018) ("[T]he district court made express findings about the value of the nonmonetary relief … That valuation (between $6.4 million and $10.7 million), considered along with the monetary relief, supports the district court's finding that attorney's fees of 27 percent of the settlement fund were warranted based on the results obtained."); *Farrell v. Bank of America Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) ("While it can be difficult to value nonmonetary relief, we have no trouble finding that the value here exceeds the $29.1 million assigned to it by the parties.").

---

[2] The Court need not determine the final amount of attorneys' fees at the preliminary approval stage because the settlement is worthy of preliminary approval regardless of the amount of fees ultimately awarded. Indeed, the Court need not "determine attorney's fees at the preliminary approval stage" and Class Counsel will "fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020). Moreover, the Court could also opt to calculate attorneys' fees using the lodestar method at that time. *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on either the 'lodestar' method or a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief.").

### 4. JND Legal Administration.

The Court's Order requested an explanation as to how the parties "arrived at JND's estimated cost and provide a breakdown of JND's costs." Order ¶ 4. Given the estimated number of class members entitled to partake in the settlement, the parties believe that the settlement is extremely well-funded. Accordingly, in selecting a notice plan, the parties chose the most robust of the proposals to ensure notice would reach as many class members as possible. That way, more class members can be compensated instead of leftover funds being distributed to the *cy pres* recipient. The parties agreed on JND after soliciting bids and media plans for class notice from no less than four total well-respected claims administrators. Additionally, pursuant to the Court's request, the parties are submitting herewith a breakdown of JND's costs, attached hereto as **Exhibit A**.

Dated: July 20, 2021                                **BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
       Yitzchak Kopel

Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Joel D. Smith (SBN 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          jsmith@bursor.com

**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

|   |   |
|---|---|
|   | Email: dan@hattislaw.com<br>         pkl@hattislaw.com |
|   | *Attorneys for Plaintiffs and*<br>*the Putative Class* |
| Dated: July 20, 2021 | **LEWIS BRISBOIS BISGAARD**<br>**& SMITH LLP** |
|   | By: /s/ *Eric Y. Kizirian* |
|   | Eric Y. Kizirian (SBN 210584)<br>Joshua S. Hodas (SBN 250802)<br>Leo A. Bautista (SBN 149889)<br>Daniel C. DeCarlo (SBN 160307)<br>633 West 5th Street, Suite 4000<br>Los Angeles, California 90071<br>Telephone: (213) 250-1800<br>Facsimile:  (213) 250-7900<br>Email: eric.kzirian@lewisbrisbois.com<br>         josh.hodas@lewisbrisbois.com<br>         leo.bautista@lewisbrisbois.com<br>         dan.decarlo@lewisbrisbois.com |
|   | *Attorneys for Defendant* |

# SIGNATURE CERTIFICATION

Pursuant to Civil L.R. 5-1(i)(3) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to counsel for Defendant, and that I have obtained authorization to affix their electronic signature to this document.

By: ___/s/ *Yitzchak Kopel*___
       Yitzchak Kopel