**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Class Counsel*

**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS MALONE, CHRIS AYERS, JAMES BACKUS, BRIAN CONWAY, DAVID EATON, STEVEN GRAVEL, JAMES RAAYMAKERS, and TOD WEITZEL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, <br><br> Defendant. | Case No. 5:20-cv-03584-NC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: December 22, 2021 <br> Time: 2:00 p.m. <br> Courtroom: 5 <br> Judge: Hon. Nathanael Cousins |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 22, 2021 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South 1st Street, Courtroom 5, 4th Floor, San Jose, California 95113 in the courtroom of Hon. Nathaniel Cousins, Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), by and through their undersigned counsel of record, will move the Court for an order granting final approval of the Class Settlement Agreement ("Settlement") (Dkt. No. 53-1) entered into in this action.

This motion is based on: this notice of motion and motion; the accompanying memorandum of points and authorities; the Settlement, including all exhibits thereto (Dkt. No. 53-1); the declarations of Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel (Dkt. Nos. 53-3 – 53-10); the declarations of Settlement Class Counsel Yitzchak Kopel and Daniel M. Hattis, filed herewith; the papers filed in support of preliminary settlement approval; the Court's Preliminary Approval Order (Dkt. No. 63); the argument of counsel; all papers and records on file in this matter; and such other matters as the Court may consider.

As discussed in the accompanying memorandum, the requested relief is appropriate because the Settlement satisfies the standards for final approval under Fed. R. Civ. P. 23 and Ninth Circuit precedent.

Dated:  September 6, 2021                  Respectfully submitted,

**HATTIS & LUKACS**

By:___*/s/ Daniel Hattis*_____
            Daniel Hattis

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
       pkl@hattislaw.com

1

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Class Counsel*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ........................................................................................- 1 -

II.   PROCEDURAL AND FACTUAL BACKGROUND ...................................- 2 -

III.  THE SETTLEMENT ..................................................................................- 3 -

    A.    The Settlement Class ........................................................................- 4 -

    B.    Monetary Relief ...............................................................................- 4 -

    C.    Injunctive Relief And Other Benefits ..............................................- 5 -

    D.    Release .............................................................................................- 6 -

    E.    Incentive Awards .............................................................................- 6 -

    F.    Attorneys' Fees And Expenses ........................................................- 7 -

    G.    Administrative Costs ........................................................................- 7 -

IV.  THE NOTICE PROGRAM DIRECTED BY THE COURT IS BEING IMPLEMENTED AND SATISFIES ALL APPLICABLE STANDARDS ...............- 7 -

    A.    Direct Notice To All Known Settlement Class Members ................- 7 -

    B.    Reminder Email Notice ...................................................................- 8 -

    C.    Publication, Media, And Internet Notice .........................................- 8 -

    D.    Settlement Website And Toll-Free Number .....................................- 8 -

    E.    CAFA Notice ...................................................................................- 8 -

    F.    Class Members' Response ................................................................- 8 -

V.   THE SETTLEMENT WARRANTS FINAL APPROVAL .........................- 9 -

    A.    Standard For Final Approval Of The Settlement .............................- 9 -

    B.    The Settlement Class Meets The *Hanlon* Factors ...........................- 11 -

        1.    *Hanlon* Factor 1 – The Strength Of Plaintiffs' Case ...........- 11 -

        2.    *Hanlon* Factor 2 – The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................- 12 -

        3.    *Hanlon* Factor 3 – The Risk of Maintaining Class Action Status Throughout the Trial .................................................- 13 -

        4.    *Hanlon* Factor 4 – The Amount Offered in Settlement ......- 13 -

        5.    *Hanlon* Factor 5 – The Extent of Discovery Completed and the Stage of the Proceedings .......................................- 14 -

        6.    *Hanlon* Factor 6 – The Experience and Views of Counsel ...............- 14 -

7.    *Hanlon* Factor 7 – The Reaction of the Class Members to the Settlement. ....................................................- 15 -

C.    The Settlement Class Meets All Of The Rule 23(e)(2) Factors ....................- 15 -

1.    Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class............................- 15 -

2.    Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length.................................................................- 16 -

3.    Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate ...............................................................- 16 -

a.    The Costs, Risks, and Delay of Trial and Appeal ..................- 17 -

b.    The Effectiveness of any Proposed Method of Distributing Relief to the Class ................................- 17 -

c.    The Terms of any Proposed Award of Attorney's Fees...............................................................- 17 -

d.    Any Agreement Required to be Identified by Rule 23(e)(3) ....................................................- 20 -

4.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other......................................- 20 -

VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE..- 21 -

A.    The Requirements Of Rule 23(a) Are Satisfied ............................- 21 -

1.    Fed. R. Civ. P. 23(a)(1) – Numerosity ...............................- 21 -

2.    Fed. R. Civ. P. 23(a)(2) – Commonality .............................- 21 -

3.    Fed. R. Civ. P. 23(a)(3) – Typicality.................................- 22 -

4.    Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation....................- 22 -

B.    The Requirements Of Rule 23(b)(3) Are Satisfied.........................- 23 -

C.    The Settlement Class Also Satisfies Rule 23(b)(2) ........................- 25 -

VII.    CONCLUSION .....................................................- 25 -

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                    **PAGE(S)**

3

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................ 24

4

5

*Beaver v. Tarsadia Hotels,*
    2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ................................ 18

6

*Bos. & Maine Corp. v. Sheehan Phinney, Bass & Green, P.A.,*
    778 F.2d 890 (1st Cir. 1985) .................................................... 20

7

8

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .................................................... 10

9

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................... 9, 16

10

11

*Cosgrove v. Sullivan,*
    759 F. Supp. 166 (S.D.N.Y. 1991) ............................................ 20

12

13

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................ 11, 12

14

15

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .................................................... 25

16

*Farrell v. Bank of Am. Corp., N.A.,*
    827 F. App'x 628 (9th Cir. 2020) .............................................. 18

17

18

*Fischel v. Equitable Life Assur. Soc'y of U.S.,*
    307 F.3d 997 (9th Cir. 2002) .................................................... 17

19

20

*G. F. v. Contra Costa County,*
    2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................ 16

