1

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

**HATTIS & LUKACS**
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

2

3

4

5

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

6

7

8

9

*Class Counsel*

10

11

12

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

13

14

15

16

17

NICHOLAS MALONE, CHRIS AYERS,
JAMES BACKUS, BRIAN CONWAY,
DAVID EATON, STEVEN GRAVEL,
JAMES RAAYMAKERS, and TOD WEITZEL,
on behalf of themselves and all others similarly
situated,

Plaintiffs,

18

v.

19

WESTERN DIGITAL CORPORATION,

20

Defendant.

21

Case No. 5:20-cv-03584-NC

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR AN AWARD OF
ATTORNEYS' FEES, COSTS, AND
EXPENSES, AND INCENTIVE
AWARDS; MEMORANDUM OF
POINTS AND AUTHORITIES**

Date:  December 22, 2021
Time:  2:00 p.m.
Courtroom:  5, 4th Floor
Judge: Hon. Nathaniel Cousins

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 22, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 280 South 1st Street, Courtroom 5, 4th Floor, San Jose, California 95113 in the courtroom of Hon. Nathaniel Cousins, Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), by and through the undersigned counsel of record, will move and hereby do move, pursuant to Fed. R. Civ. P. 23(h), for entry of the [Proposed] Order for an Award of Attorneys' Fees, Costs and Expenses, and Incentive Awards.  This motion is based on: (1) this notice of motion and memorandum of points and authorities; (2) the Declaration of Yitzchak Kopel in Support of Motions for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees, Costs and Expenses and Incentive Awards; (3) the Declaration of Daniel Hattis in Support of Motions for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees, Costs and Expenses and Incentive Awards; (4) the papers and pleadings on file; and (5) the arguments of counsel at the hearing on the motion.

Dated:  September 6, 2021

Respectfully submitted,

**HATTIS & LUKACS**

By: *   /s/ Daniel Hattis* 
   Daniel Hattis

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
   pkl@hattislaw.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Class Counsel*

1

2

**TABLE OF CONTENTS**

**PAGE(S)**

3

INTRODUCTION ........................................................................................................... 1

4

BACKGROUND AND PROCEDURAL HISTORY............................................................ 2

5

SUMMARY OF THE PROPOSED SETTLEMENT.......................................................... 2

6

ARGUMENT ................................................................................................................... 3

7

I.     Class Counsel's Fee Request Is Reasonable Under The Percentage Of
The Benefit Method ..................................................................................... 3

8

9

A.     Class Counsel Achieved Extraordinary Results For The Class ................... 5

10

B.     Plaintiffs' Claims Carried Substantial Risk ................................................. 7

11

C.     Class Counsel Provided Quality Work In A Complex Case......................... 8

12

D.     Market Rates As Reflected By Awards In Similar Cases
Support Class Counsel's Fee Request ......................................................... 8

13

E.     Class Counsel Handled This Case On A Contingent Fee Basis
And Bore The Financial Burden .................................................................. 9

14

15

II.    Class Counsel's Attorneys' Fees Are Reasonable Under a Lodestar
Cross-Check ............................................................................................... 11

16

A.     Class Counsel Spent A Reasonable Number Of Hours On This
Litigation At A Reasonable Hourly Rate................................................... 11

17

18

B.     All Relevant Factors Support Applying a Multiplier to Class
Counsel's Lodestar..................................................................................... 13

19

III.   The Requested Incentive Awards for Plaintiffs Are Reasonable............................ 14

20

CONCLUSION .............................................................................................................. 15

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                                     **PAGE(S)**

3

*Aguilar v. Wawona Frozen Foods,*
4
   2017 WL 2214936 (E.D. Cal. May 19, 2017) ........................................................... 12

5

*Andrews, et al. v. Gap, et al.,*
   CGC-18-567237 (Cal. Sup. Ct. Oct. 11, 2019).......................................................... 13
6

*Barbosa v. Cargill Meat Solutions Corp.,*
7
   297 F.R.D. 431 (E.D. Cal. 2013) .............................................................. 7, 11, 12

8

*Chen v. Lamps Plus, Inc.,*
9
   2:19-cv-00119-MJP (W.D. Wa. 2020) .................................................................... 12

10

*Dakota Med., Inc. v. RehabCare Grp., Inc.,*
   2017 WL 4180497 (E.D. Cal. Sept. 21, 2017)......................................................... 9
11

12

*Doe v. Hawaii,*
   2014 WL 12138769 (D. Haw. Apr. 22, 2013) ........................................................ 9
13

14

*Ebarle v. Lifelock, Inc.,*
   2015 WL 5076203 (N.D. Cal. Sept. 20, 2016) ....................................................... 9