21

22

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 11, 16

23

24

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ................................................................ 22

25

26

*Greko v. Diesel U.S.A., Inc.,*
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................ 6

27

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................. 10, 19, 22, 24

28

*Hartless v. Clorox Co.,*
  273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................ 18

*Hawkins v. Kroger Co.,*
  337 F.R.D. 518 (S.D. Cal. 2020) ........................................................................ 24

*Hefler v. Wells Fargo & Co.,*
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................. 15, 20

*Hilsley v. Ocean Spray Cranberries, Inc.,*
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ................................................ passim

*In re Beverly Hills Fire Litig.,*
  639 F. Supp. 915 (E.D. Ky. 1986) ...................................................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) .............................................................................. 19

*In re Cenco Inc. Sec. Litig.,*
  519 F. Supp. 322 (N.D. Ill. 1981) ...................................................................... 20

*In re ConAgra Foods, Inc.,*
  302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................ 21

*In re Facebook Biometric Info. Priv. Litig.,*
  2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ......................................................... 5

*In re First Alliance Mortg. Co.,*
  471 F.3d 977 (9th Cir. 2006) .............................................................................. 24

*In re GSE Bonds Antitrust Litig.,*
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................... 17, 20

*In re Hyundai & Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019) .............................................................................. 24

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ......................................................................... 14, 15

*In re Netflix Privacy Litig.,*
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................... 13

*In re NJOY, Inc. Consumer Class Action Litig.,*
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................... 22, 25

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .......................................................................... 18

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................... 9, 10

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
  2019 WL 6327363 (N.D. Cal. Nov. 26, 2019) ............................................. 17

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ......................................... 21, 25

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .......................................................................... 19

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ................................................ 16

*Kumar v. Salov N. Am. Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................................. 18

*Lealao v. Beneficial California, Inc*,
  82 Cal. App. 4th 19 (2000) ........................................................................... 18

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .............................................. 25

*Littlejohn v. Copland*,
  819 F. App'x 491 (9th Cir. 2020) ................................................................. 10

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ......................................... 22, 25

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) .................................................................. 21

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ................................................................... 18

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
  1986 WL 10791 (E.D. Pa. Sept. 30, 1986) ................................................... 20

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) .................................................................. 24

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................ 11

*Rabin v. Concord Assets Grp., Inc.,*
    1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ........................................................ 20

*Roberts v. Texaco, Inc.,*
    979 F. Supp. 185 (S.D.N.Y. 1997) ...................................................................... 20

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ............................................................ 11, 12, 14, 16

*Satchell v. Fed. Express Corp.,*
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................... 16

*State of Fla. v. Dunne,*
    915 F.2d 542 (9th Cir. 1990) .............................................................................. 17

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 18, 22

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................................ 9

*Vega v. Weatherford U.S., Limited Partnership,*
    2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ...................................................... 14

*Villegas v. J.P. Morgan Chase & Co.,*
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................................... 23

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ............................................................................ 19

*Wal–Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ............................................................................................ 21

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 25

*Wong v. Arlo Techs., Inc.,*
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................................................... 10

*Young v. Polo Retail, LLC,*
    2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ...................................................... 18

**RULES**

Federal Rule of Civil Procedure 23 ................................................................... passim

**TREATISES**

NEWBERG ON CLASS ACTIONS (3d ed. 1992) ............................................... 20, 23

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3      The Court previously granted preliminary approval of the Settlement reached by the

4  parties in this action and approved the proposed notice program. *See* Dkt. No. 63. Notice is

5  being disseminated to the Settlement Class Members as directed by the Court. By this motion,

6  Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and

7  approve the Settlement as fair, reasonable, and adequate.

8      As previously reported, the Settlement was reached after a full-day mediation before

9  Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco, followed by two and a half months of

10  additional arms-length negotiations, and undertaking a thorough investigation. The Settlement

11  provides a real and substantial monetary and non-monetary benefit to the Settlement Class.

12      The Settlement here resolves claims on behalf of a nationwide class. Pursuant to the

13  terms of the Settlement,[1] Defendant Western Digital Corporation ("Western Digital" or

14  "Defendant") will pay $2,700,000 to create a non-reversionary common Settlement Fund, from

15  which payments will be made to Settlement Class Members.

16      All Settlement Class Members who purchased one or more of the relevant WD Red

17  NAS hard drives (hereinafter, "Subject Products")[2] are eligible to submit a claim for a

18  payment. The settlement payment amounts will be $4.00 for each WD Red NAS Drive with

19  2TB capacity (WD20EFAX) or 3TB capacity (WD30EFAX), and $7.00 for each WD Red

20  NAS Drive with 4 TB capacity (WD40EFAX) or 6TB capacity (WD60EFAX), subject to pro

21  rata adjustment, if applicable, up to a maximum of 85% of the MSRP value of each drive

22  purchased.[3] No proof of purchase is required to submit a claim, and Claimants may submit

23

24  [1] The Settlement is on file at Dkt. No. 53-1. Capitalized terms not defined here have the meanings given in the Settlement.

25  [2] The affected WD Red NAS hard drives have the following SKUs: WD20EFAX (2TB
26  capacity), WD30EFAX (3TB capacity), WD40EFAX (4TB capacity) and WD60EFAX (6TB capacity).

27  [3] The maximum pro rata upward adjustment amount was the subject of dispute between Plaintiffs and Defendant. Plaintiffs advocated for a full refund, whereas Defendant insisted on a cap of $36 per 2TB or 3TB hard drive, and a cap of $63 per 4TB or 6TB hard drive.
28  Pursuant to the parties' executed Class Action Settlement Term Sheet, this issue was decided

claims for each hard drive they purchased. This is an excellent result for Settlement Class Members.

The Settlement also provides significant injunctive relief. Within 60 days of the Effective Date of the Settlement, Defendant shall clearly and conspicuously disclose the use of SMR technology on the product packaging and website product page on westerndigital.com of all WD Red NAS Drives with SMR technology. The requirements of this injunctive relief must be complied with for no less than 4 years after the Effective Date of the Settlement.