15

*Edwards v. National Milk Producers Federation,*
16
   2017 WL 3616638 (N.D. Cal. June 26, 2017) ........................................................ 4

17

*Farrell v. Bank of Am. Corp., N.A.,*
18
   827 F. App'x 628 (9th Cir. 2020) ........................................................................... 4

19

*Fischel v. Equitable Life Assur. Soc'y,*
   307 F.3d 997 (9th Cir. 2002) .................................................................................. 3
20

*Garcia v. Schlumberger Lift Sols.,*
21
   2020 WL 6886383 (E.D. Cal. Nov. 24, 2020).......................................................... 4

22

*Graham v. DaimlerChrysler Corp.,*
23
   34 Cal. 4th 553 (2004) .......................................................................................... 10

24

*Greko v. Diesel U.S.A., Inc.,*
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...................................................... 14
25

26

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ............................................................................ 3, 8

27

*Harris v. Marhoefer,*
28
   24 F.3d 16 (9th Cir. 1994) .................................................................................... 14

*Hartless v. Clorox Co.,*
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................................. 4, 11

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................................................ 13

*Hilsley v. Ocean Spray Cranberries, Inc.,*
    2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ..................................................... 5

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 9

*In re Anthem, Inc. Data Breach Litig.,*
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ........................................ 5, 8, 11

*In re Equity Funding Corp. Sec. Litig.,*
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................. 7

*In re Heritage Bond Litigation,*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................. 4

*In re High-Tech Employee Antitrust Litig.,*
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................. 12

*In re HPL Techs., Inc. Sec. Litig.,*
    366 F. Supp. 2d 912 (N.D. Cal. 2005) ............................................................ 11

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 8

*In re Sumitomo Copper Litig.,*
    74 F.Supp.2d 393 (S.D.N.Y.1999) ................................................................. 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir.1994) ........................................................................... 10

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ........................................................................... 11

*Knight v. Red Door Salons, Inc.,*
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................................... 5

*Kumar v. Salov N. Am. Corp.,*
    2017 WL 2902898 (N.D. Cal. July 7, 2017) ..................................................... 4

*Lealao v. Beneficial California, Inc,*
    82 Cal. App. 4th 19 (2000) ............................................................................... 4

*Loring v. City of Scottsdale, Ariz.*,
  721 F.2d 274 (9th Cir. 1983) ............................................................................................. 6

*Martin v. AmeriPride Servs., Inc.*,
  2011 WL 2313604 (S.D. Cal. June 9, 2011) ....................................................................... 9

*Martínez v. Silveira*,
  2011 WL 13295761 (E.D. Cal. Dec. 14, 2011) ................................................................... 9

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
  2018 WL 3474472 (E.D. Cal. July 19, 2018) ................................................................... 10

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................................. 6

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) .............................................................................................. 13

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. June 5, 2017) .................................................................... 12

*Pappas v. Naked Juice Co of Glendora, Inc.*,
  2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ..................................................................... 6

*Parkinson v. Hyundai Motor America*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........................................................................... 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................................................. 5

*Perez v. Rash Curtis & Associates*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .................................................................. 12

*POM Wonderful, LLC v. Purely Juice, Inc.*,
  2008 WL 4351842 (CD. Cal. Sept. 22, 2008) .................................................................. 12

*Roberts v. AT&T Mobility LLC*,
  3:15-cv-03418-EMC (N.D. Cal. 2021) ............................................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................ 14

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ...................................................................... 9

*State of Florida v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) .............................................................................................. 3

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................. 3, 14

*Steiner v. Am. Broad. Co.,*
    248 Fed. Appx. 780 (9th Cir. 2007).............................................................. 13

*Taylor v. FedEx Freight, Inc.,*
    2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ............................................... 12

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ................................................................................. 7

*Tromble v. Western Digital Corp.,*
    2021 WL 2165796 (N.D. Cal. May 27, 2021) ................................................ 7

*Van Lith v. iHeartMedia + Entertainment, Inc.,*
    2017 WL 4340337 (E.D. Cal. Sept. 29, 2017).................................................. 3

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................. 15

*Vandervort v. Balboa Capital Corp.,*
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ............................................................ 9

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) ............................................................... 5, 9

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ................................................. 5, 6, 11, 13

*West v. Cal. Serv. Bureau, Inc.,*
    Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) .............................. 9

*Williams v. MGM-Pathe Commc'ns Co.,*
    129 F.3d 1026 (9th Cir. 1997) ..................................................................... 4

*Wing v. Asarco Inc.,*
    114 F.3d 986 (9th Cir. 1997) ....................................................................... 7

*Young v. Polo Retail, LLC,*
    2007 WL 951821 (N.D. Cal. Mar. 28, 2007).................................................. 4