The Settlement also provides for a robust class notice program—approved by the Court and being implemented by the Settlement Administrator and the parties—that includes individual direct notice to known Settlement Class Members via: two emails or alternatively via postal mail; a media and Internet notice program; and establishment of a Settlement Website and toll-free number.

Dissemination of notice commenced on August 20, 2021. The deadline for Settlement Class Members to request exclusion or object is December 3, 2021.

For the foregoing reasons and the others detailed below, the Settlement meets the standards for final settlement approval and should be approved.

## II.       PROCEDURAL AND FACTUAL BACKGROUND

On May 29, 2020, Plaintiff Nicholas Malone commenced this putative class action captioned *Malone v. Western Digital Corporation*, United States District Court, Northern District of California, Case No. 5:20-cv-03584, asserting claims California Code § 1750 *et seq.*, California Business and Professions Code § 17200 *et seq.*, and California Business and Professions Code § 17500 *et seq.* Mr. Malone alleged, inter alia, that Defendant deceived customers by surreptitiously using Shingled Magnetic Recording ("SMR") technology in certain of its hard drive products. On June 16, 2020, Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, and Tod Weitzel, filed a First

---

by a third-party neutral, Hon. Elizabeth Laporte (Ret.). Judge Laporte received written submissions from both parties and issued a decision of 85% of the hard drives' retail purchase price as the maximum pro rata upward adjustment. Judge Laporte's decision is attached to the Kopel Declaration as Exhibit 3 (Dkt. No. 53-1).

Amended Complaint asserting the same claims. Dkt. No. 7.

On June 19, 2020, Plaintiff James Raaymakers commenced an action entitled *Raaymakers v. Western Digital Corporation*, United States District Court, Northern District of California, Case No. 5:20-cv-04091, asserting substantially similar claims as the *Malone* action. On July 27, 2021, the Court granted a stipulation signed by all the Parties to consolidate the *Raaymakers* action with the *Malone* action. Dkt. No. 14. On August 10, 2020, all Plaintiffs filed the Second Amended Complaint (the "SAC") under the caption of the *Malone* action. Dkt. No. 19. Defendant answered the SAC on September 16, 2020, denying liability. Dkt. No. 41.

The Parties engaged in significant discovery. Kopel Decl. ¶¶ 2, 5. The Parties exchanged and met and conferred concerning a number of discovery requests, including interrogatories and requests for production. *Id*. In response, Western Digital produced critical documents concerning the case to Plaintiffs. *Id*. Plaintiffs reviewed the documents produced by Western Digital, as well as information obtained through their own research and investigation. *Id*. Plaintiffs also sought and reviewed discovery from third parties. *Id.*

Counsel for Plaintiffs and counsel for Defendant engaged in substantial arm's-length negotiations in an effort to resolve this action. *Id*. ¶ 6. On January 13, 2021, the Parties attended a virtual mediation with Judge Elizabeth Laporte (Ret.) of JAMS San Francisco. The mediation lasted a full day but was unsuccessful. However, over the following two and a half months, the Parties directly engaged in further extensive settlement discussions. As a result of those discussions, the Parties executed a Class Action Settlement Term Sheet on March 9, 2021. *Id.*

On June 11, 2021, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 53). On July 15, 2021, the Court requested supplemental briefing on Plaintiff's motion. On July 21, 2021, after receiving the supplemental briefing, the Court entered an Order granting preliminary approval of the settlement, certifying the Settlement Class for settlement purposes, and directing that, under Fed. R. Civ. P. 23(e)(1), class notice be disseminated pursuant to the Settlement's notice program. Dkt. No. 63.

### III.    THE SETTLEMENT

The full Settlement terms are set forth in the Class Settlement Agreement, which is on

file at Dkt. No. 53-1. The following is a summary of the Settlement terms.

**A.    The Settlement Class**

The Settlement Class here, as provisionally certified by the Court, is defined as:

**All persons in the United States (including its states, districts or territories) who purchased a WD Red NAS Drive using Shingled Magnetic Recording ("SMR") technology[4] between October 2018 and the date of this Order.**

Dkt. No. 63, ¶ 6.

Excluded from the Settlement Class are (a) Defendant and its employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class Settlement ¶ 1.22.

In the SAC, Plaintiffs sought to certify a nationwide Class of "All United States residents who, during the applicable limitations period, either (a) purchased from any seller any Western Digital Red NAS hard drive with SMR technology, or (b) received from Western Digital a replacement Red NAS hard drive with SMR technology."  SAC ¶ 272. The proposed class and the Settlement Class are thus different in that (1) the Settlement Class sets the initial date as October 2018 as opposed to the "applicable limitations period," and (2) the Settlement Class does not include those who received a replacement "Red NAS hard drive with SMR technology." The former change was made to match the date Defendant first began using SMR technology in the Subject Products. The latter change was made due to concerns about the standing of persons who did not actually purchase one of the Subject Products.

**B.    Monetary Relief**

Western Digital has agreed to pay a common fund of $2,700,000 to cover all claims filed by Settlement Class Members as well as the costs of settlement administration, incentive awards, and attorneys' fees, costs and expenses. Settlement ¶ 2.1. Settlement Class Members can receive a cash payment of between $4 and $7 for each Subject Product they purchased

---

[4] Specifically, one of the following models: WD20EFAX (2TB capacity), WD30EFAX (3TB capacity), WD40EFAX (4TB capacity), and WD60EFAX (6TB capacity) hard drives.

during the Class Period, no proof of purchase required, and subject to pro-rata upward

adjustment of up to 85% of the retail purchase price each of the hard drives purchased, which

based on prevailing market prices as defined in the Settlement Agreement as follows: 2TB

(MSRP $84.99); 3 TB (MSRP $106.99); 4 TB (MSRP $119.99); 6TB (MSRP $179.99).

Settlement ¶¶ 2.4–2.7. Assuming all claimants receive their maximum allowable upward

adjustments, they would therefore receive between $72.24 and $152.99 for *each* subject hard

drive they purchased.