*Zakskorn v. American Honda Motor Co.,*
    2015 WL 3622990 (E.D. Cal. June 9, 2015) ................................................ 12

**TREATISES**

NEWBERG ON CLASS ACTIONS (3d ed. 1992) ................................................ 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Plaintiffs Nicholas Malone, Chris Ayers, James Backus, Brian Conway, David Eaton, Steven

3  Gravel, James Raaymakers, and Tod Weitzel ("Plaintiffs"), through their Court-appointed counsel,

4  Bursor & Fisher, P.A. and Hattis and Lukacs ("Class Counsel"), respectfully submit this

5  memorandum of points and authorities in support of Plaintiffs' Motion for Award of Attorneys'

6  Fees, Costs and Expenses and Incentive Awards.

7

## INTRODUCTION

8      Plaintiffs and Class Counsel have achieved an outstanding result in this case.  The $2.7

9  million settlement they have negotiated far exceeds the value of the Class's compensatory damages

10 in this case as calculated by the $4.00 to $7.00 price premium attributable to the labeling claims in

11 this action. Declaration of Yitzchak Kopel ("Kopel Decl.") ¶ 8. The settlement will also provide

12 more than $3 million in injunctive relief.  Kopel Decl. ¶ 10.  Thus, claimants under this settlement

13 are almost certain to receive payments far in excess of what they could have reasonably expected

14 had Plaintiffs prevailed at trial.

15      Class Counsel now request that the Court approve an award of attorneys' fees in the amount

16 of $892,145.70, or 15.65% of the total $5.7 million value of the Settlement (Class Counsel is also

17 seeking $7,854.30 in costs, for a total of $900,000.00.  Calculating the fee award based on a

18 percentage of the Settlement Fund is straightforward, fair, and strongly supported by Ninth Circuit

19 case law.  *See* Argument § I, *infra*.  Cross-checking this percentage fee against Class Counsel's

20 lodestar validates the reasonableness of Class Counsel's fee request.  As of September 1, 2021, Class

21 Counsel had worked 1,063.2 hours on this case for a total lodestar fee, at current billing rates, of

22 $668,221.  Kopel Decl. ¶ 27; *see also id.*, Ex. 2, and Declaration of Daniel M. Hattis (the "Hattis

23 Decl."), Ex. 1 (Bursor & Fisher and Hattis and Lukacs' detailed billing records for this case).  Class

24 Counsel's blended hourly rate of $628.51 is well within the bounds of reasonable hourly rates in this

25 district.  *Id.* ¶¶ 27, 31-32; *see also* Argument § I(D), *infra* (discussing hourly rates approved in other

26 cases in this District).  A fee award of $892,145.70 would represent a multiplier of 1.34 over the

27 base lodestar fee (*see* Kopel Decl. ¶ 27), which is well within the accepted range of multipliers

28

---

MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES                                    1
CASE NO. 5:20-CV-03584-NC

1   approved by courts in the Ninth Circuit.  *See* Argument § 2, *infra* (discussing the factors supporting
2   the application of a multiplier to Class Counsel's lodestar).
3           Plaintiffs also request that the Court award reimbursement of expenses of $7,854.30.  As
4   detailed herein, these expenses were reasonable and necessarily incurred for the prosecution of this
5   action.
6           Finally, Plaintiffs request that the Court award them incentive awards in the amount of
7   $2,500 each to account for the significant time and effort they invested in this case on behalf of the
8   Class.

9                           **BACKGROUND AND PROCEDURAL HISTORY**

10          The Declaration of Yitzchak Kopel, submitted herewith, contains a detailed discussion of the
11   background and procedural history of this case, including (i) Plaintiffs' pre-suit investigation, (ii) the
12   pleadings and motions, (iii) the parties' arms-length settlement negotiations, and (v) preliminary
13   approval and dissemination of notice.

14                          **SUMMARY OF THE PROPOSED SETTLEMENT**

15          Pursuant to the Settlement Agreement, Defendant has established a $2.7 million Settlement
16   Fund from which Class Members can receive between $4.00 and $7.00 cash award for each Subject
17   Product purchased during the Class Period, subject to a maximum *pro rata* upward adjustment of up
18   to 85% of the Subject Products' retail purchase price (i.e., 85% of $84.99 for the 2TB Subject
19   Product, $106.99 for the 3TB Subject Product, $119.99 for the 4TB Subject Product, and $179.99
20   for the 6TB Subject Product).  No proof of purchase is required to submit a claim, and Claimants
21   may submit claims for each Subject Product purchased.
22          The Settlement also provides significant injunctive relief.  Within 60 days of the effective
23   date of the settlement, Western Digital shall clearly and conspicuously disclose the use of SMR
24   technology on the product packaging and website product page on westerndigital.com of all WD
25   Red NAS Drives with SMR technology.  The requirements of this injunctive relief must be complied
26   with for no less than 4 years after the Effective Date of the Settlement.  The injunctive relief is
27   valued at just over $3 million.  Kopel Decl. ¶¶ 9-10.
28          In total, therefore, the Settlement provides $5.7 million in value to Class Members.