Pursuant to Rule 1.e. of this District's Procedural Guidance for Class Action

Settlements (the "Procedural Guidance"), Class Counsel states that had they prevailed at trial,

Plaintiffs and the class would have likely at best recovered compensatory damages in the form

of the price premium paid for the Subject Products ($4 or $7 per drive), for an estimated total

of $947,221 (calculated based on the total number of hard drives purchased), plus possible

punitive damages. Kopel Decl. ¶ 8. Massachusetts, New York, and Virginia subclass members

could also have recovered statutory damages and attorneys' fees. *Id.* Pursuant to Rule 1.g. of

the Procedural Guidance, Class Counsel estimates that approximately 4-9% of Settlement Class

Members are likely to submit a Claim Form. Kopel Decl. ¶ 13; *see also In re Facebook

Biometric Info. Priv. Litig.*, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (claims rate of

"4–9% [] is typical for consumer class actions"). No money will revert to Defendant under the

Settlement.

### C.    Injunctive Relief And Other Benefits

Within 60 days of the Effective Date of the Settlement, Western Digital shall clearly

and conspicuously disclose the use of SMR technology on the product packaging and website

product page on westerndigital.com of all WD Red NAS Drives with SMR technology.

Settlement ¶ 2.10. The requirements of this injunctive relief must be complied with for no less

than 4 years after the Effective Date of the Settlement. *Id.*

Class Counsel estimates the value of this injunctive relief to class members at over $3

million. Kopel Decl. ¶ 10. Any amounts still remaining in the Settlement Fund after an upward

adjustment will go to *cy pres*, to Public Counsel, the "Nation's Largest Pro Bono Law Firm,"

that, among other practice areas, offers "Consumer Rights & Economic Justice" representation that "assists with a wide variety of consumer matters, including consumer fraud, unfair business practices, foreclosure and real estate fraud. Settlement ¶ 2.7.; Kopel Decl. ¶ 14. This recipient is appropriate because it focuses on consumer fraud issues, as is alleged in this case. Neither Class Counsel nor Plaintiffs nor Defendant have any relationship with Public Counsel, nor have they, to the best of their knowledge, made monetary donations to Public Counsel in the past. Kopel Decl. ¶ 14. Defendant has donated three hard drives to Public Counsel in the past, but not the Subject Products in this Litigation. *Id.*

**D.     Release**

In exchange for the relief described above, Defendant and each of its related and affiliated entities as well as all "Released Persons" as defined in Settlement ¶ 1.20 will receive a full release of all claims arising out of or related to the alleged inefficacy of the Subject Products, SMR technology, and/or the purchase of any of the Subject Products. Attached to the Settlement as Ex. H is a complete list of released parties. *See* Settlement ¶¶ 6.1-6.4 for full release language. The claims released by the Settlement are not different than those stated in the SAC.

**E.     Incentive Awards**

Subject to the Court's approval, Defendant has agreed to pay incentive awards to each Plaintiff in the amount of $2,500. Settlement ¶ 3.3. The named Plaintiffs have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaint, have been in contact with counsel frequently, and have stayed informed of the status of the action, including settlement. *See generally* Declarations of Plaintiffs (Dkt Nos. 53-3-10); *see also Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal. Apr. 26, 2013) (Cousins, J.) (granting request for $5,000 incentive award). Plaintiffs will petition the Court for the $2,500 incentive awards as part of Plaintiffs' Motion for Attorneys' Fees, which is being filed concurrently with this motion.

1

**F.      Attorneys' Fees And Expenses**

2

Class Counsel are filing concurrently with this motion, Plaintiffs' Motion for Attorneys'

3

Fees, requesting an award of attorneys' fees, costs, and expenses of up to one-third (or

4

$900,000) of the monetary value of the Settlement Fund (but excluding the value of non-

5

monetary relief provided to Settlement Class Members). Defendant has the right to challenge

6

the amount of Plaintiffs' fees, costs, and expenses, and there is no agreement as to the amount

7

of attorneys' fees, costs, and expenses that will be sought by Class Counsel.

8

**G.      Administrative Costs**

9

The fees and costs of the Settlement Administrator—in implementing the notice

10

program, administering the claims process, mailing checks to Claimants, and performing the

11

other administrative tasks described in the Settlement—will be paid from the Settlement Fund.

12

The cost of settlement administration is currently estimated to be $302,073, or

13

approximately 11% of the value of the settlement fund. This amount is reasonable for the

14

proposed services to be provided. Kopel Decl. ¶ 14.

15
16

**IV.    THE NOTICE PROGRAM DIRECTED BY THE COURT IS BEING
         IMPLEMENTED AND SATISFIES ALL APPLICABLE STANDARDS**

17

The Notice program set forth in Section IV of the Settlement Agreement and approved

18

by the Court in the Preliminary Approval Order (Dkt. No. 63, ¶¶ 12–13), is currently being

19

implemented. Kopel Decl. ¶ 14. The Court-approved Notice program satisfies all applicable

20

standards, including Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), and includes the following:

21

**A.      Direct Notice To All Known Settlement Class Members**

22

Direct notice was sent to all known Settlement Class Members. Pursuant to the

23

Preliminary Approval Order, Western Digital provided the Settlement Administrator with the

24

contact information of all known Settlement Class Members. Kopel Decl. ¶ 14. The Settlement

25

Administrator has provided the initial Email Notice to all Settlement Class Members whose

26

contact information was available to Defendant. *Id.* U.S. Mail Notice has been sent to over

27

5,000 individuals. *Id.*

28

**B.     Reminder Email Notice**

By September 21, 2021, the Settlement Administrator will email a Reminder Email Notice to all known Settlement Class Members. Dkt. 63, ¶ 40.

**C.     Publication, Media, And Internet Notice**

Notice is also being provided via a media and Internet notice program, including banner ads on search engine and social media websites targeted to the Settlement Class Members. This campaign is estimated to collectively obtain roughly 325 million individual notice impressions. JND Decl. ¶ 33 [Docket 53-11] . The digital and social media notice program is described in detail in the JND Declaration. *Id.*

**D.     Settlement Website And Toll-Free Number**

Before sending the Notices, the Settlement Administrator established the Settlement Website (www.wdrednasharddrivesettlement.com), where Settlement Class Members can view the Settlement, the Long Form Notice, other key case documents, an online claim form, and a list of important dates. Settlement Class Members can submit claims electronically via the Settlement Website. The Settlement Website also contains a Settlement Email Address and Settlement Telephone Number in addition to Class Counsel's contact information, where Class Members can submit questions and receive further information and assistance.