1

## ARGUMENT

2      Fed. R. Civ. P. 23(h) provides that a district court may "award reasonable attorneys' fees and

3   nontaxable costs that are authorized by law or by the parties' agreement."  Under Ninth Circuit

4   standards, a district court may award attorneys' fees under either the "percentage-of-the-benefit"

5   method or the "lodestar" method where a common fund has been created. *Fischel v. Equitable Life*

6   *Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029

7   (9th Cir. 1998).  Typically, courts apply the "percentage-of-the-benefit" method in common fund

8   cases.  *Van Lith v. iHeartMedia + Entertainment, Inc.*, 2017 WL 4340337, at *15 (E.D. Cal. Sept.

9   29, 2017).

10      The Settlement Agreement requires Defendant to pay Class Counsel's attorneys' fees, costs,

11   and expenses awarded by the Court "up to one-third of the Settlement Fund."  Settlement § 3.1.

12   Class Counsel here has requested an award of $900,000 in attorneys' fees, costs, and expenses.  This

13   equals one-third of the $2.7 million monetary value of the settlement, and only 15.65% of the total

14   value of the Settlement when incorporating the value of injunctive relief.  And it equals a 1.34

15   multiplier on Class Counsel's lodestar incurred through September 1, 2021.  As set forth below,

16   under either the percentage of the benefit method (which the Court should apply) or the lodestar

17   method, Class Counsel's fee request is reasonable and should be approved accordingly.

18   **I.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE
         PERCENTAGE OF THE BENEFIT METHOD**

19

20      Under the common fund doctrine, courts award attorneys' fees based on a percentage of the

21   total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ("When a case

22   results in a common fund for the benefit of a plaintiff class, a court may exercise its equitable

23   powers to award plaintiffs' attorneys' fees out of the fund."); *Staton v. Boeing Co.*, 327 F.3d 938,

24   972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than

25   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").  To

26   calculate attorneys' fees based on the percentage of the benefit, Ninth Circuit precedent requires

27   courts to award class counsel fees based on the total benefits being made available rather than the

28   amount actually paid out.  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28,

2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available). The Court must also include the value of the benefits conferred to the Class, including any attorneys' fees, expenses, and notice and claims administration payments to be made. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012). Stated otherwise, California courts include the requested attorneys' fees when calculating the total value of the settlement fund. *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000). Further, the value of injunctive relief must be included in calculating the total benefit made available to the class. *See, e.g.*, *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's approval of attorneys' fees where it was apparent that injunctive relief offered "generated benefits far beyond the cash settlement fund") (internal quotations omitted); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on either the 'lodestar' method or a percentage of the total benefit made available to the settlement class, *including costs, fees, and injunctive relief*.") (emphasis added).

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Edwards v. National Milk Producers Federation*, 2017 WL 3616638, at *8 (N.D. Cal. June 26, 2017). The 25% benchmark, however, is merely a starting point for the analysis, and a district court may adjust the fee award based on the circumstances in the record. *See West v. Cal. Service Bureau, Inc*., Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) (awarding 33.33% of the common fund settlement); *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *3 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) (awarding attorneys' fees of "33.33% of the gross settlement amount"); *In re Heritage Bond Litigation*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding attorneys' fees of "thirty-three and one-third percent (33 1/3%) of the common fund"); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-

1   73 (9th Cir. 1989) (explaining that the benchmark should be "adjusted upward or downward" based

2   on the unique circumstances of the case).  The exact percentage varies depending on the facts of the

3   case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley*

4   *Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (quoting *Knight v. Red Door Salons, Inc.,* 2009

5   WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)).

6         The Ninth Circuit has identified a number of factors that may be relevant in determining if a

7   fee award is reasonable:  (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and

8   the quality of work; (iv) market rates as reflected by awards made in similar cases; and (v) the

9   contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft*

10  *Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  Here, each of these factors definitively supports

11  Class Counsel's fee request because Class Counsel's outstanding work secured remarkable results

12  for the Settlement Class in the face of substantial risks to any recovery.

13        **A.      Class Counsel Achieved Extraordinary Results For The Class**

14        [T]he overall result and benefit to the Class … has been called the most critical factor in

15  granting a fee award."  *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal.