**E.     CAFA Notice**

The Settlement Administrator timely served notice of the proposed Settlement, in accordance with 28 U.S.C. § 1715, upon the appropriate State and Federal officials. Kopel Decl. ¶ 14.

**F.     Class Members' Response**

It has been less than two weeks since the settlement website was made public and the notice process began.  The deadline to submit a claim is November 18, 2021.  The deadline to opt out or object is December 3, 2021. As of September 6, 2021, no class members have objected to the Settlement.  Plaintiffs will provide the Court with a filed declaration in advance of the December 22, 2021, Fairness Hearing which documents the following information: (1) the number of class members who submitted valid claims; (2) the number of class members

who elected to opt out of the class; (3) the number of class members who objected to or commented on the settlement; and (4) the number of undeliverable class notices.

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

### A.      Standard For Final Approval Of The Settlement

Approval of class action settlements involves a two-step process.

(1)     Preliminary approval of the proposed settlement and direction of notice to the class; and

(2)     A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is present.

In granting preliminary approval of the Settlement and directing that notice be disseminated to the Settlement Class, the Court took the first step in the process. Dkt. 63. Moreover, as summarized above, the Settlement Administrator has been, and is, implementing the notice program as directed by the Court. Kopel Decl. ¶ 14.  By this motion, Plaintiffs respectfully request that the Court take the final step by granting final approval of the Settlement.

The overarching standard for class settlement approval is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As part of that determination, Rule 23(e)(2) directs courts to consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

      (i)     the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

In the Ninth Circuit, courts traditionally also use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable. That test includes the following factors: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (the "*Hanlon* Factors").

The Rule 23(e)(2) factors and the traditional Ninth Circuit factors overlap somewhat, and courts look to both when deciding whether to grant final approval to class action settlement, while remaining ultimately focused on the underlying question of whether the settlement is fair, reasonable, and adequate. *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *5–*10 (N.D. Cal. Apr. 19, 2021) (discussing interplay between factors and considering both to grant final approval to class action settlement); *see also Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020).

In evaluating settlement approval, the Court should consider the strong public policy favoring "settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). The Settlement here meets all standards for final settlement approval.

1

**B.    The Settlement Class Meets The *Hanlon* Factors**

2

**1.    *Hanlon* Factor 1 – The Strength Of Plaintiffs' Case**

3

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

4

district court's determination is nothing more than an amalgam of delicate balancing, gross

5

approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

6

625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) (internal quotations omitted). The court

7

may "presume that through negotiation, the Parties, counsel, and mediator arrived at a

8

reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v.*

9

*State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing

10

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

11

Here, as set forth in the Kopel Declaration, Class Counsel engaged in arms-length

12

negotiations with Defendant's counsel and with the assistance of a neutral mediator, and Class

13

Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both

14

sides. Kopel Decl. ¶¶ 1–6. Although Plaintiffs and Class Counsel had confidence in their

15

claims, a favorable outcome was not assured. *Id*. ¶¶ 16-20. They also recognize that they would

16

face risks at class certification, summary judgment, and trial. *Id*. Defendant vigorously denies

17

Plaintiffs' allegations and asserts that neither Plaintiffs nor the Settlement Class suffered any

18

harm or damages. In addition, Defendant would no doubt present a vigorous defense at trial,

19

and there is no assurance that the Settlement Class would prevail – or even if they did, that they

20

would not be able to obtain an award of damages significantly more than achieved here absent

21

such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Settlement

22

Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

23

*Id*. The Settlement also abrogates the risks that might prevent them from obtaining any relief.

24

*Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal.

25

Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with

26

the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

27

class."). Accordingly, this factor is met.

28

1

2

### 2. *Hanlon* Factor 2 – The Risk, Expense, Complexity, and Likely Duration of Further Litigation

3        As referenced above, proceeding in this litigation in the absence of settlement poses

4   various risks such as failing to certify a class, having summary judgment granted against

5   Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of

6   settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer*, 2008 WL 4667090, at *4

7   ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation

8   and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even

9   assuming Plaintiffs were to survive summary judgment, they would face the risk of establishing

10  liability at trial in light of conflicting expert testimony between their own expert witnesses and

11  Defendant's expert witnesses. The experience of Class Counsel has taught them that these

12  considerations can make the ultimate outcome of a trial highly uncertain.

13        Moreover, even if Plaintiffs *prevailed* at trial, in light of the possible damage theories

14  that could be presented by both sides, there is a substantial likelihood that Settlement Class

15  Members may not be awarded more (and they likely would be awarded *less*) than is offered to

16  them under this Settlement on an individual basis. All Settlement Class Members will be

17  eligible to receive the $4 to $7 price premium attributable to the allegedly false statements on

18  the Subject Products' labels (i.e., the difference between the higher price of the CMR-

19  technology drives which the class members thought they were purchasing, and the lower

20  current price of the SMR-technology drives the class members had actually had purchased).  In

21  fact, Settlement Class Members may be eligible for relief *beyond* the $4 to $7 per hard drive, as

22  claims may be subject to a maximum pro rata adjustment of 85% of the Subject Products' retail

23  purchase price which range between $84.99 for the 2TB drive and $179.99 for the 6TB drive.

24  Plaintiffs' counsel will update the Court prior to the December 22, 2021, Fairness Hearing

25  regarding the approximate pro rata adjustment and the amount which Settlement Class

26  Members who filed valid claims are expected to receive.

27        And importantly the Settlement also provides prompt relief to Settlement Class

28  Members, all of whom purchased the hard drives within the past three years. Continued

litigation would likely add several more years before there is a resolution. The Settlement provides prompt monetary compensation to Settlement Class Members, which could be utilized by them, inter alia, to purchase replacement CMR-technology hard drives.

### 3. *Hanlon* Factor 3 – The Risk of Maintaining Class Action Status Throughout the Trial

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. Even if the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date.