16  Aug. 17, 2018) (internal quotations omitted).  The considerations offered by the Settlement

17  Agreement provide extraordinary results for the Class.

18        First, the Settlement establishes a $2.7 million Settlement Fund from which Class Members

19  may make claims to receive the $4 to $7 price premium attributable to the allegedly false statements

20  on the Subject Products' labels, the *exact relief* sought by Plaintiffs in the SAC.  Settlement ¶¶ 2.1,

21  2.4(a).  Further, those claims will likely be subject to a maximum *pro rata* adjustment of 85% of the

22  Subject Products' retail purchase price.  *Id.* ¶ 2.7.  Such payments far exceed the price premium

23  attributable to Defendant's misleading labeling claims, meaning Class Members will receive *more*

24  *relief* than would have been available after a trial verdict. Kopel Decl. ¶ 8. *See Hilsley v. Ocean*

25  *Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) ("[D]amages would be

26  limited to a fraction of total sales if Plaintiffs were to prevail at trial.  Damages for the nationwide

27  class would be based on the price premium method, which is based on the difference between the

28  value of the Products with the 'No Artificial Flavors' statement and the actual value received.").

1    Second, the Settlement provides significant and readily calculable injunctive relief.  Within

2   60 days of the effective date of the settlement, Western Digital shall clearly and conspicuously

3   disclose the use of SMR technology on the product packaging and website product page on

4   westerndigital.com of all WD Red NAS Drives with SMR technology.  Settlement ¶ 2.10.  The

5   requirements of this injunctive relief must be complied with for no less than four years after the

6   Effective Date of the Settlement.  *Id*.  Such disclosures will more clearly distinguish the Subject

7   Products from Defendant's similar "WD Red Plus" hard drives, which use CMR technology.  Kopel

8   Decl. ¶ 9.  Accordingly, the injunctive relief will "increase the possibility that consumers will make

9   informed decisions about the purchase of Defendant's products that are at issue based on reliable

10  information from, and practices by, Defendant."  *Pappas v. Naked Juice Co of Glendora, Inc.*, 2014

11  WL 12382279, at *10-11 (C.D. Cal. Jan. 2, 2014).  Further, the value of this injunctive relief is

12  readily calculable.  The Court need only multiply the $4.00 - $7.00 price premium attributable to the

13  labeling claims in this action by the estimated sales of the Subject Products over the next four years,

14  and the estimation is based on sales data provided by Defendant.  Kopel Decl. ¶ 10.  Accordingly,

15  the value of the injunctive relief is just over $3 million.  *Id*.

16      In sum, the Settlement provides a total value of $5.7 million.  *Pappas*, 2014 WL 12382279,

17  at *10 ("The Ninth Circuit has established that district courts should 'take into account the present

18  nonmonetary benefit bestowed upon plaintiffs' class' in determining the appropriateness of a fee

19  award.") (quoting *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983); *see also*

20  *Vizcaino*, 290 F.3d at 1049 ("[C]ounsel's performance generated benefits beyond the case settlement

21  fund."); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) (concluding that attorneys' fees

22  may be awarded when the litigation has conferred a substantial benefit on the class even where a suit

23  "has not yet produced, and may never produce, a monetary recovery" under the "common fund"

24  doctrine).  Class Counsel's fee request of $892,145.70—or just 15.65% of the total value of the $5.7

25  million Settlement—is therefore reasonable in light of the extraordinary relief provided to the Class.

26

27

28

### B.    Plaintiffs' Claims Carried Substantial Risk

This factor looks to the risk and novelty of the claims at issue.  Both are certainly present here.  *See generally* Kopel Decl. ¶¶ 16-19 (discussing the risks of litigating Plaintiffs' claims).  Class Counsel undertook significant financial risk in prosecuting this case.

Plaintiffs' claims faced significant uncertainty from the get-go.  Judge Rogers in this District, for instance, dismissed similar claims against Defendant over its use of SMR technology in different hard drive products.  *See generally Tromble v. Western Digital Corp.*, 2021 WL 2165796 (N.D. Cal. May 27, 2021).  Although Defendant answered the complaint here, Judge Rogers' reasoning likely would have factored heavily into Defendant's summary judgment briefing.

Plaintiffs also would have faced risk at class certification.  Defendant likely would have argued that Class Members who did not experience any issues with their Subject Products lacked standing to pursue their claims.  *See generally TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  The technology-centric nature of this case (*i.e.*, whether SMR technology is unsuitable for use in NAS and RAID systems, as Plaintiffs allege) would have led to an intense and uncertain "battle of the experts."  Defendant likely would present evidence that SMR technology was suitable for the aforementioned uses, and thus, it did not engage in false advertising.