### 4. *Hanlon* Factor 4 – The Amount Offered in Settlement

By any measure, the Settlement here offers meaningful relief for the Settlement Class. Defendant "has agreed to settle this matter for a non-reversionary total of [$2,700,000]. In lieu of taking this matter to trial with the possibility of obtaining no relief, this is an excellent result for the Class." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020). All Settlement Class Members will be eligible to receive the $4 to $7 price premium attributable to the allegedly false statements on the Subject Products' labels, the exact relief sought by Plaintiffs in the SAC. Settlement ¶ 2.4(a). Settlement Class Members may even be eligible for relief beyond this, as claims may be subject to a maximum pro rata upward adjustment of 85% of the Subject Products' retail purchase price which range between $84.99 for the 2TB drive and $179.99 for the 6TB drive. Settlement ¶ 2.7. And Defendant has agreed to change its labeling practices for up to four years, which carries a total value of over $3 million. Settlement ¶ 2.10; Kopel Decl. ¶¶ 9-10. As such, this factor is satisfied.

### 5.   *Hanlon* Factor 5 – The Extent of Discovery Completed and the Stage of the Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation: (i) the review of documents produced by Defendant; (ii) the review of publicly available reports, journal articles, and other publications concerning Defendant's products; (iii) the review of publicly available information regarding Defendant and its business practices; and (iv) serving interrogatories and requests for production of documents. These efforts led to the production of critical documents concerning the case, which Class Counsel reviewed and used to ascertain the strengths and weaknesses of the case. Kopel Decl. ¶ 5. The parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and settlement, as well as a mediation with Hon. Elizabeth Laporte (Ret.) of JAMS San Francisco. *Id.* ¶ 6. The Settlement is the result of fully-informed negotiations. *Vega v. Weatherford U.S., Limited Partnership*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

### 6.   *Hanlon* Factor 6 – The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Kopel Decl. ¶¶ 21-25 and *id.*, Ex. 1 (describing firm's qualifications and resume of Bursor & Fisher, P.A.); Hattis Decl. ¶¶ 12–17 (describing firm's qualifications). Based on

their experience, Class Counsel concluded that the Settlement provides exceptional results for the Settlement Class while sparing the Settlement Class from the uncertainties of continued and protracted litigation.

### 7. *Hanlon* Factor 7 – The Reaction of the Class Members to the Settlement.

It has been less than two weeks since the settlement website was made public and the notice process began.  The deadline to submit a claim is November 18, 2021.  The deadline to opt out or object is December 3, 2021. As of September 6, 2021, no class members have objected to the Settlement. Plaintiffs will provide the Court with a filed declaration in advance of the December 22, 2021 Fairness Hearing which documents the reaction of the class members to the Settlement, including following information: (1) the number of class members who submitted valid claims; (2) the number of class members who elected to opt out of the class; (3) the number of class members who objected to or commented on the settlement; and (4) the number of undeliverable class notices.

In sum, the *Hanlon* factors weigh in favor of granting final approval of the Settlement.

### C. The Settlement Class Meets All Of The Rule 23(e)(2) Factors

#### 1. Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462). This prong is met for the same reasons that Plaintiffs and Class Counsel meet the adequacy prong under Fed. R. Civ. P. 23(a)(4). *See* Section VI.A.4, *infra*; *see also Hilsley*, 2020 WL 520616, at *5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

1

### 2.  Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length

2

"Before approving a class action settlement, the district court must reach a reasoned

3

judgment that the proposed agreement is not the product of fraud or overreaching by, or

4

collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

5

1290 (9th Cir. 1992); *see also* Fed. R. Civ. P. 23(e)(2)(B). A court may "presume that through

6

negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by

7

considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing

8

*Rodriguez*, 563 F.3d at 965).

9

Here, both Class Counsel and counsel for Defendant are experienced in class action

10

litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses

11

on both sides." *Hilsley*, 2020 WL 520616, at *5. Further, "the Settlement was reached as a

12

result of informed and non-collusive arms-length negotiations [over a number of months]

13

facilitated by a neutral mediator." *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1

14

(N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal.

15

July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms

16

that the settlement is non-collusive.") (internal quotations omitted); *Satchell v. Fed. Express

17

Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same); *see also*

18

Kopel Decl. ¶ 6. Thus, this prong is met.

19

### 3.  Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate

20

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the

21

class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

22

effectiveness of any proposed method of distributing relief to the class, including the method of

23

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

24

including timing of payment; and (iv) any agreement required to be identified under Rule

25

23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to

26

be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.

27

Each prong is met.

28

PLAINTIFFS' NOTICE OF MOT. AND MOTION
FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No. 5:20-cv-03584-NC

### a.     The Costs, Risks, and Delay of Trial and Appeal

Plaintiffs established that this factor is met above. *See* Sections V.B.1–V.B.3, *supra*.

### b.     The Effectiveness of any Proposed Method of Distributing Relief to the Class

"The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley*, 2020 WL 520616, at *7. As described *supra*, the notice plan and claims procedure is straightforward and comports with due process. *See* Section IV. The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

### c.     The Terms of any Proposed Award of Attorney's Fees

Class Counsel are filing concurrently with this motion, Plaintiffs' Motion for Attorneys' Fees, requesting an award of attorneys' fees, costs, and expenses of up to one-third of the Settlement Fund (or $900,000) in attorneys' fees, inclusive of any costs and expenses. Settlement ¶ 3.1.[5] Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). "Courts in the Ninth Circuit prefer to use the percentage-of-recovery method, but to cross-check the final figure with a lodestar calculation." *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2019 WL 6327363, at *1 (N.D. Cal. Nov. 26, 2019).

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement. *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). Moreover, "courts in this [Ninth] circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each

---

[5] Class Counsel addresses the reasonableness of the requested fee award in full in the Motion for Attorneys' Fees.

case. In most common fund cases, the award exceeds the benchmark." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (citing several cases awarding 33%) (internal quotation marks and brackets omitted). *See also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).

To calculate attorneys' fees based on the percentage of the benefit, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out. *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award"). The Court must also include the value of the benefits conferred to the Class, including any attorneys' fees, expenses, and notice and claims administration payments to be made. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012). Stated otherwise, California courts include the requested attorneys' fees when calculating the total value of the settlement fund. *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).