The Court should also not ignore the fact that Defendant is represented by highly skilled and well-paid lawyers from the Los Angeles offices of Lewis Brisbois Bisgaard & Smith LLP.  These lawyers vigorously represented their client, challenged Plaintiffs' claims, and sought to obtain a defense verdict and deprive the Class of any recovery. "The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013); *see also Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation"); *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("Moreover, plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

Finally, even if Plaintiff and Class Counsel had been able to prevail at trial, they still faced the prospect of affirming any verdict on post-trial motions in this Court and later on appeal.  Kopel Decl. ¶ 20.  That process would have taken years and involved tremendous risk that a hard-fought victory could be lost. *Id.*  There can be no doubt that Class Counsel faced daunting risks in this case that more than justify the fee award sought by Class Counsel.

### C.    Class Counsel Provided Quality Work In A Complex Case

The prosecution of a complex, nationwide class action like this one "requires unique … skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citation and quotation marks omitted).  This was not a garden-variety case where Class Counsel could simply rely upon work from prior similar cases or just cut-and-paste from old legal documents.  Kopel Decl. ¶ 16.  Instead, Class Counsel had to develop expertise related to several areas outside of the law that were largely new to them. *Id.*  In particular, this case required Class Counsel to review and understand complex technological studies and analyses regarding SMR technology and systems like NAS and RAID. *Id.*  This case also required a significant amount of skilled legal work, including: (1) extensive pre-litigation investigation into Defendant's products and their marketing to assist with the drafting of Plaintiffs' thorough 86-page complaint; (2) serving discovery requests on Defendant and seeking discovery from third parties; (3) participating in an all-day mediation with Hon. Elizabeth Laporte (Ret.); (4) submitting supplemental briefing to Judge Laporte concerning the *pro rata* distribution issue (which allowed Class Counsel to secure the upward adjustment of claims described above); (5) and negotiating this settlement and managing the dissemination of notice and the claims process.  Kopel Decl. ¶ 2; *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (approving attorneys' fees where class counsel "performed significant factual investigation prior to bringing th[is] action[] … participated in protracted negotiations[,]" and filed several pleadings").  The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award.  Kopel Decl. ¶ 20.

### D.    Market Rates As Reflected By Awards In Similar Cases Support Class Counsel's Fee Request

As an initial matter, Class Counsel's 15.65% fee request is below the 25% starting benchmark set by the Ninth Circuit. *Hanlon*, 150 F.3d at 1029.  Further, Class Counsel's fee request

compares favorably to other fee requests within in California.  *See*, *e.g.*, *West v. Cal. Serv. Bureau, Inc.*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) (awarding attorney's fees of 33.33% of the common fund); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 4180497, at *7-8, 14 (E.D. Cal. Sept. 21, 2017) (awarding 33.33% in attorney's fees); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33.33% as attorney's fees); *Martin v. AmeriPride Servs., Inc.*, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (noting that "courts may award attorneys fees in the 30%-40% range in … class actions that result in recovery of a common fun[d] under $10 million"); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.3% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.3% to 40%).  Fee awards must also consider the interest in "encourage[ing] plaintiffs' attorneys to move for early settlement, provid[ing] predictability for the attorneys and the class members, and reduc[ing] the time consumed by counsel and court in dealing with voluminous fee petitions."  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

Based on the foregoing, there is ample authority to support a fee award which is approximately 15.65% of the settlement value.  *Ebarle v. Lifelock, Inc.*, 2015 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016) ("The Court declines to conduct a lodestar cross-check in this case, given that under the percentage-of-the-fund method the fee request was significantly below the 25% benchmark."); *Martínez v. Silveira*, 2011 WL 13295761, at *2 (E.D. Cal. Dec. 14, 2011) (granting fee request where attorneys requested "nineteen percent (19%) of the total settlement amount," which was "below the 25% benchmark figure"); *Doe v. Hawaii*, 2014 WL 12138769, at *3 (D. Haw. Apr. 22, 2013) (granting fee request where "the fee request represents 15.65% of the total settlement award, which is well below the 25% benchmark established by the Ninth Circuit").

### E. Class Counsel Handled This Case On A Contingent Fee Basis And Bore The Financial Burden

To date, Class Counsel has worked for a year and a half with no payment, and no guarantee of payment absent a successful outcome.  That in itself presented considerable risk.  *See Vasquez*, 266 F.R.D. at 492.  Courts have long recognized that attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorneys' normal hourly

1   rates.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir.1994).  The

2   contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery

3   would be obtained, are significant.  *Id*. at 1300.  In *Wash. Pub. Power*, the Ninth Circuit recognized

4   that:

5   > It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases ... [I]f this 'bonus' methodology

6   > did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially

7   > in light of the risks of recovering nothing.