Further, the value of injunctive relief must be included in calculating the total benefit made available to the class. *See*, *e.g.*, *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's approval of attorneys' fees where it was apparent that injunctive relief offered "generated benefits far beyond the cash settlement fund") (internal quotations omitted); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on either the 'lodestar' method or a percentage of the total benefit made available to the settlement class, *including costs, fees, and injunctive relief*.") (emphasis added).

Here, Class Counsel has made available a non-reversionary common fund of $2.7 million, which will compensate Settlement Class Members for the price premium paid for their

Subject Products and is subject to a pro rata upward adjustment of 85% of the purchase price of the Subject Products. Class Counsel has also made four-years' worth of injunctive relief available to the Settlement Class. The injunctive relief is valued at over $3 million. Kopel Decl. ¶ 10. Combined, Class Counsel has provided $5.7 million in value to the Settlement Class. Thus, Class Counsel's fee request of $892,145.70 represents only 15.65% of the total value of the Settlement.

The Court may alternatively grant the requested attorneys' fees under the lodestar method. *Hanlon*, 150 F.3d at 1029. The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

As of September 1, 2021, Class Counsel has billed a total of 1,063.19 hours at a blended rate of $628.51 per hour. Kopel Decl. ¶ 27. Accordingly, Class Counsel's lodestar to date is $668,221. *Id*. Should the Court award the requested attorneys' fees, Class Counsel would receive a multiplier of 1.34 based on their lodestar as of September 1, 2021. *Id*. However, Class Counsel anticipates spending 100 additional hours before final approval, thus lowering the lodestar multiplier to 1.22. *Id*. A multiplier between 1.34 and 1.22 is reasonable in light of the risks and benefits obtained in this action. For instance, in a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a majority (54%) between 1.5 and 3. *See Vizcaino*, 290 F.3d at 1051 n.6; *see also* NEWBERG ON CLASS ACTIONS § 14:03 (3d ed.

1992) (recognizing that multipliers of 1 to 4 are frequently awarded). State and federal courts often approve multipliers of 4 or more.[6]

### d. Any Agreement Required to be Identified by Rule 23(e)(3)

This prong asks whether there was "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019). Here, other than the Settlement, no such agreement exists.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

### 4. Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018). Here, each Settlement Class Member who purchased the same Subject Product will be entitled to the same reimbursement, without having to provide proof of purchase, and subject to a pro rata adjustment. Settlement ¶ 2.7. And, while Settlement Class Members who purchased the 4 TB and 6 TB Subject Products will be eligible for $7.00—as opposed to $4.00 for the 2 TB and 3 TB Subject Products (and higher limits for their commensurate pro rata upward adjustments)—this does not constitute "preferential treatment" because the purchase price for the higher terabyte hard drives is greater. Thus, this Rule 23(e)(2) factor is also met.

---

[6] *See, e.g.*, *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 4 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Bos. & Maine Corp. v. Sheehan Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 WL 10791, at *4 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiplier of 8.74).

1   **VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

2   The Court previously provisionally certified the Settlement Class as part of the

3   Preliminary Approval Order. Dkt. No. 63, ¶¶ 6–8. The Court should reaffirm certification of the

4   Settlement Class, for settlement purposes because the standards of Rule 23(a) and Rule

5   23(b)(3) are satisfied.

6   **A.    The Requirements Of Rule 23(a) Are Satisfied**

7   **1.    Fed. R. Civ. P. 23(a)(1) – Numerosity**

8   A class must be so numerous that joinder of all members individually is impractical.

9   Fed. R. Civ. P. 23(a)(1). "[G]enerally, forty or more members will satisfy the numerosity

10  requirement." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015).

11  Here, the Settlement Class is comprised of tens of thousands of consumers who purchased the

12  Subject Products—a number that obviously satisfies the numerosity requirement. Accordingly,

13  numerosity is easily met.

14  **2.    Fed. R. Civ. P. 23(a)(2) – Commonality**

15  "Commonality requires the plaintiff to demonstrate that the class members have

16  suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). "This

17  requirement has been construed permissively, and all questions of fact and law need not be

18  common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL

19  4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted).

20  "Indeed, for purposes of Rule 23(a)(2), even a single common question will do." *Id.* "[C]ourts

21  routinely find commonality satisfied in false advertising cases such as the case at bar." *In re*

22  *ConAgra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014); *see also Hilsley v. Ocean Spray*

23  *Cranberries, Inc.*, 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) ("In misbranding or false

24  advertising cases, courts routinely find that commonality has been satisfied.").

25  Here, Plaintiffs allege that Defendant mislabeled the Subject Products as suitable for

26  use in NAS and RAID systems despite using SMR technology. "Resolution of this common

27  claim depends on a critical common question of fact: whether Defendant['s] statements were in

28  fact false." *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *6 (E.D. Cal. Mar. 29,

2019) (finding commonality was met where plaintiff alleged "they purchased Benecol because of statements on the product's packaging and those statements were false"); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096–97 (C.D. Cal. 2015) ("*In re NJOY*") (commonality satisfied where "the common question is whether NJOY's advertisements and product packaging were misleading to a reasonable consumer"). Thus, commonality is satisfied.

### 3.     Fed. R. Civ. P. 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

"Here, Plaintiff[s] ha[ve] demonstrated that [their] claims are typical as the Complaint alleges that [Plaintiffs] and all class members purchased the Products, were deceived by the false and deceptive labeling and lost money as a result." *Hilsley*, 2018 WL 6300479, at *6; *see also* SAC ¶¶ 1–11; Plaintiffs' Declarations ¶¶ 4–9. "All class members were exposed to the same … affirmative misrepresentation on the labels of the Products." *Hilsley*, 2018 WL 6300479, at *6. Therefore, Plaintiffs satisfy the typicality requirement.

### 4.     Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Adequacy is presumed where a

fair settlement was negotiated at arm's-length. NEWBERG ON CLASS ACTIONS §11.28, at 11–59.