8   *Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted); *see also McKeen-Chaplin v.*

9   *Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not

10   received payment for the vast majority of its time spent on this case over the last five and a half

11   years, and took on significant financial risk by taking on this action on a contingency fee basis.");

12   *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher

13   than a fee for the same legal services paid as they are performed.  The contingent fee compensates

14   the lawyer not only for the legal services he renders but for the loan of those services.") (internal

15   citations omitted); *In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 396–98 (S.D.N.Y.1999) ("No

16   one expects a lawyer whose compensation is contingent on the success of his services to charge,

17   when successful, as little as he would charge a client who in advance of the litigation has agreed to

18   pay for his services, regardless of success.  Nor, particularly in complicated cases producing large

19   recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").

20          Further, if the case had advanced through class certification, Class Counsel's expenses would

21   have increased many-fold, and Class Counsel would have been required to advance these expenses

22   potentially for several years to litigate this action through judgment and appeals.

23                                          *       *       *

24          Weighing each of the aforementioned factors, Class Counsel's fee request of $892,145.70—

25   or 15.65% of the value of the Settlement—is reasonable under the "percentage-of-the-benefit"

26   method.

27

28

## II.     CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050.  The cross-check analysis is a two-step process.  First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.[1]  *See Barbosa*, 297 F.R.D. at 451.  Second, the court cross-checks the proposed percentage fee against the lodestar.  *Id.*  "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the *ex ante* risk of nonrecovery in the litigation)."  *Id.* (citing *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).  Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

### A.     Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel worked efficiently.  Class Counsel have submitted their detailed daily billing records showing what work was done and by whom as exhibits to their declarations.  Those records confirm Class Counsel efficient billing.

The blended hourly rate for Class Counsel's work of $628.51 is quite reasonable.  Kopel Decl. ¶ 27.  And the hourly rates for each of the lawyers who staffed the case, which are set forth in the Kopel and Hattis Declarations, are also reasonable and amply supported by the evidentiary material submitted with the Kopel Declaration.  *See id.* ¶¶ 31-32; *id.* at Exs. 4-11.  Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts."  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  California courts have repeatedly held rates commensurate with Class Counsel's rates to be fair and reasonable.  *See*,

---

[1] Where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9ᵗʰ Cir. 1975) (identifying twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

1    *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (approving billing rates for

2    partners between $400 and $970, and associates between $185 to $850 "with most under $500");

3    *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017)

4    (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *Parkinson v.*

5    *Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates

6    between $445 and $675 for class counsel in a consumer class action); *In re High-Tech Employee*

7    *Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490

8    to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law

9    clerks, and litigation support staff); *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842,

10   at *4 (CD. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for

11   associates reasonable in a consumer class action); *Barbosa*, 297 F.R.D. at 452 (awarding between

12   $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for

13   attorney with 21 years of experience); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *6

14   (E.D. Cal. May 19, 2017) ("This court has previously accepted as reasonable for lodestar purposes

15   hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and

16   partners."); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016)

17   (finding class counsel rates of $525/hour for senior associates and $700/hour for the senior partner in

18   this district reasonable).

19        Indeed, courts within California have previously found the rates of Class Counsel fair and

20   reasonable.  *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17,

21   2020) (finding Bursor & Fisher's blended hourly rate of $634.48 to be reasonable); *Zakskorn v.*

22   *American Honda Motor Co.*, 2015 WL 3622990, at *13–15 (E.D. Cal. June 9, 2015) (approving a

23   fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and

24   $450 per hour for associates); *Roberts v. AT&T Mobility LLC*, 3:15-cv-03418-EMC (N.D. Cal. 2021,

25   Dkt. No. 215 at ¶ 22) (approving a fee request where Hattis & Lukacs's billing rates were identical

26   to the rates requested here); *Chen v. Lamps Plus, Inc.*, 2:19-cv-00119-MJP (W.D. Wa. 2020, Dkt.

27   No. 40 at ¶ 2) (approving a fee request and finding Hattis & Lukacs's billing rates reasonable); and

28   *Andrews, et al. v. Gap, et al.*, CGC-18-567237 (Cal. Superior Ct. San Francisco, Order on October

11, 2019 at ¶ 6) (approving Hattis & Lukacs's billing rates).  In performing its cross-check analysis, the Court should find Class Counsel's hours and rates reasonable.

### B.    All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases.  *Fischel*, 307 F.3d at 1007, n. 7; *see also Kerr*, 526 F.2d at 70.  Class Counsel discussed most of these factors above and all weigh heavily in favor of a multiplier and the requested fee award in this action.  *See* Sections IV(A)(1)(a-3) above (discussing the factors justifying an upward adjustment from the 25% benchmark).