As to the first inquiry, Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class. *See* Plaintiffs' Declarations ¶¶ 14–15 (Dkt. Nos. 53-3 – 53-10). Rather, the named Plaintiffs, like each absent Settlement Class Member, has a strong interest in proving Defendant's common course of conduct, and obtaining redress. Kopel Decl. ¶¶ 38-41.

As to the second inquiry, Plaintiffs and Class Counsel have vigorously and competently pursued the Settlement Class Members' claims. Class Counsel has engaged in significant, arm's-length negotiations over the course of many months, including with the assistance of a certified mediator, Hon. Elizabeth Laporte (Ret.). Kopel Decl. ¶ 6; *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of mediator "tends to support the conclusion that the settlement process was not collusive"). The Settlement provides the price premium paid by Settlement Class Members for the Subject Products—the exact relief that Plaintiffs sought on behalf of themselves and the Settlement Class Members. Further, Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation. *See* Kopel Decl. ¶¶ 21-25 and *id.*, Ex. 1 (describing firm's qualifications and resume of Bursor & Fisher, P.A.); Hattis Decl. ¶¶ 12–17 (describing firm's qualifications). And Plaintiffs have remained engaged in the litigation, including constant communication with Class Counsel and overseeing the drafting of certain documents. Plaintiffs' Decls. ¶¶ 11–12 (Dkt. Nos. 53-3 – 53-10).

Thus, in pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Settlement Class. Accordingly, Rule 23(a)(4) is satisfied.

**B.     The Requirements Of Rule 23(b)(3) Are Satisfied**

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

The Ninth Circuit favors class treatment of claims stemming from a "common course of conduct," like those alleged in this case. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006). Also, as the Supreme Court explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, predominance is met because "common questions … present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010). These common questions include, but are not limited to: (1) whether Defendant's representations/omissions regarding the Subject Products were false and misleading or reasonably likely to deceive consumers; (2) whether Defendant violated the CLRA, UCL, FAL, and other consumer protection statutes; (3) whether Defendant breached an express or implied warranty; (4) whether Defendant defrauded Plaintiffs and the Class Members; and (5) whether Plaintiffs and the Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019) (finding predominance met where "the class claims turn on the automakers' common course of conduct—their fuel economy statements"); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 541 (S.D. Cal. 2020) (predominance met where "common and cohesive issue is whether Kroger wrongfully labeled its breadcrumbs as containing '0g Trans Fat'"); *Hilsley*, 2018 WL 6300479, at *11 (predominance satisfied where "Plaintiff's UCL, FAL and CLRA claims depend on whether the labels are unlawful, unfair, deceptive, or misleading to reasonable consumers") (internal quotations omitted).

1    Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the

2    class action is the most efficient and effective means of resolving the controversy." *Wolin v.*

3    *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In cases where

4    Plaintiffs are unable to proceed individually because the disparity between litigation costs and

5    the recovery sought is too high, the class-action device may be an effective means to pool

6    claims which would be uneconomical to litigate individually." *In re Yahoo*, 2020 WL 4212811,

7    at *7. Here, "the price premium attributable to consumers' belief that [the Subject Products

8    were suitable for NAS and RAID systems] will, if calculable, be small." *In re NJOY*, 120 F.

9    Supp. 3d at 1122. Thus, "it would be unfeasible for many of the purported class members to

10   obtain relief on an individual basis." *Martinelli*, 2019 WL 1429653, at *8. Thus, "because the

11   misrepresentation claims are common to the class, involve small sums of money … and do not

12   rely on individual determinations, a class action is the superior method of efficiently and fairly

13   adjudicating Plaintiff and the class members' claims in this case." *Hilsley*, 2018 WL 6300479,

14   at *18.

15          **C.      The Settlement Class Also Satisfies Rule 23(b)(2)**

16          The class is also well suited for certification under Rule 23(b)(2). *See gen. Lilly v.*

17   *Jamba Juice Co*., 2015 WL 1248027, at *3–5 (N.D. Cal. Mar. 18, 2015) (granting preliminary

18   approval of a Rule 23(b)(2) class of smoothie kit purchasers); *see also Ellis v. Costco*

19   *Wholesale Corp*., 657 F.3d 970, 978 (9th Cir. 2011) (explaining that the district court may

20   certify a Rule 23(b)(2) class and a separate Rule 23(b)(3) class). As discussed above, the

21   Settlement provides precisely the injunctive relief sought in the Complaint, consisting of, *inter*

22   *alia*, changing the labeling of the Subject Products to ensure transparency about what

23   consumers are actually purchasing. Absent the Settlement, this type of injunctive relief would

24   only be available to Class Members after prevailing at trial on the merits. Thus, the

25   requirements of Rule 23(b)(2) are met.

26   **VII.    CONCLUSION**

27          For the foregoing reasons, Plaintiffs respectfully request that the Court grant final

28   approval of the proposed Settlement.

1    Dated:  September 6, 2021                Respectfully submitted,

2                                            **HATTIS & LUKACS**

3                                            By:___*/s/ Daniel Hattis*_____
                                                        Daniel Hattis
4
                                             Daniel M. Hattis (SBN 232141)
5                                            Paul Karl Lukacs (SBN 197007)
                                             400 108th Ave NE, Ste 500
6                                            Bellevue, WA 98004
                                             Telephone: (425) 233-8650
7                                            Facsimile: (425) 412-7171
                                             Email: dan@hattislaw.com
8                                                      pkl@hattislaw.com

9                                            **BURSOR & FISHER, P.A.**
                                             Yitzchak Kopel (*Pro Hac Vice*)
10                                           888 Seventh Avenue, Third Floor
                                             New York, NY 10019
11                                           Telephone: (646) 837-7150
                                             Facsimile:  (212) 989-9163
12                                           Email: ykopel@bursor.com

13                                           **BURSOR & FISHER, P.A.**
                                             L. Timothy Fisher (SBN 191626)
14                                           1990 North California Boulevard, Suite 940
                                             Walnut Creek, CA  94596
15                                           Telephone: (925) 300-4455
                                             Facsimile:  (925) 407-2700
16                                           E-Mail: ltfisher@bursor.com

17                                           *Class Counsel*

18

19

20

21

22

23

24

25

26

27

28