A fee award of $892,145.70 would represent a multiplier of 1.34 over the base lodestar fee incurred as of September 1, 2021, of $668,221. Kopel Decl. ¶ 27.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n. 6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *Aguilar*, 2017 WL 2214936, at *6 (noting that "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher"); ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Thus, even if the Court somehow finds the hours spent by Class Counsel or their hourly rates excessive, the 15.65% fee award would be justified by a larger

1    multiplier within the normal 1 to 4 range approved by the Ninth Circuit.  The Court should find that

2    the lodestar cross-check strongly supports the requested fee award.

3    **III.    CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY**
         **INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE**
4        **CLASS**

5           To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of

6    $7,854.30 in prosecuting this litigation on behalf of the Class.[2]  Kopel Decl., ¶ 29; Hattis Decl., ¶ 19.

7    These expenses are attached as Exhibit 3 to the Declaration of Yitzchak Kopel, and as Exhibit 2 to the

8    Declaration of Daniel M. Hattis, submitted herewith.

9           The Ninth Circuit allows recovery of litigation expenses in the context of a class action

10   settlement.  *See Staton*, 327 F.3d at 974.  Class Counsel is entitled to reimbursement for standard out-of-

11   pocket expenses that an attorney would ordinarily bill a fee-paying client.  *See, e.g.*, *Harris v. Marhoefer*,

12   24 F.3d 16, 19 (9th Cir. 1994).  These expenses include court fees, mediation fees, copying fees, courier

13   charges, and other related expenses.  Kopel Decl., Ex. 3.  Each of these expenses was necessarily and

14   reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various

15   categories of expenses incurred.  *See* Kopel Decl., ¶ 24; Hattis Decl., ¶ 19.

16   **IV.    THE REQUESTED INCENTIVE AWARDS FOR PLAINTIFFS ARE REASONABLE**

17          In recognition of their efforts on behalf of the Class, and subject to the approval of the Court,

18   Plaintiffs seek a $2,500 incentive award each ($17,500 total) as appropriate compensation for their

19   time and effort serving as the Class Representatives in this litigation.

20          Service awards "are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563

21   F.3d 948, 958 (9th Cir. 2009); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal.

22   Apr. 26, 2013) (Cousins, J.) (granting request for $5,000 incentive award).  Such awards "are

23   intended to compensate class representatives for work done on behalf of the class, to make up for

24   financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

25   willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  Service awards are

26   ―――――――――――――――――
27   [2] This figure does not include an additional $1,612.80 that was paid by Defendant to JAMS for the
     decision rendered by Magistrate Judge LaPorte regarding *pro rata* upward adjustment.  *See* Exhibit 3
     to 6/11/21 Kopel Declaration, ECF No. 53-1, pp. 118-120.  Per agreement of the parties, if the
28   settlement is finally approved and this cost is deemed reasonable by the Court, it will reduce
     Defendant's liability hereunder by $1,612.80.

1    committed to the sound discretion of the trial court and should be awarded based upon the court's

2    consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the

3    litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v.*

4    *Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

5           The requested amount of $2,500 for each Plaintiff reflects their significant involvement and

6    dedication to the case. Plaintiffs' involvement in this action was critical to the ultimate success of

7    the case. Class Counsel consulted with Plaintiffs throughout the investigation, filing, prosecution

8    and settlement of this litigation. Kopel Decl. ¶¶ 39-40; *see also generally* Declaration of Plaintiffs,

9    ECF Nos. 53-3-53-10. As such, Plaintiffs were actively involved in the litigation and devoted

10   substantial time and effort to the case. *Id.* Plaintiffs were prepared to "go the distance" in this

11   litigation to continue to represent the Class and fight to obtain significant relief on their behalf.

12   Kopel Decl. ¶ 41; *see also generally* Plaintiffs' Declarations. Their actions and dedication played a

13   significant role in this case and helped achieve the exceptional settlement that will benefit more than

14   170,000 class members. Kopel Decl. ¶ 41. Accordingly, a $2,500 incentive award for each Plaintiff

15   is fair and reasonable.

16                                          **CONCLUSION**

17          After more than a year and a half of litigation, Class Counsel were able to obtain an

18   exceptional and unprecedented settlement that provides significant relief to more than 170,000 class

19   members. This Settlement is the culmination of the determined and skilled work of Class Counsel.

20   As a result, Plaintiffs and Class Counsel respectfully request that this Court award the following:

21          •       $900,000.00 in attorneys' fees, costs, and expenses; and

22          •       $2,500 as an incentive award to each Plaintiff ($17,500 total)

23          The requests are reasonable and appropriate in light of the tremendous results achieved in

24   this case.

25                                          Dated:  September 6, 2021

26                                          **HATTIS & LUKACS**

27                                          By:    */s/ Daniel Hattis*
                                                   Daniel Hattis
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
       pkl@hattislaw.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Class Counsel*